## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GERALD SMITH,<br><br>               Defendant. | Criminal Action No. 95-154-8 (BAH)<br><br>Chief Judge Beryl A. Howell |

## <u>MEMORANDUM OPINION</u>

In 1996, defendant Gerald Smith was convicted, following a jury trial, of twenty-one violent crimes and gun offenses stemming from his membership in "the so-called Fern Street Crew, an organization which distributed crack cocaine for seven years in the District of Columbia and Maryland," with the "Crew's activities [] facilitated by its use of violence to defend territory from rival drug dealers and subvert the efforts of the criminal justice system." *United States v. Sumler*, 136 F.3d 188, 189 (D.C. Cir. 1998).  Defendant was sentenced to life imprisonment on seventeen of his 21 convictions, and to a consecutive 65 years' imprisonment on his remaining four convictions for using a firearm during a drug trafficking offense or crime of violence, in violation of 18 U.S.C. § 924(c) (collectively, the "§ 924(c) convictions").  Sent'g Tr. (Nov. 25, 1996) at 34:8–35:15, ECF No. 464.  He now seeks vacatur of his § 924(c) convictions—and the corresponding sentence of 65 years' imprisonment—and a full resentencing, Def.'s Suppl. Mot. to Vacate J. Under 28 U.S.C. § 2255 ("Def.'s Mot.") at 3, ECF No. 622, based on the Supreme Court's more recent determination that the residual clause in the definition of "crime of violence" is unconstitutionally vague as that definition is used in the Armed Career Criminal Act of 1984 ("ACCA"), 18 U.S.C. § 924(e)(2), *see Johnson v. United*

1

*States*, 576 U.S. 591, 606 (2015), and in 18 U.S.C. § 924(c)(3)(B), *see United States v. Davis*, 139 S. Ct. 2319, 2326 (2019).

After *Davis*, an offense only constitutes a "crime of violence" upon which a § 924(c) conviction may be predicated if the offense satisfies the "elements clause" of the definition, which requires the felony offense to have "as an element the use, attempted use, or threatened use of physical force against the person or property of another."  18 U.S.C. § 924(c)(3)(A). Defendant argues that the predicate offenses on which his four § 924(c) convictions are based— namely, kidnapping, in violation of 18 U.S.C. § 1201, and continuing criminal enterprise murder ("CCE Murder"), in violation of 21 U.S.C. § 848(e)(1)(A)—do not meet the elements clause definition of "crime of violence" under 18 U.S.C. § 924(c)(3).  Def.'s Mot. at 2–3. [1]

The government "agrees that defendant's § 924(c) conviction predicated on kidnapping must be vacated" but otherwise opposes the motion, arguing that defendant should be resentenced to the same aggregate term of life imprisonment, plus 65 years.  Gov't Partial Opp'n to Def.'s Suppl. Mot. to Vacate J. Under [] 28 U.S.C. § 2255 ("Gov't Opp'n") at 1, 17, ECF No. 629.  For the reasons set forth below, defendant's motion is granted to vacate his conviction on Count 23 for using a firearm during a kidnapping, along with the consecutive term of 20 years' imprisonment predicated on that conviction.  His motion is otherwise denied as to his § 924(c) convictions in Counts 20, 21, and 22, for using a firearm during CCE Murders, as is his motion for a full resentencing. [2]

---

[1]    Defendant initially filed this motion *pro se*, *see* Def.'s "Abridged" Mot. to Vacate Under 28 U.S.C. 2255 ("Def.'s *Pro Se* Mot."), ECF No. 587, but, after this Court appointed counsel, Min. Order (July 11, 2019), the *pro se* motion was superseded by the pending counseled motion and, therefore, the *pro se* motion is denied as moot.

[2]    This case was directly reassigned to the undersigned Chief Judge in April 2016, Min. Entry (Apr. 4, 2016), in accordance with the then-effective Local Rules, which provided for the Chief Judge to "dispose of matters requiring immediate action in criminal cases already assigned to any judge of the Court if that judge is unavailable or otherwise unable to hear the matters."  D.D.C. LCrR 57.14(6).  The Local Rules now provide that "[r]eassignment of any criminal case, and matters arising therefrom, previously assigned to a judge who no longer sits on the district court shall be made by random assignment."  D.D.C. LCrR 57.13(b) (amended Nov. 9, 2017).

## I.      BACKGROUND

Summarized below is relevant background for the resolution of the pending motion regarding defendant's offense conduct, convictions, and sentences, drawn largely from defendant's original sentencing hearing in 1996 and related documents, followed by an overview of the procedural history.

### A.      Defendant's Convictions

In July 1995, defendant was charged in a 61-count indictment with eleven co-defendants. Indictment, ECF No 4. [3]  The evidence at trial showed that, from at least 1992 to 1993, defendant was a "violent enforcer" for the Fern Street Crew.  Def.'s Presentence Report ("PSR") ¶¶ 90, 174, ECF No. 693; [4] *see also Sumler*, 136 F.3d at 189.  Defendant "sold wholesale amounts of crack cocaine to street sellers in the neighborhood" and "was regularly armed[,] . . . committing acts of violence that furthered the objects" of the organization.  PSR ¶ 90.  The evidence showed he was personally responsible for multiple murders "to eliminate rival sellers" and "enrich the enterprise." *Id.* ¶ 174.

Following a four-month trial, a jury found defendant guilty of all twenty-one counts with which he was charged, with those counts of conviction carrying the penalties indicated below at that time:

- **Count 1**: Conspiracy to Distribute and Possess with Intent to Distribute Fifty (50) Grams or More of Cocaine Base (21 U.S.C. § 846) ("Crack Conspiracy")
  - **Penalty**: mandatory minimum 10 years to life imprisonment;
- **Count 3**: Conspiracy to Participate in Racketeer Influenced Corrupt Organization (18 U.S.C. §§ 1962(d) & 1963(a)) ("RICO Conspiracy")
  - **Penalty**: mandatory minimum sentence of life imprisonment;

---

[3]      A superseding indictment was filed in January 1996, Superseding Indictment, ECF No. 192, and a retyped superseding indictment was filed on July 26, 1996, for use at trial, *see* Retyped Superseding Indictment, ECF No. 341.

[4]      The PSR is filed under seal and unsealed to the limited extent that sealed content is referenced in this Memorandum Opinion to explain the Court's reasoning.  *See United States v. Reeves*, 586 F.3d 20, 22 n.1 (D.C. Cir. 2009).

- **Count 8**: First Degree Murder While Armed (22 D.C. Code §§ 2401, 3202 & 105)
    - **Penalty**: mandatory minimum of 30 years to life imprisonment;
- **Count 9, 12 & 13**: First Degree Murder While Armed (22 D.C. Code §§ 2401, 3202 & 105)
    - **Penalty**: mandatory minimum of 30 years to life imprisonment on each count;
- **Count 10, 14 & 15**: CCE Murder (21 U.S.C. § 848(e)(1)(A) & 18 U.S.C. § 2)
    - **Penalty**: mandatory minimum sentence of life imprisonment on each count;
- **Count 11**: Armed Robbery (22 D.C. Code §§ 2901, 3202 & 105)
    - **Penalty**: mandatory minimum of five years to life imprisonment;
- **Count 16**: Attempt to Commit Robbery While Armed (22 D.C. Code §§ 2901, 3202 & 105)
    - **Penalty**: mandatory minimum of five years to life imprisonment;
- **Count 17**: Assault With Intent to Kill While Armed (22 D.C. Code §§ 105, 501 & 3202)
    - **Penalty**: mandatory minimum of five years to life imprisonment;
- **Count 18**: Kidnapping (18 U.S.C. § 1201)
    - **Penalty**: any term of years up to life imprisonment;
- **Count 20**: Use of a Firearm (18 U.S.C. §§ 924(c) & 2)
    - **Penalty**: mandatory consecutive five years' imprisonment;
- **Counts 21 through 23**: Use of a Firearm (18 U.S.C. §§ 924(c)(1) & 2)
    - **Penalty**: mandatory consecutive 20 years' imprisonment on each count; and
- **Counts 30 through 33**: Possession of a Firearm During Crime of Violence (22 D.C. Code § 3204(b))
    - **Penalty**: five to 15 years' imprisonment on each count.

Retyped Superseding Indictment at 1–2, ECF No. 341; PSR ¶¶ 261–272; Verdict Form at 12–16, ECF No. 343.

Of particular relevance here, defendant was convicted for his role in a series of shootings in October 1992, stemming from violence between the Fern Street Crew and a rival gang, known as the Allison Street group, that resulted in the death of Marcus Murray, the injury of Anthony Welch, and the death of Victor Hartnett, "an older gentleman who just happened to be standing in the alley when Smith and [co-defendant] Jefferson were running back to their car" after shooting Murray and Welch. PSR ¶¶ 52–55. He was also convicted of the October 1992 murder of Ucal Riley, a rival drug dealer who lived nearby and had begun to take customers away from the Fern Street Crew, *id.* ¶¶ 91–94, and the December 1992 kidnapping of Eric Brake, *id.* ¶¶ 61–63, "in order to hurt [the] rival drug organization" of which Brake was a member, *id.* ¶ 174.

4

For the CCE Murder charges in Counts 10, 14, and 15, for which the murder victims were Riley, Murray, and Hartnett, respectively, the jury was instructed that a conviction on these three counts required finding, beyond a reasonable doubt, that (1) "some person or persons, not necessarily the defendant[], were operating" a CCE; (2) "the defendant[] intentionally killed, counseled, commanded, induced, procured, or caused the intentional killing of another or aided and abetted others who intentionally killed or caused the intentional killing of the decedent[s]"; (3) "the defendant[] had the special intent to kill the decedent[s]"; and (4) "the defendant committed the killings or participated in the killings while engaged in or working in furtherance" of a CCE.  Trial Tr. (July 30, 1996) at 84:16–85:7, ECF No. 393.  With regard to the third element, the jury was instructed that "specific intent to kill the decedent[s] . . . means that the defendant acted with the purpose or conscious intention to cause death."  *Id.* at 86:2–4.  The instructions further stated that defendant could be found guilty of CCE Murder "even though he did not physically participate in the shooting that caused the victim's death, provided [the jury] find beyond a reasonable doubt that the essential elements" of CCE Murder had been established.  *Id.* at 87:10–14.

On Counts 10, 14, and 15, the jury found defendant was guilty of the "[i]ntentional murder[s] . . . while working in furtherance of a continuing criminal enterprise" of Riley "on or about October 6, 1992"; Murray "on or about October 19, 1992"; and Hartnett, "on or about October 19, 1992," respectively.  Verdict Form at 14.  On Count 18, the jury found defendant guilty of the "[k]idnapping of Eric Brake on or about December 1, 1992."  *Id.* at 15.  As for the § 924(c) convictions, the jury found defendant guilty: (1) on Count 20, of the "[u]se of a firearm during and in relation to a crime of violence or a drug trafficking crime on or about October 6, 1992," referring to the CCE Murder of Riley charged in Count 10; (2) on Count 21, of the "[u]se

of a firearm during and in relation to a crime of violence or a drug trafficking crime on or about October 19, 1992," referring to the CCE Murder of Murray charged in Count 14; (3) on Count 22, of the "[u]se of a firearm during and in relation to a crime of violence or a drug trafficking crime on or about October 19, 1992," referring to the CCE Murder of Hartnett charged in Count 15; and (4) on Count 23, of the "[u]se of a firearm during and in relation to a crime of violence on or about December 1, 1992," referring to Brake's kidnapping. *Id.*

### B. Defendant's Sentencing

On November 25, 1996, defendant was sentenced to life imprisonment on Count 1 (Crack Conspiracy); Count 3 (RICO Conspiracy); Counts, 10, 14, and 15 (CCE Murders of Riley, Murray, and Hartnett, respectively); and Count 18 (Kidnapping of Brake).  Sent'g Tr. at 34:8–11. On the D.C. Code offenses charged in Count 8 (first degree murder while armed of Riley) and Counts 9, 12, and 13 (first degree felony murder while armed of Riley, Murray, and Hartnett, respectively), he was sentenced to life imprisonment with no parole.  *Id.* at 34:12–15.  All ten life sentences were to "be served concurrently."  *Id.* at 34:25–35:2.  As for defendant's § 924(c) convictions, on Count 20 (use of a firearm during the CCE murder of Riley), defendant was sentenced five years' imprisonment, and on Counts 21, 22, and 23 (use of a firearm during the Murray and Hartnett CCE murders and the Brake kidnapping, respectively), defendant was "sentenced to a term of 20 years on each count."  *Id.* at 35:3–8.  Although defendant asked for the sentences on the § 924(c) counts to run concurrently with one another, and consecutively to other counts, *id.* at 20:13–19, the court ordered that the five-year sentence on Count 20 and twenty-year sentences on Counts 21, 22, and 23 "be served consecutively to each other and to all

other counts," *id.* at 35:11–12, making "the aggregate sentence imposed [] life imprisonment

without parole, plus 65 years to be served consecutively," *id.* at 35:13–15. [5]

On appeal, two of defendant's convictions for D.C. Code offenses were vacated.

Specifically, his conviction on Count 9 (first degree felony murder while armed of Riley) was

vacated after the government conceded that "under District law," defendant could not "stand

convicted of both first degree murder (premeditated) while armed and first degree murder

(felony murder) while armed with respect to the same killing," *Sumler*, 136 F.3d at 189 n.1

(citing *Byrd v. United States*, 500 A.2d 1376, 1384 (D.C. 1985)), and his conviction on Count 16

(attempted robbery while armed) was vacated due to the government's concession that defendant

could not "stand convicted of both felony murder and the underlying felony," *id.* (citing *Leasure

v. United States*, 458 A.2d 726, 730–31 (D.C. 1983)).  Defendant's convictions were otherwise

affirmed, *id.* at 192, and defendant remains incarcerated in the custody of the Bureau of Prisons

serving a life sentence, plus 65 years.

### C.      Collateral Challenges and the Instant Motion

In the decades since his conviction became final, defendant has brought several collateral

challenges to his sentence.  In 2004, he filed *pro se* his first challenge to his conviction under 28

U.S.C. § 2255, arguing that his trial and appellate counsel had been ineffective and that the

district court had abused its discretion during his trial and sentencing.  *See* Def.'s Motion Under

28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody at 5,

ECF No. 568.  Before the motion was decided, defendant moved for leave to file a supplemental

§ 2255 motion based on the new rule of law decided in *United States v. Booker*, 543 U.S. 220

---

[5]      Defendant was also sentenced, on Counts 11, 16, and 17, to fifteen years to life imprisonment, Sent'g Tr. at
34:21–24; and on Counts 30, 31, 32, and 33, to five to fifteen years' imprisonment, to be served concurrently, *id.* at
35:9–12.

(2005). *See* Def.'s Motion for Leave to File Supplemental and/or Amend 28 U.S.C. § 2255

Pursuant to 28 U.S.C. § 2255(b)(3) New Rule of Law at 2, ECF No. 572. After the D.C. Circuit

held that *Booker* did not apply retroactively, *see In re Fashina*, 486 F.3d 1300, 1306 (D.C. Cir.

2007), defendant's motion for leave to file a supplemental § 2255 motion seeking *Booker* relief

was denied, *see* Order (Jan. 27, 2009) at 2, ECF No. 578. Defendant's original § 2255 motion

was eventually denied as time-barred. *See* Order (Feb. 3, 2011) at 1, ECF No. 583.

In 2014, defendant submitted a *pro se* letter to the Court seeking to "correct the judgment

and dismiss various counts" against him. Motion to Correct Judgment at 1, ECF No. 584. Upon

reassignment of the case to the undersigned Chief Judge, *see* Min. Entry (Apr. 4, 2016), this

Court construed defendant's letter as a § 2255 motion and denied it because defendant had not

sought leave to file a successive § 2255 motion from the court of appeals, as required under 28

U.S.C. § 2255(h). *See* Mem. Op. and Order at 5–6, ECF No. 585. After the Supreme Court's

decision in *Johnson*, defendant sought leave from the D.C. Circuit to file a second motion to

vacate under § 2255, and on September 13, 2016, the Circuit granted permission, finding that

defendant had "made a *prima facie* showing that his claim relies on a new, previously

unavailable rule of constitutional law, made retroactive to cases on collateral review by the

Supreme Court." Order (Sept. 13, 2016) at 1, ECF No. 586 (citing *Johnson*, 576 U.S. at 591, and

*Welch v. United States*, 578 U.S. 120, 130 (2016) (holding *Johnson* applied retroactively)); *see

also* Def.'s "Abridged" Motion to Vacate Under 28 U.S.C. 2255 ("Def.'s *Pro Se* Mot."), ECF

No. 587.

In light of the Supreme Court's decision in *Davis*, 139 S. Ct. at 2336, finding the residual

clause of 18 U.S.C. § 924(c) to be unconstitutionally vague, and pursuant to the Court's Standing

Order appointing the Office of the Federal Public Defender ("FPD") to represent indigent

defendants who "may qualify to seek to vacate a conviction or to seek a reduction of sentence" in accordance with the *Johnson* line of cases, *see Standing Order No. 16-33* (June 2, 2016) at 1, the Court appointed FPD to supplement defendant's *pro se* motion.  Min. Order (July 11, 2019). Defendant filed a supplemental brief, *see* Def.'s Mot., to which the government filed a partial opposition, *see* Gov't's Opp'n.  Defendant thereafter filed a reply in support of his motion, *see* Def.'s Reply in Supp. of § 2255 Mot. ("Def.'s Reply"), ECF No. 635, and, in June 2021, a second supplemental motion following the Supreme Court's decision in *United States v. Borden*, 141 S. Ct. 1817 (2021), *see* Def.'s 2d Suppl. Mot. to Vacate J. Under 28 U.S.C. § 2255 ("Def.'s Suppl. Mot."), ECF No. 674.  Defendant's § 2255 motion is now ripe for resolution. [6]

## II.    LEGAL STANDARD

A person in federal custody may petition the court in which he was sentenced for resentencing "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).  A court shall correct a sentence if "the sentence imposed was not authorized by law or otherwise open to collateral attack, or [] there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack."  *Id.* § 2255(b).  The petitioner bringing a motion under section 2255 must establish, by a preponderance of the evidence, the denial of a constitutional right.  *See United States v. Simpson*, 475 F.2d 934, 935 (D.C. Cir. 1973).

---

[6]     Defendant also has a pending *pro se* motion to reduce his sentence under Section 404(b) of the First Step Act, which makes retroactively available the more lenient penalties for certain crack cocaine offenses enacted in the Fair Sentencing Act of 2010, Pub. L. 111-220, 124 Stat. 2372.  *See* Def.'s Motion for Reduction Sentence Under Section 404(b) of the First Step Act ("Def.'s First Step Act Mot."), ECF No. 613.  After counsel was appointed to represent defendant, this motion was held in abeyance, at defendant's request, pending resolution of the instant § 2255 motion.  Min. Order (Sept. 23, 2019).

Motions under § 2255 are subject to "the strict time limits that Congress has placed on prisoners seeking collateral relief." *United States v. Hicks*, 283 F.3d 380, 385 (D.C. Cir. 2002); *see also* 28 U.S.C. § 2255(f). Section 2255 provides several possible one-year periods during which a petitioner may file a motion, including within one year of "the date on which the right asserted was initially recognized by the Supreme Court." 28 U.S.C. § 2255(f)(3). A motion that is timely under only § 2255(f)(3) must also show that the asserted right "has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." *Id.* These are independent conditions limiting the availability of relief. *Dodd v. United States*, 545 U.S. 353, 357–58 (2005). Before a petitioner may file a second or successive § 2255 motion, the petitioner must make at least a *prima facie* showing that the motion contains "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(2); *see also In re Williams*, 759 F.3d 66, 70 (D.C. Cir. 2014).

## III.    DISCUSSION

Defendant seeks vacatur of his four § 924(c) convictions in the wake of the Supreme Court's decision in *Davis*, Def.'s Mot. at 8–15, and a "full resentencing hearing" on his aggregate sentence of life without parole, plus 65 consecutive years of imprisonment, *id.* at 19–21. As already noted, the government agrees that defendant's § 924(c) conviction in Count 23 for use of a firearm during the kidnapping of Eric Brake must be vacated under *Davis*, but argues that the remaining three § 924(c) convictions continue to qualify as crimes of violence for purposes of § 924(c), and that defendant is procedurally barred from challenging them here. Gov't's Opp'n at 11–17. Regardless of whether any of defendant's § 924(c) convictions for CCE Murder are vacated, the government further contends that defendant should be resentenced

10

to the same aggregate term of imprisonment of life plus 65 years, to "be consistent with this Court's 1996 sentencing package scheme." *Id.* at 17–20.

Defendant's compliance with the labyrinthine procedural requirements of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") is considered first, followed by discussion of the substantive issues.

## A.   Defendant's Compliance with AEDPA's Procedural Requirements

The government argues defendant's instant motion is procedurally barred because defendant "did not raise his claims on direct appeal, or in his first § 2255 motion," and has not shown "cause and actual prejudice to excuse his procedural default." Gov't Opp'n at 6–7.  In a footnote, the government also argues that defendant fails to meet the higher bar necessary for filing a second or successive § 2255 motion. *Id.* at 8 n.6. [7]  None of these reasons bars consideration of the merits of defendant's pending motion, as explained below.

### 1.   Procedural Default

The government first argues defendant's motion is not properly before the Court because he has defaulted procedurally on his arguments. *Id.* at 6–7.  "The procedural default rule generally precludes consideration of an argument made on collateral review that was not made on direct appeal," *United States v. Hughes*, 514 F.3d 15, 17 (D.C. Cir. 2008), unless "the defendant establishes . . . 'cause' for the default and 'actual prejudice' resulting from the alleged violation," *United States v. Hicks*, 911 F.3d 623, 627 (D.C. Cir. 2018).  Cause for default exists, at a minimum, "where a constitutional claim is so novel that its legal basis is not reasonably

---

[7]      Section 2255 also provides that motions must be brought within one year of "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3).  The government does not contest that defendant's instant motion was timely filed within one year of the Supreme Court's decision in *Welch*, which held that *Johnson* was "a substantive decision and so ha[d] retroactive effect." *Welch*, 578 U.S. at 130.

available to counsel." *Reed v. Ross*, 468 U.S. 1, 16 (1984).  At least three circumstances demonstrate novelty: (1) the Supreme Court "explicitly overrule[s] one of [its] precedents"; (2) the Supreme Court changes course on a "longstanding and widespread practice to which [the Supreme Court had] not spoken, but which a near-unanimous body of lower court authority has expressly approved"; and (3) the Supreme Court "disapprove[s] a practice [the] Court arguably has sanctioned in prior cases."  *Id.* at 17 (quoting *United States v. Raymond Johnson*, 457 U.S. 537, 551 (1982)).  "Actual prejudice," for purposes of a procedural default inquiry, means that the alleged error at sentencing "must have 'worked to [defendant's] *actual* and substantial disadvantage, infecting' his sentencing with 'error of constitutional dimensions.'"  *Hicks*, 911 F.3d at 627 (quoting *United States v. Pettigrew*, 346 F.3d 1139, 1144 (D.C. Cir. 2003) (emphasis in original)).  To show prejudice, a petitioner "must *at least* demonstrate that 'there is a reasonable probability that, but for [the errors], the result of the proceeding would have been different.'"  *Pettigrew*, 346 F.3d at 1144 (quoting *United States v. Dale*, 140 F.3d 1054, 1056 n.3 (D.C. Cir. 1998) (emphasis and alternations in original)).  Prejudice analysis assumes the existence of an error, *id.* at 1145, but is "retrospective not prospective in nature," asking "not whether things could change on remand, but only whether the initial proceeding that actually happened would *have been* different but for the asserted constitutional error," *Hicks*, 911 F.3d at 628 (internal quotations omitted, emphasis in original).

Arguing that the defendant did not raise his claims regarding his § 924(c) convictions "on direct appeal, or in his first § 2255 motion," nor "show cause for his failure to do so and prejudice as a result of his failure," the government posits that these claims are improperly before the Court in the instant motion.  Gov't's Opp'n at 6. [8]  Moreover, the government asserts

---

[8]  The government apparently believes that defendant is also procedurally barred from seeking vacatur of his § 924(c) conviction in Count 23 for use of a firearm during a kidnapping, but "affirmatively waive[s] any procedural

defendant cannot establish cause for the default because "futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time." *Id.* at 7 (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)).  Defendant counters that he has complied with all the procedural requirements of § 2255, including by showing cause and prejudice, and notes that this Court has previously "rejected these exact arguments" presented by the government.  Def.'s Reply at 2 (citing *United States v. Paul Hammond*, 354 F. Supp. 3d 28, 43 (D.D.C. 2018)).

The government's position that defendant's failure previously to assert his current challenge to his § 924(c) convictions renders that challenge procedurally barred, is easily dispatched.  The constitutional right vindicated by the *Johnson* line of cases, culminating in *Davis*, was unforeseeable, and "no one—the government, the judge, or the defendant—could reasonably have anticipated" the decision.  *United States v. Redrick*, 841 F.3d 478, 480 (D.C. Cir. 2016).  *Johnson* overruled two prior Supreme Court decisions, *James v. United States*, 550 U.S. 192 (2007), and *Sykes v. United States*, 564 U.S. 1 (2011), *see Johnson*, 576 U.S. at 606, making defendant's instant motion securely positioned in *Reed*'s first example of novelty.

The prejudice to defendant is also clear.  If any of the predicate offenses for defendant's § 924(c) convictions fails to qualify as a crime of violence—and the government concedes that at least one of them does, *see* Gov't's Opp'n at 11—then defendant's sentence is, in all likelihood, at least twenty years too long.  The government's effort to foreclose the *Johnson* avenue to relief through procedural default thus fails.  *See United States v. Sumner*, No. 00-cr-383 (CKK), 2022 WL 951374, at *10 (D.D.C. Mar. 30, 2022) ("With regard to the Government's argument that [defendant] procedurally defaulted his [*Johnson*] claims, this Court agrees with other judges

---

default defense with respect to that claim" based on its concession that the predicate offense for that count, and that count alone, "no longer qualifies [as a "crime of violence"] following *Davis*."  Gov't's Opp'n at 9 n.6.

from this Circuit who have rejected the procedural hurdles that the Government asserts impede [defendant] from obtaining relief."); *Sorto v. United States*, No. 08-cr-167-4 (RJL), 2022 WL 558193, at *2 (D.D.C. Feb. 24, 2022) (finding no need to "spill any additional ink rejecting the Government's claim of procedural default" (citing, *inter alia*, *Paul Hammond*, 354 F. Supp. 3d at 43)); *United States v. Carter*, 422 F. Supp. 3d 299, 310 (D.D.C. 2019) (denying procedural default on *Johnson* claim); *United States v. West*, 314 F. Supp. 3d 223, 229–230 (D.D.C. 2018) (same); *United States v. Navarro Hammond*, 351 F. Supp. 3d 106, 124 (D.D.C. 2018) (same).

## 2.    Limits on Successive Petitions Under 28 U.S.C. § 2255(h)(2)

In a footnote, the government also alludes to a second procedural impediment posed by AEDPA: the higher standard under which a second or successive section 2255 motion must be scrutinized before relief may be granted.  *See* Gov't's Opp'n at 8 n.6.  When a defendant has filed a collateral challenge to his sentence under section 2255 previously, any "second or successive motion" submitted must be reviewed and "certified . . . by a panel of the appropriate court of appeals" before the district court may consider it.  28 U.S.C. § 2255(h)(2).  If a three-judge panel of the court of appeals "determines that the application makes a *prima facie* showing that the application satisfies the requirements of this subsection," *id.* § 2244(b)(3)(B)–(C), including that the claim relies on a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable," *id.* § 2255(h)(2), the panel may authorize the filing of the motion in the district court, *id.* § 2244(b)(3)(A).  Upon receipt of a second or successive application certified by the court of appeals, however, the district court must "dismiss any claim presented . . . unless the applicant shows that the claim satisfies the requirements of this section."  *Id.* § 2244(b)(4).  Thus, before the court of appeals, an applicant need only make a "*prima facie* showing that [the application] contains a previously unavailable new rule of constitutional law made retroactive on collateral review by the Supreme

14

Court," *In re Williams*, 759 F.3d at 69–70, but "to survive dismissal in district court, the applicant must actually show that the claim satisfies the standard," *Tyler v. Cain*, 533 U.S. 656, 661 n.3 (2001).

When the D.C. Circuit certified defendant's instant § 2255 motion, *see* Order (Sept. 13, 2016), it did so on the basis that defendant had "made a *prima facie* showing that his claim relie[d] on a new, previously unavailable rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court," although it "expresse[d] no opinion as to the merits of petitioner's claim." *Id.* at 1 (citing *Johnson*, 576 U.S. at 591, *Welch*, 578 U.S. at 130, and *In re Williams*, 759 F.3d at 72). As explained further below, with regard to his § 924(c) conviction predicated on kidnapping in Count 23, defendant certainly has "show[n] that the claim satisfies the requirements" of §§ 2244 and 2255, 28 U.S.C. § 2244(b)(4), given his convincing argument, and the government's concession, that the federal kidnapping offense does not fit the only definition of "crime of violence" under § 924(c) remaining after *Davis*. With regard to his other § 924(c) convictions, defendant has not "show[n]" conclusively that CCE Murder fails to qualify as a crime of violence under the elements clause of § 924(c), and yet, given "the unsettled state of the law on the showing required by post-*Johnson* [] habeas petitioners," *West*, 314 F. Supp. 3d at 232, the Court declines to dispose of the motion on procedural grounds. Where, as here, the requisite procedural showing merges so closely with merits, disposition on merits is the preferable course. *See United States v. Wilson*, No. 96-cr-319-01 (CKK), 2019 WL 4990752, at *10 (D.D.C. Oct. 7, 2019) (although "procedural default is generally a preliminary issue to be addressed before a federal court's consideration of the merits of a claim," prejudice analysis "essentially requires a merits analysis" such that "'when relief is due to be denied even if claims are not procedurally barred, a federal court can skip over the procedural bar issues' [to] . . .

address the merits" of a defendant's claims (quoting *Loggins v. Thomas*, 654 F.3d 1204, 1215 (11th Cir. 2011))).  Thus, defendant's claims as to his three § 924(c) convictions predicated on CCE Murder will be addressed on the merits.

### B.  Defendant's § 924(c) Convictions

Defendant argues that the Supreme Court's holdings in *Johnson* and *Davis* render the 65 years he is serving for his § 924(c) convictions in Counts 20 through 23 an illegal sentence. Def.'s Mot. at 1.  The shifts in the legal landscape resulting from *Johnson* and its progeny are discussed first, followed by their application to defendant's challenged § 924(c) convictions.

### 1.  The Supreme Court's Decisions in *Johnson* and *Davis*

In *Johnson*, the Supreme Court considered the constitutionality of an ACCA provision that enhanced the sentence imposed on a defendant convicted of being a felon in possession of a firearm if he had "three or more previous convictions for a 'violent felony.'"  576 U.S. at 593; *see also* 18 U.S.C. § 924(e).  The statute offered two alternate definitions of "violent felony": under the "elements clause," a violent felony included any crime punishable by more than one year's imprisonment that "has as an element the use, attempted use, or threatened use of physical force against the person of another."  18 U.S.C. § 924(e)(2)(B)(i).  Under the "residual clause," a violent felony also included a crime punishable by more than one year's imprisonment that "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."  *Id.* § 924(e)(2)(B)(ii).  The Supreme Court analyzed whether the residual clause violated the Fifth Amendment's Due Process Clause and the "well-recognized" prohibition against "vagueness in criminal statutes." *Johnson*, 576 U.S. at 595 (quoting *Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926)). The statute's reference to crimes "otherwise involv[ing] conduct that presents a serious potential risk of physical injury to another" was understood by the Court to demand a categorial approach

to interpretation, whereby a court must "picture the kind of conduct that the crime involves in 'the ordinary case' and . . . judge whether that abstraction presents a serious potential risk of physical injury." *Id.* at 596 (quoting *James*, 550 U.S. at 208). Set against this understanding, the Court observed that the residual clause of § 924(e) left "grave uncertainty about how to estimate the risk posed by a crime" by "t[ying] the judicial assessment of risk to a judicially imagined 'ordinary case' of a crime, not to real-world facts or statutory elements," *id.* at 597, and created "uncertainty about how much risk it takes for a crime to qualify as a violent felony," *id.* at 598. "By combining indeterminacy about how to measure the risk posed by a crime" and "indeterminacy about how much risk it takes for the crime to qualify as a violent felony," the Court found the residual clause of § 924(e) produced "more unpredictability and arbitrariness than the Due Process Clause tolerates," and declared this definitional clause unconstitutional. *Id.*

The next year, in 2016, the Court held that *Johnson* had been a substantive decision with retroactive effect in cases on collateral review. *Welch*, 578 U.S. at 130. Then, in 2018, the Court extended the holding in *Johnson* to strike down, on the same grounds, a similarly worded provision in the definition of "crime of violence" codified in 18 U.S.C. § 16(b). *See Sessions v. Dimaya*, 138 S. Ct. 1204, 1223 (2018).

Finally, in 2019, the Court considered a challenge for unconstitutional vagueness to a different provision of 18 U.S.C. § 924, which enhances the prison sentence imposed on a defendant who, in connection with a "crime of violence" or drug trafficking offense, uses a firearm. *Davis*, 139 S. Ct. at 2323; *see* 18 U.S.C. § 924(c)(1). Like the portion of § 924 at issue in *Johnson*, section 924(c) offered two alternative definitions for "crime of violence": under the elements clause, a crime of violence was defined as a felony having "as an element the use, attempted use, or threatened use of physical force against the person or property of another," 18

U.S.C. § 924(c)(3)(A), or under the residual clause, such a crime was defined as a felony "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense," *id.* § 924(c)(3)(B). Noting that the residual clause in § 924(c)(3) bore "more than a passing resemblance" to the ACCA residual clause at issue in *Johnson* and the residual clause of 18 U.S.C. § 16(b) at issue in *Dimaya*, *Davis*, 139 S. Ct. at 2325–26, the Court held that the residual clause in § 924(c)(3) "provide[d] no reliable way to determine which offenses qualify as crimes of violence" and therefore was also "unconstitutionally vague," *id.* at 2324. Recognizing that the residual clause of § 924(c) had "[f]or years" been understood "to require exactly the same categorial approach that [the] Court found problematic in the residual clauses of the ACCA and § 16," the Court declined to read into § 924(c)(3)(B) a different interpretation, and instead struck this clause as unconstitutional, since "the imposition of criminal punishment can't be made to depend on a judge's estimation of the degree of risk posed by a crime's imagined 'ordinary case.'" *Id.* at 2326.

The effect of the Supreme Court's decisions in the *Johnson* line of cases is that, in order to receive an enhanced consecutive penalty of five to thirty years' imprisonment for use of a firearm during a crime of violence, under 18 U.S.C. § 924(c)(1), a defendant must have been convicted of an offense qualifying as a crime of violence under the elements clause of § 924(c)(3)(A)—*i.e.*, of a felony offense "that has as an element the use, attempted use, or threatened use of physical violence against the person or property of another." Predicate offenses that qualify as "crimes of violence" *only* under the residual clause of § 924(c)(3)(B), no longer suffice to support the sentencing enhancement provided in that statute. [9]

---

[9]        As discussed above, an individual may be convicted under 18 U.S.C. § 924(c) for use of a firearm "in relation to any crime of violence *or* drug trafficking crime." *Id.* § 924(c)(1)(A) (emphasis added). Drug trafficking convictions thus continue to qualify as predicate offenses under § 924(c), even after *Johnson* and *Davis*, but neither party argues that prong of the statute applies here. *See* Gov't's Opp'n at 17 (arguing that "CCE murder qualifies as

### 2.    Count 23: Use of Firearm During Kidnapping Under 18 U.S.C. § 1201

Defendant was convicted, in Count 23, of violating § 924(c) for "[u]se of a firearm during and in relation to a crime of violence on or about December 1, 1992," namely, the Brake kidnapping, with which he was convicted in Count 18, Verdict Form at 15, and sentenced to life imprisonment for the kidnapping, Sent'g Tr. at 34:8–11, and 20 years' imprisonment, to be served consecutively, for the use of a firearm, *id.* at 35:6–8.  The parties agree that this Count 23 conviction must be vacated because defendant's felony kidnapping conviction only qualifies as a "crime of violence" under § 924(c)(3)'s residual clause, which was invalidated by the Supreme Court in *Davis*.  Def.'s Mot. at 10–12; Gov't's Opp'n at 11.  The felony kidnapping conviction does not qualify as a "crime of violence" under the elements clause of § 924(c)(3) because, examining the statute using the categorial approach, kidnapping "may be accomplished through non-physical means" and thus does not have as an element the use or threatened use of violent physical force.  Def.'s Mot. at 10.  Under 18 U.S.C. § 1201(a), a defendant who "unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away . . . any person" may be found guilty of felony kidnapping if they "hold[]" that person "for ransom or reward."  As the government explains, "[t]wo of those means, inveigling and decoying, do not satisfy the elements clause of Section 924(c)(3)(A)."  Gov't's Opp'n at 11 n.7.  Moreover, "holding" a person "can be accomplished by 'deception,' which does not involve the use, attempted use, or threatened use of physical force against the person."  *Id.* (quoting *United States v. Walker*, 934 F.3d 375, 379 (4th Cir. 2019)).  Thus, "the minimum criminal conduct required" for a kidnapping conviction under 18 U.S.C. § 1201 does not "*necessarily* involve[] violence."  Def.'s

---

a crime of violence under the force clause [of] 18 U.S.C. § 924(c)(3)(A)"); Def.'s Mot. at 8–9 (arguing that all four of defendant's "§ 924(c) convictions for using a firearm in relation to a 'crime of violence' are now void because, after *Johnson* and *Davis*, kidnapping and CCE murder no longer qualify as 'crimes of violence'").

Mot. at 9 (citing *Montcrieffe v. Holder*, 569 U.S. 184, 190–91 (2013)).  *See also United States v. Lassiter*, 1 F.4[th] 25, 29 (D.C. Cir. 2021) (finding that "[w]ithout the residual clause" of § 924(c), "kidnapping no longer met the definition of a 'crime of violence'").

Accordingly, the Court agrees with the parties that felony kidnapping does not qualify as a crime of violence under the elements clause of § 924(c) and that defendant's conviction on Count 23 conviction must be vacated.

### 3.        Counts 20–22: Use of a Firearm During CCE Murder Under 21 U.S.C. § 848(e)(1)(A)

The parties disagree as to whether defendant's three remaining § 924(c) convictions may stand after *Davis*.  In Counts 20, 21, and 22, defendant was charged under § 924(c) with the "[u]se of a firearm during and in relation to a crime of violence or a drug trafficking crime." Verdict Form at 15.  Recall that Count 20 relates to the use of a firearm during the Riley CCE Murder charged in Count 10; Count 21 relates to the use of a firearm during the Murray CCE Murder charged in Count 14; and Count 22 relates to the use of a firearm during the Hartnett CCE Murder charged in Count 15.  *Id.*; *see also* Retyped Superseding Indictment at 40. Defendant was sentenced to life imprisonment on each of the CCE Murders, Sent'g Tr. at 34:8– 11, and consecutive terms of five years' imprisonment on Count 20 and 20 years' imprisonment on each of Counts 21 and 22, *id.* at 35:3–8.

Defendant argues that CCE Murder does not qualify as a crime of violence under the elements clause of § 924(c) both because CCE Murder "only requires a *mens rea* of negligent or merely accidental conduct," and because "its *actus reus*, much like murder for hire, does not necessarily require the use or threatened use of physical force by the defendant."  Def.'s Mot. at 3.

The CCE Murder statute reads, in full:

> "[A]ny person engaging in or working in furtherance of a continuing criminal
> enterprise, or any person engaging in an offense punishable under section
> 841(b)(1)(A) or section 960(b)(1) of this title who intentionally kills **or** counsels,
> commands, induces, procures, or causes the intentional killing of an individual
> and such killing results, shall be sentenced to any term of imprisonment, which
> shall not be less than 20 years, and which may be up to life imprisonment, or may
> be sentenced to death."

21 U.S.C. § 848(e)(1)(A) (emphasis added).  Defendant observes that "the *mens rea*

'intentionally' applies to 'kills,' but not to 'counsels, commands, induces, procures, or causes the

intentional killing of an individual,'" such that Congress "did *not* specify a *mens rea* for when a

defendant 'counsels, commands, induces, procures, or causes' another individual to intentionally

kill an individual."  Def.'s Mot. at 13 (emphasis in original).  According to defendant, this means

that an individual could be found guilty of CCE Murder without having *intended* for the victim

to be killed, by "accidentally or negligently induc[ing] another to intentionally kill an

individual."  *Id.*  Pointing to the Supreme Court's holding in *Borden*, 141 S. Ct. at 1825, that "a

criminal offense with a *mens rea* of recklessness cannot qualify as a 'violent felony'" under

ACCA, Def.'s Suppl. Mot. at 1, defendant contends CCE Murder therefore "categorically fails to

qualify as a crime of violence," given the possibility that a violation may occur "with *mens rea*

equal to negligent or even merely accidental conduct," Def.'s Mot. at 14.

 Defendant further argues that CCE Murder fails to qualify as a crime of violence under

the elements clause of § 924(c) because the *actus reus* of CCE Murder "does not require a

defendant [himself] to use or threaten to use violent physical force."  *Id.*  Defendant analogizes

the *actus reus* of CCE Murder to that of murder-for-hire, under 18 U.S.C. § 1958, which

criminalizes interstate travel with the "intent that a murder be committed" in exchange for

payment, *id.* § 1958(a), arguing that in at least some circumstances, the two offenses are

interchangeable.  *See* Def.'s Mot. at 14 (citing *United States v. Aguilar*, 585 F.3d 652 (2d Cir.

2009), which was "charged as a CCE murder" because it involved a criminal enterprise, but "was in all other respects a murder for hire").  Courts in other circuits have held that murder-for-hire does not constitute a crime of violence under the elements clause of § 924(c), *see id.* at 15 (citing *Ng v. Att'y General*, 436 F.3d 392, 397 (3d Cir. 2006); *Dota v. United States*, 368 F. Supp. 3d 1354, 1360 (C.D. Cal. 2018); *United States v. Bowman*, 873 F.3d 1035, 1042 (8th Cir. 2017); *United States v. Herr*, 16-cr-10038 (IT), 2016 WL 6090714, at *4 (D. Mass. Oct. 18, 2016)), and because the two offenses involve overlapping criminal acts, defendant argues that "[t]he same conclusion follows for CCE Murder," *id.*

The government, in turn, analogizes to the concept of aiding and abetting liability to argue that defendant's CCE Murder convictions constitute "crimes of violence" under the elements clause of § 924(c).  Noting the similarity between § 848(e)'s provision that CCE murder may be committed where a defendant "counsels, commands, induces, procures, or causes the intentional killing of an individual" and the definition of aiding and abetting at 18 U.S.C. § 2 ("Whoever . . . aids, abets, counsels, commands, induces or procures" the commission of an offense "is punishable as a principal"), the government argues that "aiding and abetting liability is embedded within the statute and the definition of the crime."  Gov't's Opp'n at 13–14.  In the government's construction, if a defendant aids and abets murder in furtherance of a criminal enterprise, and "an intentional killing actually result[s], whether by defendant's own hand or by the hand of his agent," *id.* at 13, defendant is "punishable" as if he carried out the intentional killing himself, *id.* (quoting *Rosemond v. United* States, 572 U.S. 65, 70 (2014)).  Since murder, whether charged as a federal offense or under the D.C. Code, involves "physical force" and "continues to qualify as a crime of violence" under the elements clause of § 924(c), the government argues that CCE Murder is a crime of violence involving the use, attempted use, or

threatened use of force, even if a defendant's direct involvement is limited to aiding and abetting that intentional killing. *Id.* at 14.

Rejecting defendant's analogy between CCE Murder and murder-for-hire on the grounds that, to obtain a murder-for-hire conviction, "[i]t is enough [to prove] that a person . . . agreed to kill someone in exchange for something of value," *id.* at 16, the government compares CCE Murder to statutes "which make it a federal offense to commit certain predicate crimes, including crimes under state law, in furtherance of a racketeering enterprise," such as the Racketeer Influenced and Corrupt Organizations ("RICO") and the Violent Crimes in Aid of Racketeering ("VICAR") statutes, 18 U.S.C. §§ 1962(c) and 1959, respectively, Gov't's Opp'n at 15.  Courts have interpreted these statutes to qualify as crimes of violence under § 924(c) if the "predicate crime requires the jury to find the use, attempted use, or threatened use of physical force." *Id.* (citing *United States v. Brown*, 945 F.3d 72, 76 (2d Cir. 2019) (RICO with predicate bank robbery acts); *United States v. Mathis*, 932 F.3d 242, 265 (4th Cir. 2019) (VICAR murder)).  Under the government's logic, because the "predicate crime" to CCE Murder—an intentional killing that actually results in the victim's death—necessarily involves the use, attempted use, or threatened use of physical force, the resulting offense of CCE Murder is also a crime of violence.

The D.C. Circuit has not addressed the issue of whether CCE Murder constitutes a crime of violence under the elements clause of § 924(c), and no other circuit has resolved the question. [10]  Applying the categorical approach to the CCE Murder statute, as the Supreme Court

---

[10]      In *United States v. Barrett*, No. 04-cr-115 (RAW), 2021 WL 5770424 (E.D. Okla. Dec. 6, 2021), a case involving the related offense of 21 U.S.C. § 848(e)(1)(B), which prohibits the "intentional killing" or "counsel[ing], command[ing], induc[ing], procur[ing], or caus[ing] the intentional killing" of a law enforcement officer "while attempting to avoid apprehension, prosecution or service of a prison sentence" for a felony drug offense, *id.*, the court found "no explicit authority" as to whether the offense constituted a crime of violence for purposes of § 924(c)(3)(A). *Barrett*, 2021 WL 5770424, at *2.  Reasoning that "it is impossible to cause bodily injury without applying force in the common-law sense," *id.* (quoting *United States v. Castleman*, 572 U.S. 157, 170 (2014)), and thus "impossible to cause death without applying physical force," *id.*, the *Barrett* court concluded that section 848(e)(1)(B) did in fact meet the definition of crime of violence under the elements clause of § 924(c).

has instructed, *see Davis*, 139 S. Ct. at 2326, the Court agrees with the government that CCE

Murder qualifies as a crime of violence under the elements clause of 18 U.S.C. § 924(c), because

the statute is widely interpreted to require a defendant to act with intent, reflecting a purposeful

or knowing *mens rea*, and because even the "least culpable [] of the acts criminalized" under the

statute, *Borden*, 141 S. Ct. at 1822, involves the use of physical force.

First, the CCE Murder statute is best understood to comply with the elevated *mens rea*

requirements for crimes of violence, addressed most recently by the Supreme Court in *Borden*.

In descending order of culpability, American criminal law recognizes "four states of mind . . .

that may give rise to criminal liability": purpose, knowledge, recklessness, and negligence.  *Id.* at

1823.  A person acts with purpose when he "consciously desires [a particular] result, whatever

the likelihood of that result happening from his conduct."  *United States v. U.S. Gypsum Co.*, 438

U.S. 422, 455 (1978).  A person acts with knowledge when "'he is aware that a result is

practically certain to follow from his conduct,' whatever his affirmative desire."  *Borden*, 141 S.

Ct. at 1823 (quoting *United States v. Bailey*, 444 U.S. 394, 404 (1980), internal alterations

omitted).  A person who "'consciously disregards a substantial and unjustifiable risk' attached to

his conduct, in 'gross deviation' from accepted standards," demonstrates a reckless mental state,

*id.* at 1824 (quoting Model Penal Code § 2.02(2)(c)), by contrast to a person who "is not but

'should be aware' of such a 'substantial and unjustifiable risk,' again in 'gross deviation' from

the norm," and thereby acts negligently, *id.* (quoting Model Penal Code § 2.02(2)(d)).  Even

where the statute does not specify a *mens rea*, by default, "common-law offenses against the

'state, the person, property, or public morals' [] presume a scienter requirement in the absence of

express contrary intent."  *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 71–72 (1994)

(quoting *Morrisette v. United States*, 342 U.S. 246, 255 (1952)); *see also United States v. Carr*,

946 F.3d 598, 605 (D.C. Cir. 2020) (noting a "general 'presumption in favor of scienter'" even where an offense "lacks any explicit *mens rea* element" (quoting *Carter v. United States*, 530 U.S. 255, 268 (2000)).

The purposeful and knowing *mens rea* standards are often grouped together, because both reflect "a deliberate choice" by the defendant to injure another "with full awareness of consequent harm." *Borden*, 141 S. Ct. at 1823. In both situations, defendant "intends [the] result of his act," *U.S. Gypsum Co.*, 438 U.S. at 445, even if defendant may not "affirmatively *want*[] the result," *Borden*, 141 S. Ct. at 1823 (emphasis added); *see also id.* at 1827 (explaining that a driver who "sees a pedestrian in his path but plows ahead anyway, knowing the car will run him over" has "consciously deployed the full force of an automobile at another person," thus "intend[ing] the result," even if he has no animus toward, or desire to hit, the victim). On the other hand, when a defendant acts with "insufficient concern with a risk of injury," demonstrating a reckless or negligent *mens rea*, he is understood to be less culpable, because "the fault lies in the person's simple failure to perceive the possible consequences of his behavior." *Id.* at 1824 (internal quotations omitted). Recognizing this dichotomy, the *Borden* Court held that the definition of "crime of violence" under the ACCA applied only to offenses involving "a purposeful and knowing mental state—a deliberate choice of wreaking harm on another, rather than mere indifference to risk," *id.* at 1830, because offenses committed with a less culpable *mens rea* "do not require, as ACCA does, the active employment of force against another person," *id.* at 1834. *See also Leocal v. Ashcroft*, 543 U.S. 1, 9, 11 (2004) (holding that the definition of "crime of violence" under 18 U.S.C. § 16(a) requires "a higher *mens rea* than merely accidental or negligent conduct" because "the 'use . . . of physical force against the person or property of another' [] most naturally suggests a higher degree of intent").

The definition of "crime of violence" set out in ACCA, which was at issue in *Borden,* and the definition of the same phrase in § 924(c)(3) "bear more than a passing resemblance" to one another, *Davis*, 139 S. Ct. at 2325, and courts "normally presume that the same language in related statutes carries a consistent meaning," *id.* at 2329 (citing *Sullivan v. Stroop*, 496 U.S. 47, 484 (1990)); *see id.* at 2326, 2336 (extending *Johnson* holding regarding ACCA's definition of "crime of violence" to apply to the residual clause of § 924(c)); *see also Dimaya*, 138 S. Ct. at 1223 (extending *Johnson* holding to apply to 18 U.S.C. § 16(b), the residual clause of the general "crime of violence" definition for many federal statutes).

Thus, to qualify as a crime of violence for purposes of § 924(c), a predicate offense such as CCE must involve a purposeful or knowing *mens rea*, as the CCE Murder statute clearly does. Section 848(e)(1)(a) "provides a mandatory minimum term of 20 years' imprisonment and up to life imprisonment, or the death penalty, for any person 'who intentionally kills or counsels, commands, induces, procures, or causes the intentional killing of an individual and such killing results' . . . when 'engaging in or working in furtherance of a continuing criminal enterprise.'" *United States v. Sumler*, No. 95-cr-154-2 (BAH), 2021 WL 6134594, at *13 (D.D.C. Dec. 28, 2021) (quoting 21 U.S.C. § 848(e)(1)(A)).  A defendant who "intentionally kills" the victim while working in furtherance of a continuing criminal enterprise has obviously displayed such intent.  Where, alternatively, a defendant commits CCE Murder by counseling, commanding, inducing, procuring, or causing the victim to be killed, the active, intentional nature of each of these verbs reflects the same degree of direct, knowing involvement and thus the same heightened culpability.  *See Counsel*, def. 1, Oxford English Dictionary (3d ed. 2007) ("To give or offer counsel or advice . . . to advise."); *Command*, def. 1, Oxford English Dictionary (3d ed. 2007) ("To order, enjoin, bid with authority or influence."); *Induce*, def. 1, Oxford English

Dictionary (3d ed. 2007) ("To lead (a person), by persuasion or some influence or motive that acts upon the will, to . . . some action[;] . . . to lead on, move, influence, prevail upon (any one) *to do* something." (emphasis in original)); *Procure*, def. 1, Oxford English Dictionary (3d ed. 2007) ("To obtain; to bring about."); *Cause*, def. 1a, Oxford English Dictionary (3d ed. 2007) ("To . . . effect, bring about, produce, induce, make.").  The plain language of the statute does not extend to reckless or negligent participants in a victim's death, but instead focuses on active killers and those wielding their own influence to bring about an intentional death.

Thus, not surprisingly, courts interpreting the CCE Murder statute have consistently found a heightened *mens rea* to apply, regardless of the form of defendant's contribution to the intentional killing.  *See, e.g., United States v. Chandler*, 996 F.2d 1073, 1099–1100 (11th Cir. 1993) ("Section 848(e) sets forth the elements of the crime (any person engaged in a continuing criminal enterprise who procures the intentional killing of an individual), the *mens rea* (intent), and a [] penalty (20 years imprisonment to life, or the death penalty)."); *United States v. Angela Johnson*, 495 F.3d 951, 967 (8th Cir. 2007) ("To establish CCE murder, the government must prove," *inter alia*, "that [defendant] *intentionally* commanded, induced, procured, or caused the killing," even where defendant was merely "charged with aiding and abetting a CCE murder" (emphasis added)); *United States v. Villarreal*, 963 F.2d 725, 728 (5th Cir. 1992) (finding CCE Murder required a *mens rea* of "intent"); *United States v. Tidwell*, No. 94-cr-353 (MOR), 1995 WL 764077, at *2 (E.D. Pa. Dec. 22, 1995) (same); *United States v. Beckford*, 966 F. Supp. 1415, 1426 (E.D. Va. 1997) ("[T]he Government must show that a CCE existed at the time of the intentional killing and that the intentional killing was specifically *intended* by the defendants to further the goals of the CCE." (emphasis added)).  Indeed, in the instant case, the jury was instructed that to convict defendant on the CCE Murder counts, they must find beyond a

reasonable doubt that defendant "had the specific intent to kill the decedent[s]," which the sentencing court defined as defendant "act[ing] with the purpose or conscious intention to cause death," Trial Tr. (July 30, 1996) at 86:2–4, even if he had not "physically participate[d] in the shooting that caused the victim's death," *id.* at 87:10–12.

As such, defendant's construction that the word "or" separating the words "intentionally kills" from "counsels, commands, induces, procures, or causes," suggests that the CCE Murder statute does not assign a heightened "intent" *mens rea* to the latter string of verbs, *see* Def.'s Suppl. Mot. at 3, flies in the face of the plain language of § 848(e)(1)(A), as well as other courts' consistent interpretation of the statute to require defendant to act intentionally, regardless of whether defendant himself commits the killing.  Defendant points to no cases convicting a defendant of CCE Murder with evidence that defendant acted with a lesser *mens rea*.  *Borden*'s holding that defendant's § 924(c) convictions must be vacated if the underlying predicate offense can be committed recklessly or negligently does not apply here where the CCE Murder predicate requires an intent *mens rea*.  *Borden*, therefore, does not require vacatur of defendant's three § 924(c) convictions predicated on CCE Murder.

Defendant's arguments regarding the *actus reus* requirement of CCE Murder fare no better.  This predicate offense qualifies as a crime of violence for purposes of § 924(c) because the conduct required to support a CCE Murder conviction involves the use of physical force.  As discussed above, the Supreme Court instructs that, when determining whether an offense qualifies as a predicate offense under § 924(c), a court must use the categorical approach, "view[ing] the crime 'in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion,'" *Carr*, 946 F.3d at 601 (quoting *Begay v. United States*, 553 U.S. 137, 141 (2008)), which necessarily requires the court

to turn its focus to whether "the *least* serious" version of the offense, *Borden*, 141 S. Ct. at 1832, meets the statutory requirements. *See Davis*, 139 S. Ct. at 2326. Thus, a felony offense qualifies as a crime of violence under § 924(c) when, regardless of "how the defendant actually committed his crime," *id.* at 2326, the offense "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). In the parallel ACCA context, the Supreme Court has understood "physical force" to mean force "capable of causing injury" that is "sufficient to overcome a victim's resistance." *Stokeling v. United States*, 139 S. Ct. 544, 554 (2019).

Based on the plain language of the statute, CCE Murder—which, as discussed above, triggers enhanced penalties "for any person 'who intentionally kills or counsels, commands, induces, procures, or causes the intentional killing of an individual and such killing results' . . . when 'engaging in or working in furtherance of a continuing criminal enterprise,'" *Sumler*, 2021 WL 6134594, at *13 (quoting 21 U.S.C. § 848(e)(1)(A))—meets the requirements of the elements clause of 18 U.S.C. § 924(c)(3). Absent the element of an "intentional killing," no CCE Murder offense is committed. As the government rightly notes, "the intentional use of force to kill the victim . . . necessarily involves 'physical force,'" Gov't's Opp'n at 14, that is "capable of causing injury" and "sufficient to overcome a victim's resistance," *Stokeling*, 139 S. Ct. at 554. Defendant would narrow the definition of "crime of violence" in § 924(c)(3)(A) to apply solely to offenses where defendant *himself* used, threatened, or attempted to use physical force, *see* Def.'s Mot. at 14, and yet that is not the definition the Congress supplied. The elements clause simply mandates that, for the § 924(c) sentence enhancement to apply, defendant be convicted of an offense that "has as an element the use . . . of physical force against the person or property of another," 18 U.S.C. § 924(c)(3)(A), without regard for how that physical

force was employed or who did so.  *See United States v. Gomez*, No. 99-cr-1048-2 (DC), 2021

WL 2592965, at \*3 (S.D.N.Y. June 24, 2021) (finding CCE Murder "remain[ed] a valid

predicate under section 924(c)(3)(A)" because "[a] substantive conviction of a categorical crime

of violence involving a firearm is a valid predicate for a § 924(c) conviction, regardless of what

theory of liability it proceeds on").

Defendant's strained comparison to murder-for-hire is unpersuasive.  *See* Def.'s Mot. at

14.  That statute criminalizes "travel[ing] in or caus[ing] another (including the intended victim)

to travel in interstate or foreign commerce . . . with intent that a murder be committed . . . as

consideration for the receipt of, or as consideration for a promise or agreement to pay, anything

of pecuniary value."  18 U.S.C. § 1958(a).  As defendant rightly notes, *see* Def.'s Mot. at 15,

courts in other circuits have held that murder-for-hire does not constitute a crime of violence

under § 924(c), but they have done so because "the Government need not prove that any person

used any degree of force or that any person was injured as a result" in order to obtain a

conviction.  *Dota*, 368 F. Supp. 3d at 1361.  Notably absent from the murder-for-hire offense is

an element akin to the CCE Murder requirement that the intended "killing results."  21 U.S.C.

§ 848(e)(1)(A).  Instead, the offense "proscribes the use of interstate commerce facilities in the

commission of a murder-for-hire regardless of whether the person solicited to commit the murder

agrees to the plan or not," *Ng*, 436 F.3d at 397, and thus "a violation of § 1958 can occur without

the use, attempted use, or threatened use of physical force against another person" by defendant

or any other actor, *United States v. Cordero*, 973 F.3d 603, 625–26 (6th Cir. 2020) (internal

quotations omitted).

The requirement that a CCE Murder involve an actual, "intentional killing" further

distinguishes this offense from murder conspiracy offenses, which do not constitute crimes of

violence for purposes of § 924(c) because the offenses may be committed without murder, or any other physical harm, actually resulting. *See, e.g., United States v. Martinez*, 991 F.3d 347, 354 (2d Cir. 2021) (concluding that RICO Conspiracy, under 18 U.S.C. § 1962(d), "is *not* a crime of violence under the force clause . . . since its key element is simply an *agreement* to commit a crime" and thus "no violent act . . . must be committed in order to be guilty of the offense"). Rather, CCE Murder more closely tracks murder in aid of racketeering charged under the VICAR statute, 18 U.S.C. § 1959, which proscribes murder "either (1) in exchange for 'anything of pecuniary value from an enterprise engaged in racketeering activity,' or (2) 'for the purpose of gaining entrance to or maintaining or increasing position in' such an enterprise." *Sorto*, 2022 WL 558193, at *4 (quoting 18 U.S.C. § 1959). This statutory violation "remains a valid predicate offense" under § 924(c) because "intentionally causing the death of another person invariably involves force capable of causing physical pain or injury to another person." *Sessa v. United States*, No. 92-cr-351 (ARR), 2020 WL 3451657, at *5 (E.D.N.Y. June 24, 2020) (internal alterations and quotations omitted).

In sum, CCE Murder requires a *mens rea* of intent and includes elements of an "intentional killing" with the requisite employment of physical force. Thus, this predicate offense fits cleanly within the definition of "crime of violence" provided in the elements clause of § 924(c)(3). The Supreme Court's invalidation of the parallel definition of "crime of violence" in the residual clause of § 924(c)(3) therefore has no effect on defendant's § 924(c) convictions in Counts 20–22 for use of a firearm during CCE Murder.

### C.    The Sentencing Package Doctrine Does Not Permit Reopening Defendant's Life Sentences

Defendant's partial vindication under *Davis* with vacatur of his § 924(c) conviction on Count 23 has little practical effect on his sentence. As discussed *supra* in Part I.B., defendant

was sentenced to six concurrent mandatory life sentences for his federal offenses—on Count 1 (Crack Conspiracy); Count 3 (RICO Conspiracy); Counts 10, 14, and 15 (CCE Murder); and Count 18 (Kidnapping)—as well as 65 years to be served consecutively for his four § 924(c) convictions.  Both parties invoke the sentencing package doctrine to argue that defendant should be resentenced on other counts of conviction, but for different ends: defendant, naturally, seeks a meaningful sentence reduction while the government seeks no sentence alteration at all, despite vacatur of a conviction accounting for a non-trivial 20 years of defendant's imposed sentence.

More specifically, defendant relies on the fact that at least one of his § 924(c) convictions is not supported by a predicate offense qualifying as a "crime of violence" under the elements clause of 18 U.S.C. § 924(c), to argue that the 65-year mandatory consecutive sentence "corresponding" to his four § 924(c) convictions was "imposed in violation of the Constitution or laws of the United States" and must be vacated.  Def.'s Mot. at 3 (quoting 28 U.S.C. § 2255(a)). As relief, defendant seeks an order "vacat[ing] [his] entire sentence and resentenc[ing] him on all counts," *id.* at 19, arguing that the sentencing package doctrine "supports granting [him] a full resentencing hearing," *id.* at 20, because his "conviction[s] on the reversed counts may have affected the remaining counts," *id.* (quoting *United States v. Avila-Anguiano*, 609 F.3d 1046, 1049 (9th Cir. 2010)).  The government acknowledges that defendant will have to be resentenced, Gov't's Opp'n at 17 n.13, given that defendant's kidnapping conviction is not a valid predicate for his § 924(c) conviction in Count 23, *id.* at 11, but argues that defendant should receive "the same aggregate term of imprisonment—life without the possibility of parole plus 65 years" because "[s]uch a sentence will be consistent with this Court's 1996 sentencing package scheme," *id.* at 17.

Both parties are wrong. The narrow circumstances in which the D.C. Circuit has applied the sentencing package doctrine do not support its application here to defendant's multiple life sentences.

Under the sentencing package doctrine, "at least in some instances, sentences on multiple counts may comprise a 'sentencing package,' so that attacking the sentence on some counts . . . reopens the sentence on the other counts as well." *United States v. Townsend*, 178 F.3d 558, 567 (D.C. Cir. 1999). This doctrine has developed in recognition of the fact that "when a defendant is found guilty on a multicount indictment, there is a strong likelihood that the district court will craft a disposition in which the sentences on the various counts form part of an overall plan, and that if some counts are vacated, the judge should be free to review the efficacy of what remains in light of the original plan." *Id.* (internal quotation marks omitted). Counts that "are inherently interdependent," including § 924(c) and their predicate offenses, generate sentences "particularly well suited to be treated as a package," *id.* at 567–68, as do counts where the sentence imposed varies from the guidelines range, since "the amount of downward departure allowed by a sentencing judge is inevitably affected by the total sentence imposed," *Lassiter*, 1 F. 4th at 30 (quoting *Townsend*, 178 F.3d at 569). Put another way, the sentencing package doctrine applies when vacatur of a challenged conviction requires revisiting other counts to "resentence" the defendant, or to "correct" a sentence, since the punishment for the challenged sentence is not reflected solely in "the punishment for [that] single count," *United States v. Morris*, 116 F.3d 501, 504 (D.C. Cir. 1997), or where "removal of the sentence on one count draws into question the correctness of the initial aggregate minus the severed element," *United States v. Richard Smith*, 467 F.3d 785, 789 (D.C. Cir. 2006).

Despite the "singularity of the judgments under which" a defendant is imprisoned, *Morris*, 116 F.3d at 504, however, "not every judgment involving multiple convictions presents a sentencing package in which vacating the sentence on one count unravels the remaining sentences," *United States v. Palmer*, 854 F.3d 39, 49 (D.C. Cir. 2017) (citing *Richard Smith*, 467 F.3d at 789–90). When the determinations of multiple sentences are "in no way interdependent," the sentences may not be reviewed as an aggregate, and the "sentencing package doctrine [] affords no apparent basis for any resentencing on the other counts" not challenged. *Richard Smith*, 467 F.3d at 790.

Here, the starkly bifurcated structure of defendant's sentence suggests that his life sentence was in no way intended to account for, or depend on, his § 924(c) convictions. At sentencing, the presiding judge first dealt with defendant's life sentences, committing him, on the federal conspiracy, CCE Murder, and kidnapping charges in "counts 1, 3, 10, 14, 15 and 18, to terms of life imprisonment on each count." Sent'g Tr. at 34:10–11. On the D.C. Code murder charges in "counts 8, 9, 12 and 13," the court sentenced him "to a term of life imprisonment with no parole on each count," *id.* at 34:14–15, with all charges to "be served concurrently," *id.* at 35:1–2. Turning then to defendant's § 924(c) convictions in Counts 20 through 23, the court sentenced him "to a term of five years imprisonment which shall be served consecutively to all other counts" on Count 20, and on Counts 21, 22, and 23, "to a term of 20 years on each count which shall be served consecutively to each other and to all other counts." *Id.* at 35:3–8. The court concluded by stating "that the aggregate sentence imposed is life imprisonment without parole, plus 65 years to be served consecutively." *Id.* at 35:13–15. To read into these two segments of the sentence an interconnectedness or interdependence, then, is to ignore the plain

language of the sentencing court.  Instead, the life imprisonment and 65-year term portions of the total sentence imposed on defendant are easily and readily severable.

The independent nature of defendant's life sentences and § 924(c) sentences is obvious from the manner in which the sentences on each count were imposed and structured.  In a similar sentencing scenario, the D.C. Circuit in *Richard Smith* rejected application of the sentencing package doctrine.  In that case, the defendant had been sentenced to "several concurrent life (and shorter) sentences for various drug distribution offenses, as well as a consecutive thirty-year term of imprisonment under 18 U.S.C. § 924(c)."  *Richard Smith*, 467 F.3d at 786.  After defendant's § 924(c) conviction was vacated, due to the holding in *Bailey v. United States*, 516 U.S. 137 (1995), he appealed, arguing that "the court should have applied the 'sentencing package' doctrine and re-sentenced him on the remaining counts of his conviction."  *Richard Smith*, 467 F.3d at 787, 789.  The D.C. Circuit disagreed, finding the "necessary package" was "conspicuously absent," *id.* at 789, and afforded defendant "no apparent basis for any resentencing on [his] other counts" of conviction, *id.* at 790.  Instead, the sentencing court had "calculated a guideline range of imprisonment on Smith's six grouped guideline counts" and imposed a sentence of "several concurrent life terms—the highest sentence available."  *Id.* "Only then, once the package was complete," had the court imposed a consecutive 30-year term under § 924(c).  *Id.*  Based on this structure, the panel concluded that "[t]he life sentence on the grouped counts and the 30-year term for the § 924(c) violation were in no way interdependent, so the former is not 'unraveled' by vacation of the latter."  *Id.* (quoting *Townsend*, 178 F.3d at 562, internal alterations omitted).

The reasoning of the D.C. Circuit in *Richard Smith* dictates the same conclusion in the instant case.  As set forth in the PSR, defendant's convictions on counts 1, 3, 10, 14, 15, and 18

were grouped with a total offense level of 49, PSR ¶¶ 199–238, corresponding to a mandatory sentence of life imprisonment, *id.* ¶ 288.  After imposing a term of life on these six counts, as well as a concurrent life sentence on defendant's D.C. Code convictions in counts 8, 9, 11, 12, and 13, to which the federal guidelines do not apply, *id.* ¶ 195, the sentencing court then turned to defendant's four § 924(c) convictions, imposing a total sentence of 65 years, Sent'g Tr. at 35:3–8.  The sentencing court's reference to the "aggregate sentence imposed" of "life imprisonment without parole, plus 65 years to be served consecutively," *id.* at 35:13–15, in no way suggests the terms are interdependent, such that "the former is [] unraveled by vacation of the latter," *Richard Smith*, 467 F.3d at 790 (internal alterations omitted), nor does vacatur of a portion of the 65-year sentence on defendant's § 924(c) convictions "draw[] into question the correctness of the initial aggregate minus the severed element," *id.* at 789.  Contrary to both parties' arguments, no indicia of interdependence between the § 924(c) convictions predicated on CCE Murder and any other conviction is reflected in defendant's sentencing that would support application of the sentencing package doctrine to warrant alteration of defendant's otherwise final sentences on his remaining convictions.  Instead, the appropriate response to defendant's successful challenge of his § 924(c) convictions is the most obvious, and simplest one: to remove 20 of the 65 years tacked onto defendant's life sentences and leave the latter as imposed by the sentencing judge.

Under 28 U.S.C. § 2255(b), if a court finds that a defendant's sentence "was not authorized by law or [is] otherwise open to collateral attack," it must "vacate and set the judgment aside."  Thereafter, the court has four choices: to "discharge the prisoner," "resentence" the prisoner, "grant a new trial[,] or correct the sentence," *id.*, with a sentence "correction" representing a more "limited . . action taken with respect to the original judgment,"

than full resentencing.  *Palmer*, 854 F.3d at 47.  Defendant argues that, "even where collateral

relief is granted based on only one claim," section 2255 "requires that the entire judgment be

vacated," Def.'s Mot. at 19–20 (quoting *United States v. Ray*, 950 F. Supp. 363, 367 (D.D.C.

1996)), such that "no judgment or sentence would remain for any count of conviction," *id.* at 20.

Yet "[s]ection 2255(b) accords [a district court] discretion in choosing from among four

remedies, 'as may appear appropriate,'" *Palmer*, 854 F.3d at 49, including the discretion to issue

an amended judgment making only limited, necessary corrections to the original sentence.  *See*

*id.* at 43, 53 (affirming the district court's "amended judgment," issued after vacatur of several of

defendant's convictions, including under § 924(c), that "eliminat[ed] the vacated convictions and

excess assessments while leaving the remaining convictions and sentences as originally imposed

in 1989 upon his convictions by a jury").  The sentencing package doctrine does not authorize

reopening the sentences imposed on defendant's remaining counts of conviction and thus the

Court will instead "correct the sentence" by vacating defendant's unlawful § 924(c) conviction

and accompanying 20-year term of imprisonment, while leaving unaltered defendant's sentence

of life plus 45 years' consecutive imprisonment on his remaining counts of conviction. [11]

## IV.   CONCLUSION

For the reasons discussed above, defendant's motion to vacate the judgment under 28

U.S.C. § 2255 is granted in part and denied in part.  Defendant's motion is granted as to his

conviction in Count 23, for use a firearm during kidnapping under 18 U.S.C. § 924(c), which is

---

[11]      Where "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," a district court may deny a motion for relief without holding an evidentiary hearing.  28 U.S.C. § 2255(b). Here, based on the parties' briefing and the full record in the case, the Court finds a hearing on defendant's motion is unnecessary.  *See United States v. Pyles*, 860 F. App'x 178, 187 (D.C. Cir. 2021) (finding "the district court did not abuse its discretion in declining to conduct an evidentiary hearing before denying the Section 2255 motion"); *United States v. Pollard*, 959 F.2d 1011, 1031 (D.C. Cir. 1992) ("Only where the [Section] 2255 motion raises 'detailed and specific' factual allegations whose resolution requires information outside of the record or the judge's 'personal knowledge or recollection' must a hearing be held." (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962))).

vacated along with the corresponding 20-year term of imprisonment, and otherwise denied as to his § 924(c) convictions predicated on CCE Murder in Counts 20, 21, and 22.  The sentences imposed on defendant's counts of conviction other than Count 23, remain final and undisturbed since the sentencing package doctrine does not afford the relief he seeks of a full resentencing.

An appropriate Order accompanies this Memorandum Opinion.

Date: May 16, 2022

_____
BERYL A. HOWELL
Chief Judge