**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal Action No. 95-154-8 (BAH) |
| GERALD SMITH, | Chief Judge Beryl A. Howell |
| Defendant. | |

**<u>MEMORANDUM OPINION</u>**

Defendant Gerald Smith was convicted in 1996 for his role in "the so-called Fern Street Crew, an organization which distributed crack cocaine for seven years in the District of Columbia and Maryland" between 1988 and 1995.  *United States v. Sumler*, 136 F.3d 188, 189 (D.C. Cir. 1998).  Defendant was primarily "an enforcer for this organization from 1992 to 1993," Presentence Investigation Report ("PSR") ¶ 174, ECF No. 693, using lethal violence to "facilitate[]" the Crew's activities, "defend territory from rival drug dealers[,] and subvert the efforts of the criminal justice system," *Sumler*, 136 F.3d at 189.[1]  Eventually, however, law enforcement's investigation into the violence and drug dealing by this organization led to the indictment of defendant and eleven of his co-conspirators, *see* Indictment, ECF No. 4, and in 1996, a jury convicted defendant and four others of "numerous offenses, including murder, armed robbery, kidnapping, and drug and RICO conspiracies," *Sumler*, 136 F.3d at 189.  Defendant was "convicted of one count of premeditated first degree murder and one count of CCE murder for the killing of Ucal Riley," *id.* at 189 n.2; "two counts of first degree felony

---

[1] The PSR is filed under seal and unsealed to the limited extent that sealed content is referenced in this Memorandum Opinion to explain the Court's reasoning.  *See United States v. Reeves*, 586 F.3d 20, 22 n.1 (D.C. Cir. 2009).

murder while armed and two counts of CCE murder for the killings of Marcus Murray and Victor Hartnett," *id.*; and crack and racketeering conspiracy, kidnapping, robbery, firearms, and assault offenses, *see* Verdict Form at 12–16, ECF No. 343. Several months later, defendant was sentenced to life in prison without the possibility of parole, plus 65 years' imprisonment to be served consecutively for various firearms convictions. Sent'g Tr. (Nov. 25, 1996) at 35:13–15, ECF No. 464.

Earlier this year, after defendant had served more than 25 years of his sentence, this Court vacated one of his convictions for use of a firearm during a drug trafficking offense or crime of violence, in violation of 18 U.S.C. § 924(c), "based on the Supreme Court's more recent determination that the residual clause in the definition of 'crime of violence' is unconstitutionally vague as that definition is used in . . . 18 U.S.C. § 924(c)(3)(B)." *United States v. Smith*, No. 95-cr-154-8 (BAH), 2022 WL 1538706, at *1 (D.D.C. May 16, 2022) (citing *United States v. Davis*, 139 S. Ct. 2319, 2326 (2019)). Defendant's three other convictions under 18 U.S.C. § 924(c) (the "§ 924(c) convictions") were affirmed, however, on the basis that the predicate offense of CCE Murder, in violation of 21 U.S.C. § 848(e)(1)(A), constitutes a "crime of violence" under the remaining "elements clause" of 18 U.S.C. § 924(c). *Smith*, 2022 WL 1538706, at *1. Now, defendant seeks a certificate of appealability ("COA") allowing him to challenge this decision before the D.C. Circuit. *See* Def.'s Mot. Certificate of Appealability ("Def.'s COA Mot."), ECF No. 707. He also seeks a further sentence reduction under Section 404 of the First Step Act of 2018 ("First Step Act"), Pub. L. 115-391, 132 Stat. 5194, authorizing imposition of a reduced sentence "as if" the reduced crack cocaine penalties established by Sections 2 and 3 of the Fair Sentencing Act of 2010 ("Fair Sentencing Act"), Pub. L. 111-220, 124 Stat. 2372, had been in effect "at the time of the commission of the offense, not at the time of the original sentencing,"

*Concepcion v. United States*, 142 S. Ct. 2389, 2402 (2022); *id*. at n.6.  *See* Def.'s Suppl. Mot. Reduce Sentence Pursuant to the First Step Act of 2018 ("Def.'s FSA Mot."), ECF No. 706.[2]

For the reasons discussed below, defendant's motion for a COA is granted, but his motion for a reduced sentence under Section 404 of the First Step Act is denied because multiple convictions to which he was sentenced to life imprisonment, are not covered by Section 404 of the First Step Act.[3]

## I.     BACKGROUND

The factual and procedural background of this case has been described in detail in *Smith*, 2022 WL 1538706, at *1–*4, and in the D.C. Circuit's earlier opinion affirming defendant's convictions on direct appeal, *see Sumler*, 136 F.3d at 189.  The background below offers a condensed overview of the relevant facts and procedural history for consideration of the instant motions.

### A.     Factual Background

Defendant was a "violent enforcer" of the Fern Street Crew, PSR ¶ 90, "an organization which distributed crack cocaine for seven years in the District of Columbia and Maryland," *Sumler*, 136 F.3d at 189.  He "'sold wholesale amounts of crack cocaine to street sellers in the neighborhood' and 'was regularly armed, committing acts of violence that furthered the objects' of the organization."  *Smith*, 2022 WL 1538706, at *2 (quoting PSR ¶ 90, alterations omitted).

---

[2]     Defendant previously filed a *pro se* version of his First Step Act motion, *see* Def.'s Mot. for Reduction Sentence Under Section 404(b) of the First Step Act ("Def.'s *Pro Se* FSA Mot."), ECF No. 613, which has been superseded by the motion filed by counsel and is therefore denied as moot.

[3]     This case was directly reassigned to the undersigned Chief Judge in April 2016, Min. Entry (Apr. 4, 2016), in accordance with the then-effective Local Rules, which provided for the Chief Judge to "dispose of matters requiring immediate action in criminal cases already assigned to any judge of the Court if that judge is unavailable or otherwise unable to hear the matters."  D.D.C. LOC. CRIM. R. 57.14(6).  The Local Rules now provide that "[r]eassignment of any criminal case, and matters arising therefrom, previously assigned to a judge who no longer sits on the district court shall be made by random assignment."  D.D.C. LOC. CRIM. R. 57.13(b) (amended Nov. 9, 2017).

The evidence at trial also showed that defendant was "personally responsible for multiple murders 'to eliminate rival sellers' and 'enrich the enterprise.'"  *Id.* (quoting PSR ¶ 174). Specifically, on October 6, 1992, defendant suggested to another Fern Street Crew member that they rob a drug dealer named Ucal Riley, who had "expanded his business[] and started to take customers from [their] group."  PSR ¶¶ 91–92.  After Riley "refused [to give the drugs] unless he got the money first," *id.* ¶ 94, defendant "killed [him] in an unbelievable manner" while "sitting in the seat next to him," Sent'g Tr. at 24:9–10, taking "out his 10 millimeter pistol and sh[ooting] Riley several times in the head," which "bl[ew] pieces of [Riley's] head, ear and skull into and around the inside of the car," PSR ¶ 94.

On another especially bloody day later that month, defendant and other Crew members "decided to go to 14th and Allison Streets to purchase some marijuana" from the Allison Street Group, *id.* ¶ 54, a rival crew with which they were "involved in a war," *id.* ¶ 53.  Defendant "brought [his] gun[]" and "stated that he was going to rob the drug dealer."  *Id.* ¶ 54.  Upon the group's arrival, defendant "walked up the alleyway, . . . pulled out a gun and shot [Marcus] Murray in the head, killing him."  *Id.*  Defendant then focused his attention on "Murray's friend, Anthony Welch, who was standing nearby," and who he "shot five times [before Welch] fell to the ground."  *Id.*  Welch "saved himself by hiding under a truck," while defendant and others "continued to shoot at Murray's [dead] body."  *Id.*  This altercation also resulted in "the death of Victor Hartnett, 'an older gentleman who just happened to be standing in the alley when Smith and [co-defendant] Jefferson were running back to their car,'" *Smith*, 2022 WL 1538706, at *3 (quoting PSR ¶¶ 52–55), and who Jefferson shot "five times to make sure he was dead," PSR ¶ 55.

4

In addition to his role in the deaths of Riley, Murray, and Hartnett, defendant also "kidnapped, robbed, and assaulted with intent to murder Eric Brake," *id.* ¶ 147, a member of "a rival drug gang led by the 'Twins,'" *id.* ¶ 60, "in order to hurt [that] rival drug organization," *id.* ¶ 174. On December 1, 1992, less than two months after the Allison Street murders, defendant "convinced his friend . . . to lure Brake to her apartment by offering him sex," whereafter defendant stormed into the room, "put a pillowcase over [Brake's] head, tied him up, [and] demanded to know where his money and drugs were, and where the Twins stashed their drugs and money." *Id.* ¶ 61. After stealing "nine ounces of cocaine . . . [and a] pistol" from Brake, defendant proceeded to "beat [him] for hours." *Id.* After ensuring Brake's "eyes and mouth were covered with black electrical tape," defendant "moved Brake to his van . . . and had him point out stash locations used by the Twins," after which defendant "took him out of the van," "walked him to the woods," and "shot [him] in his head," *id.* ¶ 62, with the bullet "pass[ing] through his jaw, pierc[ing] his jugular vein, and lodg[ing] in his shoulder," *id.* ¶ 63. Defendant abandoned Brake in the woods, where, incredibly, he survived, and "[s]everal hours later, . . . stumbled out of the park," and "was found by a passerby and transported" to a local hospital. *Id.* In the words of the judge presiding over defendant's trial, who heard all the evidence and said he still "recall[ed] the pictures," defendant's "whole pattern of murders and assaults in this case were done with unfathomable brutality." Sent'g Tr. at 24:7–9, 12.

Even after his arrest, defendant's criminal conduct continued, when he had conversations with others about targeting cooperating witnesses in the case. *See* PSR ¶¶ 170–71. Notably, defendant "stated that someone needed to kill [cooperating witness] Kahron Sarter's children and his girlfriend," and told others "that he had made arrangement with someone he knew to kill [them]." *Id.* ¶ 171.

**B.      Procedural History**

In July 1995, defendant was arrested and charged in a 61-count indictment along with 11 co-defendants.  *See generally* Indictment.[4]  Seven of those co-defendants entered guilty pleas, while defendant and four others elected to go to trial.[5]  Four months later, a jury convicted defendant of all 21 charges against him.  *See* Verdict Form at 12–16.[6]  Defendant's individual convictions and sentences are examined in greater detail below, followed by the procedural history leading to the pending motions.

**1.      Convictions**

On August 8, 1996, a jury found defendant guilty of 21 counts of conspiracy, homicide, and various other crimes of violence, one of which, at the time, carried a mandatory minimum sentence of life imprisonment.  Specifically, defendant was convicted of two counts of conspiracy:

- **Count 1**: Conspiracy to distribute and possess with intent to distribute 50 grams or more of cocaine base ("Crack Conspiracy"), under 21 U.S.C. § 846 (1996)
    - **Mandatory minimum penalty**: 10 years' and up to life imprisonment; and
- **Count 3**: Conspiracy to participate in a racketeer influenced corrupt organization ("RICO Conspiracy"), under 18 U.S.C. §§ 1962(d) & 1963(a)
    - **Mandatory minimum penalty**: life imprisonment.

---

[4]      A 54-count superseding indictment was filed in January 1996, *see* Superseding Indictment, ECF No. 192, and a retyped superseding indictment was filed on July 26, 1996, for use at trial, *see* Retyped Superseding Indictment, ECF No. 341.

[5]      Co-defendants Antonio Avery, Adrian Harley, Kahron Sarter, Raymond Harris, George Townsend, Gregory Alston, and Aaron Rogers all entered guilty pleas pursuant to cooperation agreements.  *See* Gov't's Suppl. Resp. to Court's June 9, 2021 Order at 5–7, ECF No. 675.

[6]      Defendant was joined at trial by co-defendants Calvin Sumler, Michael Jefferson, Vernon Washington, and Larry Walker, Jr.  PSR ¶¶ 4–7.  Sumler was convicted on 11 counts, Verdict Form at 1–6, and sentenced to life imprisonment with all counts to run concurrently, Min. Entry (Nov. 18, 1996).  His life sentence was affirmed as recently as last year.  *See United States v. Sumler*, No. 95-cr-154-2 (BAH), 2021 WL 6134594 (D.D.C. Dec. 28, 2021).  Jefferson was found guilty on 20 counts, Verdict Form at 7–11, and was sentenced to life imprisonment without parole, with all counts to run concurrently, Min. Entry (Nov. 21, 1996).  Washington was found guilty on Count 1, PSR ¶ 6, and sentenced to 60 months of incarceration followed by five years of supervised release, Min. Entry (Feb. 12, 1997).  The jury was unable to reach a verdict as to the charges against Walker, and a mistrial was declared.  PSR ¶ 7.  He later pleaded guilty to Count 1 and was sentenced to 60 months of incarceration followed by 3 years of supervised release.  *See* Min. Entry (Sept. 16, 1996).

Verdict Form at 12–13; PSR ¶¶ 261–62.  He was also convicted of seven counts of murder:

- **Count 8**: Premeditated first degree murder while armed (22 D.C. CODE §§ 2401, 3202 & 105)
  - **Mandatory minimum penalty**: 30 years' life imprisonment;
- **Count 9, 12 & 13**: First degree murder while armed (22 D.C. CODE §§ 2401, 3202 & 105)
  - **Mandatory minimum penalty**: 30 years' to life imprisonment on each count; and
- **Count 10, 14 & 15**: CCE Murder (21 U.S.C. § 848(e)(1)(A) & 18 U.S.C. § 2)
  - **Mandatory minimum penalty**: 20 years' to life imprisonment on each count.

Verdict Form at 13–14; PSR ¶¶ 263–65.  Further, he was convicted of eight firearms offenses:

- **Count 20**: Use of a firearm during a drug trafficking offense or crime of violence (18 U.S.C. §§ 924(c) & 2)
  - **Mandatory penalty**: consecutive five years' imprisonment;
- **Counts 21 through 23**: Use of a firearm during a drug trafficking offense or crime of violence (18 U.S.C. §§ 924(c)(1) & 2)
  - **Mandatory penalty**: consecutive 20 years' imprisonment on each count; and
- **Counts 30 through 33**: Possession of a firearm during crime of violence (22 D.C. CODE § 3204(b))
  - **Mandatory minimum penalty**: five years' to 15 years' imprisonment on each count.

Verdict Form at 15–16; PSR ¶¶ 270–72.  Finally, he was convicted of four counts of robbery, assault, and kidnapping:

- **Count 11**: Armed robbery (22 D.C. CODE §§ 2901, 3202 & 105)
  - **Mandatory minimum penalty**: five years' to life imprisonment;
- **Count 16**: Attempt to commit robbery while armed (22 D.C. CODE §§ 2901, 3202 & 105)
  - **Mandatory minimum penalty**: five years' to life imprisonment;
- **Count 17**: Assault with intent to kill while armed (22 D.C. CODE §§ 105, 501 & 3202)
  - **Mandatory minimum penalty**: five years' to life imprisonment; and
- **Count 18**: Kidnapping (18 U.S.C. § 1201)
  - **Mandatory minimum penalty**: any term of years up to life imprisonment.

Verdict Form at 14–15; PSR ¶¶ 266–69.

As for the quantity of narcotics found to be at issue in defendant's convictions, the jury was not asked to and made no specific findings as to any "specific quantity of crack cocaine" in the Crack Conspiracy offense charged in Count 1. *United States v. Sumler*, No. 95-cr-154-2 (BAH), 2021 WL 6134594, at *3 (D.D.C. Dec. 28, 2021). Instead, the jury was instructed "that 'the actual amount of a controlled substance involved or the amount alleged in the indictment is not an element of this Count.'" *Id.* (quoting Trial Tr. (July 30, 1996) at 29:12–14, ECF No. 393). On Count 3, the RICO conspiracy charge, the jury found that defendant had engaged in 11 predicate acts, including a conspiracy to distribute a controlled substance; the first degree murders of Riley, Hartnett, and Murray; the assault with intent to kill of Welch; and the armed robbery and kidnapping of Brake. Verdict Form at 12–13. On the CCE Murder charges in Counts 10, 14, and 15, the jury found that that defendant had committed the "[i]ntentional murder[s]" of Riley, Murray, and Hartnett, "while working in furtherance of a continuing criminal enterprise." *Id.* at 14. The jury had been instructed that an element of the offense was that "the defendant committed the killings or participated in the killings while engaged in or working in furtherance of a continuing criminal enterprise." Trial Tr. (July 30, 1996) at 85:5–7. The court had further instructed that "the government need not prove that the continuing criminal enterprise was responsible for the distribution of any particular or minimum amount of crack," but that in "order to prove this element, it is sufficient for the government to prove that the defendant killed . . . the decedent while the defendant was engaged in or working in furtherance of a continued criminal enterprise." *Id.* at 85:12–20.

## 2. Sentencing

In November 1996, defendant was sentenced to life imprisonment on six federal counts: Counts 1 (Crack Conspiracy); 3 (RICO Conspiracy); 10, 14, and 15 (CCE Murders of Riley, Murray, and Hartnett, respectively); and 18 (Kidnapping of Brake). *Smith*, 2022 WL 1538706,

at *4 (citing Sent'g Tr. at 34:8–11).  He was also sentenced to life imprisonment, without parole, on four D.C. Code offenses charged in Counts 8 (first degree murder while armed of Riley); and 9, 12, and 13 (first degree felony murders while armed of Riley, Murray, and Hartnett, respectively).  *Id.* (citing Sent'g Tr. at 34:12–15).  All ten of the life sentences "were to 'be served concurrently.'"  *Id.* (quoting Sent'g Tr. at 34:25–35:2).[7]  Defendant received an additional 65 years' imprisonment for his § 924(c) convictions on Counts 20 through 23, "to be served consecutively" to his life sentence.  *Id.* (quoting Sent'g Tr. at 35:13–15).[8]

Based on the evidence at trial, the PSR estimated that defendant was responsible for distributing 175 grams of crack cocaine during the term of his involvement in the conspiracy, PSR ¶ 152, but also indicated this quantity was "very conservative," *id.* ¶ 153, and "grossly underestimate[d]" the amount of cocaine that defendant was responsible for distributing, *id.* ¶ 156.  Under the 1995 edition of the U.S. Sentencing Guidelines Manual, *id.* ¶ 191, the PSR organized defendant's convictions into six groups, pursuant to U.S.S.G. § 3D1.2:

- **Group 1**: Counts 1 (Crack Conspiracy) and 3 (RICO drug overt act)
  - **Base Offense Level ("BOL"):** 34, under U.S.S.G. § 2D1.1, based on "[t]he total amount of drugs attributed to the defendant in this case [of] 175 grams," PSR ¶ 199;
- **Group 2**: Counts 3 (RICO overt acts – Riley murder) and 10 (CCE Murder – Riley)
  - **BOL:** 43, under U.S.S.G. § 2A1.1, *id.* ¶ 205;
- **Group 3**: Counts 3 (RICO overt acts – Murray murder) and 14 (CCE Murder – Murray)
  - **BOL:** 43, under U.S.S.G. § 2A1.1, *id.* ¶ 211;
- **Group 4**: Counts 3 (RICO overt act – Hartnett murder) and 15 (CCE Murder – Hartnett)

---

[7]     On the robbery and assault offenses charged in Counts 11, 16, and 17, defendant was sentenced to fifteen years to life imprisonment.  *Smith*, 2022 WL 1538706, at *4 n.5.  On the D.C. Code firearms offenses charged in Counts 30, 31, 32, and 33, he received a sentence of five to fifteen years' imprisonment, to be served concurrently.  *Id.*

[8]     Specifically, defendant was sentenced to five years' imprisonment on Count 20 (for use of a firearm during the CCE murder of Riley), and 20 years' each on Counts 21, 22, and 23 (for use of a firearm during the Murray and Hartnett CCE murders and the Brake kidnapping, respectively).  *Smith*, 2022 WL 1538706, at *4.  Over defendant's objection, the court ordered that the five-year sentence on Count 20 and twenty-year sentences on Counts 21, 22, and 23 "be served consecutively to each other and to all other counts," *id.* (quoting Sent'g Tr. at 35:11–12), making "the aggregate sentence imposed [] life imprisonment without parole, plus 65 years to be served consecutively," *id.* (quoting Sent'g Tr. at 35:13–15).

- o **BOL:** 43, under U.S.S.G. § 2A1.1, *id.* ¶ 217;
- **Group 5**: Counts 3 (RICO overt act – Welch assault) and 17 (Assault with intent to kill)
  - o **BOL:** 28, under U.S.S.G. § 2A2.1, *id.* ¶ 223; and
- **Group 6**: Counts 3 (RICO overt acts – Brake kidnapping) and 18 (Kidnapping)
  - o **BOL:** 24, under U.S.S.G. § 2A4.1, *id.* ¶ 229.

When a two-point adjustment was added to the Group 2 BOL for obstruction of justice pursuant to U.S.S.G. § 3C1.1, the adjusted offense level became 45, the highest offense level of any group. *See* PSR ¶¶ 204–235. After a multiple-count adjustment, defendant's total offense level was 49. *Id.* ¶ 240. As to defendant's criminal history, he had a criminal history score of 3, based on his prior convictions for possession and attempted possession of cocaine, *id.* ¶¶ 241–43, putting him in criminal history category II, *id.* ¶ 243. This total offense level, in combination with his criminal history category II, provided a mandatory sentencing range under the then-applicable Guidelines of life. *Id.* ¶ 288. Defendant accordingly was sentenced to "life imprisonment without parole, plus 65 years to be served consecutively." *Smith*, 2022 WL 1538706, at *4 (quoting Sent'g Tr. at 35:13–15).[9]

On appeal, two of defendant's convictions for offenses under the D.C. Code were vacated: his conviction on Count 9 (first degree felony murder while armed of Riley) "was vacated after the government conceded that 'under district law', defendant could not 'stand convicted of both first degree murder (premeditated) while armed and first degree murder (felony murder) while armed with respect to the same killing.'" *Id.* (quoting *Sumler*, 136 F.3d at

---

[9]     Defendant was also sentenced, on Counts 30 through 33, to five to fifteen years' imprisonment, to run concurrently with his other counts of conviction, *Smith*, 2022 WL 1538706, at *4 n.5, and he has already served this sentence. The parties largely ignore these counts, *see generally* Def.'s FSA Mot.; Gov't's FSA Opp'n, since the First Step Act "does not authorize reductions of already-completed sentences," *United States v. Winston*, No. 1:95-cr-7 (RCL), 2020 WL 7342620, at *1 (D.D.C. Dec. 14, 2020) (internal quotations omitted); *see also United States v. Martin*, 974 F.3d 124, 138, 140 (2d Cir. 2020) (holding that "[t]he First Step Act does not authorize district courts to reduce sentences for covered offenses where those sentences have been fully served," explaining that "[t]he text of the statute permits only the 'impos[ition] of a reduced sentence,' from which we cannot also imply an authorization to reduce a term of imprisonment that has already been served").

189 n.1). Second, his conviction on Count 16 (attempted robbery while armed) was vacated because, as the government conceded, he "could not 'stand convicted of both felony murder and the underlying felony.'" *Id.* (quoting *Sumler*, 136 F.3d at 189 n.1); *see also Leasure v. United States*, 458 A.2d 726, 730–31 (D.C. 1983)). Defendant's convictions were otherwise affirmed. *Sumler*, 136 F.3d at 192.

In the intervening decades, most of defendant's subsequent collateral challenges to his convictions have been denied, *see* Order (Jan. 27, 2009), ECF No. 578; Order (Feb. 3, 2011), ECF No. 583; Mem. Op. & Order (May 6, 2016), ECF No. 585, although, as already mentioned, his conviction in Count 23 for use of a firearm during kidnapping, in violation of 18 U.S.C. § 924(c), and the corresponding sentence of 20 years' imprisonment imposed consecutively to his life sentence, was vacated by this Court on May 16, 2022, *see Smith*, 2022 WL 1538706, at *18. *See also* Amended Judgment at 3, ECF No. 697. He remains incarcerated in the custody of the Bureau of Prisons ("BOP") serving a life sentence, plus a consecutive sentence of 45 years' imprisonment.

### C.    Defendant's Pending Motions

Now, having spent more than 25 years in prison, defendant seeks a sentence reduction to an unspecified term of years. *See* Def.'s FSA Mot. at 18. Defendant, proceeding *pro se*, first filed for relief under the First Step Act on July 8, 2019, *see* Def.'s *Pro Se* FSA Mot., while he also had pending a *pro se* motion, under 28 U.S.C. § 2255, to vacate his 18 U.S.C. § 924(c) convictions, *see* Def.'s "Abridged" Mot. to Vacate Under 28 U.S.C. 2255, ECF No. 587. The government was directed to confer with the Office of the Federal Public Defender ("FPD") and propose a briefing schedule that "simultaneously addressed both motions." Min. Order (July 11, 2019); *see also Standing Order In Re First Step Act of 2018 (Public Law No. 115-391) Retroactive Application of Fair Sentencing Act* (Jan. 24, 2019) (appointing the FPD to represent

indigent defendants in connection with motions under the First Step Act).   Based on the parties' joint submission, the Court entered a consolidated briefing schedule to address both motions. Min. Order (July 17, 2019).  Nonetheless, defendant thereafter requested an extension of the scheduling order that "held in abeyance" his First Step Act motion "pending the outcome of the § 2255 motion," Def.'s Unopposed Mot. Extension of Time at 2, ECF No. 620, which the Court granted, Min. Order (Sept. 23, 2019), thereby postponing briefing on the instant motion.

After defendant's § 2255 motion was granted in part and denied in part, *see Smith*, 2022 WL 1538706, at *18, the parties were directed to confer and inform the court "whether the defendant wishe[d] to proceed with his Motion to Reduce Sentence under the First Step Act," Order (May 16, 2022) at 2, ECF No. 695.  Based on the parties' proposed briefing schedule, the Court entered a revised scheduling order for the instant motion, Min. Order (June 11, 2022), which was extended twice at the parties' request, Min. Order (June 15, 2022) (granting defendant's request); Min. Order (Aug. 25, 2022) (granting government's request).  In light of the Court's decision on his § 2255 motion, defendant has also moved for a COA permitting him to appeal that decision to the D.C. Circuit, *see* Def.'s COA Mot., which COA the government opposes, *see* Gov't's Opp'n Def.'s Mot. Certificate of Appealability ("Gov't's COA Opp'n"), ECF No. 710.  The last of the briefing was submitted on September 13, 2022, *see* Def.'s Reply Supp. Mot. Certificate of Appealability ("Def.'s COA Reply"), ECF No. 712; Def.'s Reply Supp. Mot. Reduce Sentence Pursuant to the First Step Act of 2018 ("Def.'s FSA Reply"), ECF No. 713, and defendant's two pending motions are now ripe for resolution.

## II.   STATUTORY BACKGROUND AND LEGAL STANDARD

The Anti-Drug Abuse Act of 1986 provided three quantity-based penalty ranges for drug offenses under 21 U.S.C. § 841:  ten years to life in prison, five to 40 years in prison, and up to

20 years in prison, Pub. L. No. 99-570 § 1002, 100 Stat. 3207, with the quantities that triggered

different penalty levels varying based on the scheduled substance involved in the offense.  "For

nearly 25 years, federal criminal law punished offenses involving crack cocaine far more harshly

than offenses involving powder cocaine."  *United States v. Lawrence*, 1 F.4th 40, 42 (D.C. Cir.

2021).  In 2010, "[a]fter two decades of criticism, Congress reduced, but did not eliminate, the

crack-to-powder disparity in the Fair Sentencing Act," *id.* (citation omitted), by "reduc[ing] the

disparity between cocaine base and powder cocaine from 100-to-1 to 18-to-1," *id.* (quoting

*United States v. White*, 984 F.3d 76, 81–82 (D.C. Cir. 2020)).  Specifically, the Fair Sentencing

Act raised the crack cocaine threshold quantities for triggering certain penalty ranges for

convictions, under 21 U.S.C. § 841, but did not apply these changes retroactively to defendants

who had already been sentenced for crack-cocaine offenses.  *Id.* at 43.[10]  This changed in 2018

with the enactment of the First Step Act.  *Id.*

"The First Step Act was 'intended to rectify disproportionate and racially disparate

penalties' in federal sentencing" for crack and powder cocaine offenses.  *White*, 984 F.3d at 80

(quoting *United States v. Boulding*, 960 F.3d 774, 782 (6th Cir. 2020)).  To this end, section 404

of the First Step Act allows defendants to seek reduced sentences if they committed certain

"covered offense[s]" prior to the enactment of the Fair Sentencing Act and are not subject to the

"limitations" in Section 404(c).  First Step Act §§ 404(a), (c).  For eligible defendants, Section

404(b) authorizes, but does not require, a court to exercise discretion to adjust the sentence by

"impos[ing] a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act were in effect at

---

[10]     Congress increased the cocaine base quantity triggering the penalty of five to 40 years' imprisonment,
under 21 U.S.C. § 841(b)(1)(B), from five grams to 28 grams, and the quantity triggering the penalty of 10 years to
life imprisonment, under § 841(b)(1)(A), from 50 grams to 280 grams, effectively raising the quantity covered by
the catch-all provision in § 841(b)(1)(C) from amounts under five grams to amounts under 28 grams, but without
any direct amendment to that last statutory subsection.  *See* Fair Sentencing Act § 2.

the time the covered offense was committed." *Id.* § 404(b) (citation omitted).

In this way, Section 404(b) "allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act," so long as they "explain their decisions and demonstrate that they considered the parties' arguments." *Concepcion*, 142 S. Ct. at 2404.  The D.C. Circuit has instructed that, in determining whether a sentence reduction is warranted for an eligible defendant, a court must consider not only the 18 U.S.C. § 3553(a) factors, but also "new statutory minimum or maximum penalties; current Guidelines; post-sentencing conduct; and other relevant information about a defendant's history and conduct." *Lawrence*, 1 F.4th at 44 (quoting *White*, 984 F.3d at 90).

## III.    DISCUSSION

Defendant seeks a sentence reduction under the First Step Act, as well as a COA of this Court's previous partial denial of his motion to reduce his sentence under 28 U.S.C. § 2255.  *See Smith*, 2022 WL 1538706, at *18.  The government opposes both motions.  *See* Gov't's Opp'n Def.'s Suppl. Mot. Reduce Sentence Pursuant to the First Step Act of 2018 ("Gov't's FSA Opp'n") at 1, ECF No. 711; Gov't's COA Opp'n at 1.  Defendant's eligibility for relief under the First Step Act is discussed first, followed by his motion for a COA of the Court's previous decision.

### A.    First Step Act Motion for Sentence Reduction

Defendant argues that eight of his existing 18 convictions are for "covered offenses" under Section 404 of the First Step Act, Def.'s FSA Mot. at 10–16, such that he is eligible for a reduction in his aggregate sentence from life imprisonment to a term of years, although he does not specify the extent of the reduction he seeks, *see id.* at 18 ("Undersigned counsel is not in a position to suggest at this time any particular sentence as the most appropriate upon

resentencing.").[11]  The government concedes that defendant is "eligible for sentencing relief on two of his convictions," but argues that all the other convictions are for non-covered offenses, and that "even if the Court were to consider resentencing defendant on the eligible counts of conviction, a sentence reduction on those counts should nevertheless be denied on discretionary grounds."  Gov't's FSA Opp'n at 1.

The undisputed "covered offenses" in Counts 1 and 3 are discussed first, followed by the parties' disputes over (1) defendant's CCE Murder convictions in Counts 10, 14, and 15; and (2) his § 924(c) convictions in Counts 20 through 22.  The discussion then turns to this Court's authority to resentence defendant for the other non-covered offenses for which he was sentenced, along with his covered offenses in Counts 1 and 3.

### 1.      Agreed-Upon Covered Offenses (Counts 1 and 3)

Both parties assert that defendant's Crack Conspiracy conviction in Count 1 and RICO Conspiracy conviction in Count 3 are "covered offenses" for purposes of the First Step Act.  *See* Def.'s FSA Mot. at 10–11; Gov't's FSA Opp'n at 5.  The Court agrees.

In Count 1, defendant was convicted of conspiring to distribute 50 or more grams of crack cocaine, in violation of 21 U.S.C. §§ 841(b)(1) & 846 (1995).  PSR at 1.  The Fair Sentencing Act raised the requisite quantity of crack to obtain a conviction under this prong of § 841 from 50 grams to 280 grams.  *Id.* § 841(b)(1).  As such, regardless of defendant's specific offense conduct, *see White*, 984 F.3d at 87, the Fair Sentencing Act plainly modified the penalty for defendant's Crack Conspiracy conviction, making Count 1 a "covered offense" for which he

---

[11]      As noted in Part I.B.1 *supra*, defendant was originally convicted of 21 offenses, but two convictions were vacated on direct appeal, *see Sumler*, 136 F.3d at 189 n.1, and one was vacated by this Court earlier this year, *Smith*, 2022 WL 1538706, at *18.

is eligible for resentencing.[12]  Today, were defendant convicted of a crack conspiracy involving "fifty (50) grams or more" of crack, Superseding Indictment at 3, the maximum sentence he could receive by statute would be 40 years, not life, *see* 21 U.S.C. § 841(b)(1)(B)(iii).

Defendant's conviction for RICO Conspiracy in Count 3 is similarly a covered offense. While the statutory maximum penalty for a RICO violation under 18 U.S.C. § 1962 ordinarily is 20 years, that maximum penalty increases to life "if the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment." *Id.* § 1963(a).  Here, defendant was sentenced to this heightened penalty because at least one of the overt acts comprising the RICO Conspiracy was the Crack Conspiracy charged in Count 1.  *See* Verdict Form at 12.  As the government explains, "[g]iven that at least one predicate offense underlying defendant's RICO Conspiracy conviction is a covered offense, RICO Conspiracy qualifies as a covered offense" under First Step Act § 404.  Gov't's FSA Opp'n at 9.  Were defendant convicted of a RICO conspiracy involving the same overt acts today, the maximum sentence he could receive by statute would be 20 years, not life.  18 U.S.C. § 1963(a).

## 2.   Disputed Offenses

The parties' agreement as to the convictions that are "covered offenses" for purposes of the First Step Act does not extend beyond Counts 1 (Crack Conspiracy) and 3 (RICO Conspiracy).  Defendant contends that his convictions in Counts 10, 14, and 15 for CCE Murder are covered offenses, because they are connected to the continuing criminal enterprise ("CCE") with which other co-defendants—but not defendant himself—were charged in Count 2.  Def.'s FSA Mot. at 13–16.  Relatedly, he argues that his § 924(c) convictions in Counts 20 through 22

---

[12]     While the D.C. Circuit has held that "whether an offense is 'covered' does not depend on the actual drug amounts attributed to a defendant," *White*, 984 F.3d at 86, the comparatively small quantity of crack cocaine attributed to defendant of 175 grams, PSR ¶ 152, means that he would be eligible for relief also based on "the specific drug quantity attributed to [him]," *White*, 984 F.3d at 87.

are covered offenses, because the predicate offenses for those firearm counts were the CCE Murders charged in Counts 10, 14, and 15. *Id.* at 16–17. The government disagrees, on the basis that the Fair Sentencing Act had no impact on the statutory penalty for any of those offenses. *See* Gov't's FSA Opp'n at 9–14. As discussed below, the government is correct that neither defendant's CCE Murder nor his § 924(c) convictions are "covered offenses."

        a.       **CCE Murder (Counts 10, 14, and 15)**

Turning first to defendant's convictions in Counts 10, 14, and 15, for the respective murders of Riley, Murray, and Hartnett in furtherance of the CCE, the parties disagree as to whether CCE Murder is a "covered offense." Defendant argues that CCE Murder is "covered" because the Fair Sentencing Act altered the penalties for engaging in a CCE, under 21 U.S.C. § 848(a), making that a "covered offense." Def.'s FSA Mot. at 13. Specifically, the statutory penalty for engaging in a CCE increases to a mandatory life sentence when, *inter alia*, the CCE "involve[s] at least 300 times the quantity of a substance described in [§] 841(b)(1)(B)," *id.* § 848(b)(2)(A), which quantity ranges the Fair Sentencing Act raised from five grams to 28 grams of crack, *see* Fair Sentencing Act § 2. Thus, defendant reasons that "[h]ad the 2010 [Fair Sentencing Act] been in effect" at the time of his trial, "the jury would have been required to find that the enterprise was involved in the distribution of 8.4 kilograms or more of crack cocaine," instead of only 1.5 kilograms. Def.'s FSA Mot. at 14. Although defendant himself was not charged in Count 2 with the CCE—or with any crack distribution offenses under § 841(b)—he argues that his CCE Murder convictions are "connected to Count 2 and its jury instructions," such that the Fair Sentencing Act sufficiently affected the penalties for these convictions to qualify as covered offenses. *See id*.

The government rejects any such "connection" between the penalties for CCE and CCE Murder, given that "[t]hen, as now, the statutory penalty range for CCE Murder was 20 years to

life imprisonment (or the death penalty)."  Gov't's FSA Opp'n at 9.  The government also points

to numerous out-of-circuit decisions concluding that CCE Murder is not, in fact, covered by

Section 404, *see id.* at 9–11 (citing *United States v. Fletcher*, 997 F.3d 95, 97 (2d Cir. 2021);

*United States v. Potts*, 389 F. Supp. 3d 352, 356 (E.D. Pa. 2019); *United States v. Roane*, No. 92-

cr-68 (DJN), 2020 WL 6370984, at *10 (E.D. Va. Oct. 29, 2020); *United States v. Valentine*, No.

06-cr-580 (JSR), 2019 WL 3242494, at *1 (S.D.N.Y. July 2, 2019)), as well as this Court's

previous decision reaching the same conclusion, *see Sumler*, 2021 WL 6134594, at *15.

       Defendant's arguments regarding any effect of the Fair Sentencing Act on the offense of

CCE Murder are entirely unavailing.  To convict a defendant for CCE Murder, a jury must find,

beyond a reasonable doubt, that the defendant "intentionally kill[ed], or counsel[ed],

command[ed], induce[d], procure[d], or cause[d] the intentional killing of an individual and such

killing result[ed]," *while* the defendant was "engag[ed] in or working in furtherance of" either (1)

a CCE, or (2) "an offense punishable under section 841(b)(1)(A) of this title."  21 U.S.C.

§ 848(e)(1)(A).  Defendant's convictions here were predicated on this first prong of the

definition.  *See* Verdict Form at 14 (finding defendant guilty of committing "intentional

murder . . . while working in furtherance of a continuing criminal enterprise"); Superseding

Indictment at 36 (alleging defendant "unlawfully, knowingly, and intentionally killed, and

counseled, commanded, induced, procured and caused the intentional killing" of Riley, Murray,

and Hartnett, "while engaging in and working in furtherance of a Continuing Criminal

Enterprise").[13]  Under this first prong of § 848(e)(1)(A), a defendant is "engag[ed] or working in

---

[13]     As this Court has previously recognized, *see Sumler*, 2021 WL 6134594, at *15, convictions predicated on the *second* prong of the CCE Murder definition may be covered by Section 404 of the First Step Act, and indeed, the only case defendant cites in support of his arguments regarding CCE Murder, *United States v. Guerrero*, involved convictions for "intentional murder while engaged in a drug trafficking crime in violation of 21 U.S.C. § 848(e)(1)(A)."  52 F. Supp. 3d 643, 645 (S.D.N.Y. 2014).  Here, however, defendant's CCE Murder convictions were predicated on the first prong of the CCE Murder definition.

furtherance of" a CCE, only if he "violate[d]" a provision of subchapter I or II of Chapter 13 of Title 21 of the Code—which include "covered" and "non-covered" offenses—and "such violation is part of a continuing series of violations."  *Id.* §§ 848(c)(1)–(2).  The elements constituting CCE Murder on which defendant's convictions ares predicated, therefore, plainly do not depend on any statutory penalties for crack distribution altered by the Fair Sentencing Act.[14]

As the government correctly notes, "the CCE Murder statute sets forth an *independent* offense that is separate from any drug crime forming part of the underlying 'continuing series of violations,'" Gov't's FSA Opp'n at 10 (emphasis added), and the statutory penalty for CCE Murder remains the same both before and after passage of the Fair Sentencing Act:  "any term of imprisonment, which shall not be less than 20 years, and which may be up to life imprisonment,"

---

[14]   Defendant asserts, to the contrary, that after the Fair Sentencing Act, "the quantity of cocaine base required to impose a mandatory life sentence for a CCE *murder* conviction increased from 1.5 kilograms to 8.4 kilograms," Def.'s FSA Mot. at 14 (emphasis added), and that, in light of the quantity of crack at issue in the conspiracy, "the *penalty* for Mr. Smith's [CCE Murder] convictions was changed under the [Fair Sentencing Act]," *id.* at 15 (emphasis in original).  This is demonstrably false.  The penalty enhancement under 21 U.S.C. § 848(b), which converts a CCE offense into a "Super CCE" offense carrying a mandatory life sentence when the CCE involves more than 300 times the quantity of drugs in 21 U.S.C. § 841(b)(1), does not apply to the CCE Murder offense in § 848(e), which has no "enhancement" provision, and for which the penalty remains 20 years to life regardless of the volume of drugs involved in the CCE.  To the extent defendant draws on statements in the PSR that the statutory penalty for his CCE Murder convictions in Counts 10, 14, and 15 was "mandatory life imprisonment," PSR at 2, ¶ 265, to surmise that the § 848(b) "Super CCE" enhancement was applied to his CCE Murder conviction, *see* Def.'s FSA Mot. at 16; Def.'s FSA Reply at 3 n.4, these statements amount only to clumsy wording or misstatements in the PSR, and do not lend the support to defendant's conclusions that he seeks.  First, the PSR does not cite § 848(b) in its discussion of the statutory penalties for CCE Murder or otherwise indicate the penalty has been enhanced.  *See* PSR at 2, ¶ 265.  Second, the PSR prepared for co-defendant Calvin Sumler, who was actually convicted of engaging in a Super CCE, under 21 U.S.C. §§ 848(a) & (b), as well as CCE Murder, states the statutory penalty range for his CCE Murder conviction as 20 years to life imprisonment.  *See* Presentence Investigation Report ¶ 254, *United States v. Sumler*, No. 95-cr-154-2 (Sept. 25, 1996), ECF No. 685.  Defendant does not attempt to explain why his co-defendant actually *convicted* of Super CCE would not receive the same hypothetical Super CCE enhancement for his CCE Murder conviction that defendant suggests was applied to his own sentences on Counts 10, 14, and 15.  Third, with regard to the CCE Murder charges, the jury was correctly instructed that it must find a CCE existed, but that "the government need not prove that the continuing criminal enterprise was responsible for the distribution of any particular or minimum amount of crack as required for Count 2."  Trial Tr. (July 30, 1996) at 85:10–15.  As such, to convict defendant of CCE Murder, the jury had to find proof that a CCE existed, but not that it was a Super CCE dealing with larger quantities of drugs.  Finally, the effect of any erroneous statement in the PSR is minimal, given that the life sentence imposed for defendant's CCE Murder convictions was within the statutory penalty range, and indeed was the sentence prescribed under the then-mandatory Sentencing Guidelines.  No hearing is required to "help resolve [this] important factual dispute," Def.'s FSA Reply at 3 n.4, and defendant's request is therefore denied.

or a death sentence.  21 U.S.C. § 848(e)(1)(A).  So long as a defendant played some role in a CCE, and some intentional role in the victim's death, that defendant is guilty of CCE Murder, regardless of whether the CCE involved only a few grams of crack, or several kilograms.  As this Court has previously explained regarding his co-defendant, "[e]ven if defendant's drug crimes," such as his Crack Conspiracy conviction in Count 1, "formed part of the continuing series of violations needed to establish the CCE Murder offense, the quantity of drugs and the severity of the penalties was irrelevant," because "[i]llegal crack distribution *in any quantity* was a qualifying felony supporting the existence of a CCE offense as an element both before and after enactment of the Fair Sentencing Act."  *Sumler*, 2021 WL 6134594, at *15 (emphasis in original).  The fact that other co-defendants were convicted of the "covered offense" of engaging in a CCE, *see id.* at *2, does not itself render defendant's conviction for murder in furtherance of that CCE similarly covered.

For these reasons, defendant has failed to persuade the Court that CCE Murder is a "covered offense" under Section 404.  Were he sentenced today, he would be subject to the same penalty range of 20 years' to life imprisonment.  *See* 21 U.S.C. § 848(e)(1)(A).

> **b.**   ***Use of a Firearm During a CCE Murder (Counts 20, 21, and 22)***

Presumably in hopes of shaving time off his additional 45 year sentence imposed consecutively to his life sentence, defendant argues that his three remaining convictions under 18 U.S.C. § 924(c), for use of a firearm during the CCE Murder convictions at issue in Counts 10, 13, and 14, are "covered offenses," because "these offenses . . . depend[ed] on proof that qualifying CCE Murders had been established."  Def.'s FSA Mot. at 17.  The government disagrees, arguing that "§ 924(c) offenses . . . are not themselves covered offenses under the Fair Sentencing Act," regardless of whether "they are predicated on a covered offense," because the

20

Fair Sentencing Act had no effect on the penalty section of § 924(c).  Gov't's FSA Opp'n at 13–14.

The government is correct.  18 U.S.C. § 924(c) provides for an additional five-to-twenty year penalty for "any person who, during and in relation to any crime of violence or drug trafficking crime . . . , uses or carries a firearm" or "in furtherance of any such crime, possesses a firearm."  The quantity of drugs trafficked is entirely irrelevant: a defendant who uses or possesses a firearm while trafficking a negligible quantity of crack cocaine is punished the same as a defendant who does so while trafficking crack in kilogram quantities.  The Fair Sentencing Act had no effect on the penalty scheme for § 924(c) convictions, which consequently are not "covered" by Section 404 of the First Step Act.

### 3.       No Relief Available to Defendant

Having resolved the question of *which* of defendant's convictions are "covered offenses" under the First Step Act, the questions of *what* relief is available to defendant, and *whether* to award it are addressed next.  Taking stock of defendant's convictions, two of them—those on Counts 1 and 3—are plainly "covered offenses," as set forth in Part III.A.1. *supra*.

In addition to the life sentences imposed on these two counts, however, defendant is also serving life sentences on *seven* other counts of conviction:  Counts 10, 14, and 15 (for the CCE Murders of Riley, Murray, and Hartnett, respectively); Count 18 (for the Brake kidnapping); and for the D.C. Code offenses charged in Count 8 (first degree murder while armed of Riley) and Counts 12 and 13 (respective first degree felony murders while armed of Murray and Hartnett).  *Smith*, 2022 WL 1538706, at *4.[15]  Consecutive to these life sentences, defendant continues to

---

[15]       The parties essentially ignore the robbery offense charged in Count 11 and the assault with intent to kill charged in Count 17, *see generally* Def.'s FSA Mot.; Gov't's FSA Opp'n, for which defendant was sentenced to fifteen years to life imprisonment, *Smith*, 2022 WL 1538706, at *4 n.5, which minimum term he has already served.

face an additional 45 years of imprisonment for his § 924(c) convictions charged in Counts 20, 21, and 22.  *See* Part III.A.2.b. *supra*.  Not one of these other offenses is "covered" under the First Step Act.

Despite this staggering sentence, defendant argues that the Court "should resentence [him] and impose a reduced overall sentence," Def.'s FSA Mot. at 17, and "at a minimum, . . . must properly reduce the term for any 'covered offense' to no more than the statutory maximums [he] would now face on those same charges if prosecuted today," *id.* at 18 (citing *United States v. Collington*, 995 F.3d 347 (4th Cir. 2021)).  Specifically, defendant argues that the life sentence imposed for his Crack Conspiracy conviction on Count 1 "must be reduced," and that the life sentence imposed for his RICO Conspiracy conviction on Count 3 "[s]hould be [r]eevaluated." *Id.* at 22.  As for his CCE murder and corresponding § 924(c) convictions on Counts 10, 14, and 15, and 20 through 22, defendant argues "a resentencing is . . . warranted, because [his] sentencing court never considered the sentencing factors set forth in 18 U.S.C. § 3553(a)," *id.*, and because his § 924(c) convictions may not "remain viable," based on a not-yet-raised challenge to the sufficiency of the verdict form, *id.* at 23.   As for defendant's other convictions on Counts 8, 12, 13, and 18—which he does not attempt to argue are "covered" by the First Step Act, *see id.* at 10–17—defendant also contends that the Court has authority to reduce his sentence on these other offenses, and should do so based on consideration of the § 3553(a) factors, *see id.* at 25; Def.'s FSA Reply at 2 n.3.

The government objects on all fronts, arguing that even though defendant is *eligible* for a sentence reduction on the conspiracies charged in Counts 1 and 3, no other relief is available to him for his other, non-covered offenses.  *See* Gov't's FSA Opp'n at 14.  Highlighting both the nature and circumstances of defendant's offense conduct, and his history and characteristics, the

government further argues the § 3553(a) factors weigh against reducing defendant's sentence, even on his covered offenses.  *Id.* at 17–18.

For reasons explained further below, only defendant's sentences on the covered offenses in Counts 1 and 3 are subject to any alteration here.  Yet, any sentence reduction on these two counts would have no effect on the overall sentence being served by defendant, of life imprisonment plus 45 years' to be served consecutively, and, consequently, "[p]erforming the exercise of determining what sentence reductions, if any, would be appropriate for each covered offense, after consideration of the 18 U.S.C. § 3553(a) factors, would essentially amount to issuance of an advisory opinion."  *Sumler*, 2021 WL 6134594, at *21.  The Court will not engage in such a hypothetical exercise.

The finality of the judgment for defendant's sentences on non-covered offenses barring reopening those convictions is discussed first, followed by discussion of the Court's conclusion that no exercise of discretion is warranted to alter the sentences on his covered offenses in Counts 1 and 3.

      **a.**    ***No Authority to Alter Sentences on Non-Covered Offenses***

Defendant concedes that six of his 18 remaining convictions, including offenses under the D.C. Code, are not "covered" under the federal First Step Act, but nonetheless urges that his aggregate sentence be reopened with an across-the-board sentence reduction.  *See* Def.'s FSA Mot. at 25.  As support for this approach, defendant makes two main arguments: first, a textual argument that Section 404(b), when properly interpreted, grants broad discretion to resentence a defendant for "non-covered" as well as "covered offenses," *see* Def.'s FSA Mot. at 25–28, and second, citing the so-called "sentencing package doctrine," defendant contends that the general rule of finality of judgment may be bypassed to reopen his sentence and amend penalties imposed on unrelated, non-covered offenses, *see id.* at 38–42.  Neither argument succeeds.

As to his statutory interpretation argument, defendant focuses on the First Step Act's authorization that "[a] court that imposed a sentence for a covered offense may, on motion of the defendant, . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed."  First Step Act § 404(b) (citation omitted).  The term "impose," in defendant's view, implies a broader scope of authority than if Congress instead had used "modify" or "reduce."  *See* Def.'s FSA Mot. at 26.  Noting that "[f]ederal sentencing statutes frequently use the word 'impose' to refer to the conferral of an aggregate sentence," defendant points to the use of this term in Section 404(b) as "direct[ing] courts to consider an offender's aggregate sentence."  *Id.* at 26–27.  With this textual support, defendant argues that "properly read," Section 404(b) "should 'allow[] federal courts to in fact impose new reduced sentences, not simply modify or reduce the current term of imprisonment already decided.'"  *Id.* at 26 (quoting *Wright v. United States*, 425 F. Supp. 3d 588, 595 (E.D. Va. 2019), alteration in original).

Defendant reads more into the term "impose" than Congress intended, as made plain by the context and structure of this provision.  Section 404(b), in context, actually cabins the authority to "impose a reduced sentence" by limiting that authority to when a court has "imposed a sentence for a covered offense."  First Step Act § 404(b).  Under the most logical reading, all focus is on the "covered offense."  To be sure, Congress could have been clearer and more explicitly authorized courts "that imposed a sentence for a *covered offense* . . . to impose a reduced sentence" on the *covered offense* "as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the *covered offense* was committed," *id.* (emphasis added, citation omitted), but such redundancy is not required for the scope of the Court's authority under Section 404(b) nonetheless to be clear.  This statutory provision, which offers unique relief to a

24

specific class of defendants whose convictions have already made final, must be narrowly construed. *See* 18 U.S.C. § 3582(c) (prohibiting a court from "modify[ing] a term of imprisonment once it has been imposed" except in certain specified instances as "*expressly permitted by statute*" (emphasis added)). Nowhere does Section 404(b) mention or address non-covered offenses for which the moving defendant may also want a sentence reduction. *See Terry v. United States*, 141 S. Ct. 1858, 1860, 1863–64 (2021) (Where "[t]he Fair Sentencing Act changed nothing in" a statutory penalty, it "defies common parlance to say that altering a *different* provision modified" that penalty, and so the First Step Act does not give a defendant subject to that penalty "an opportunity to receive a reduced sentence." (emphasis in original)). The Court declines to expand the scope of what offenses are covered under the statute—and the concomitant discretionary authority to reduce sentences—by reading somewhere between the lines in the actual text that non-covered offenses may be addressed.

Relatedly, defendant also invokes the notion of a "sentencing package," to argue that the presence of offenses "covered" by the First Step Act among his convictions provides authority to revisit the sentences imposed on his other, non-covered counts of conviction, *see* Def.'s FSA Mot. at 38–42, and "impose a [reduced] penalty that takes into account all [18 U.S.C.] § 3553 factors and comports with the more enlightened sentencing expectations" of the Fair Sentencing Act, *id*. at 19; *see also United States v. Townsend*, 178 F.3d 558, 567 (D.C. Cir. 1999) (explaining that "when a defendant is found guilty on a multicount indictment, there is a strong likelihood that the district court will craft a disposition in which the sentences on the various counts form part of an overall plan, and that if some counts are vacated, the judge should be free to review the efficacy of what remains in light of the original plan" (quotation omitted)). Contrary to defendant's assertions, *see* Def.'s FSA Mot. at 38–42, however, this Court lacks

authority to alter the sentences originally imposed by the sentencing judge on his convictions for offenses not covered by Section 404 of the First Step Act.  As this Court has previously held, "the narrow circumstances in which the D.C. Circuit has applied the sentencing package doctrine do not support such application in the instant case to defendant's non-covered offense[s]." *Sumler*, 2021 WL 6134594, at *15.  Instead, as the Circuit has explained, the doctrine applies only where the sentences on all counts within the "package" are sufficiently "interdependen[t,] . . . such that removal of the sentence on one count draws into question the correctness of the initial aggregate minus the severed element." *United States v. Richard Smith*, 467 F.3d 785, 789 (D.C. Cir. 2006).  Unlike in situations where the Circuit has approved of application of the doctrine, *see, e.g., United States v. Lassiter*, 1 F.4th 25, 26 (D.C. Cir. 2021); *Townsend*, 178 F.3d at 568–69, the record provides no indication here that the life sentences imposed on Counts 1 and 3 in any way related to or were intended to account for the presence or absence of the sentences imposed on defendant's nineteen other convictions.  As in *Sumler*, "[t]he covered-offense charges need not have been brought to trial, nor resulted in conviction, for defendant to have been found guilty" of the non-covered offenses, 2021 WL 6134594, at *19, including the other seven on which he is serving a life sentence.[16]  "[N]ot every judgment involving multiple convictions presents a sentencing package in which vacating the sentence on one count unravels the remaining sentences," *United States v. Palmer*, 854 F.3d 39, 49 (D.C. Cir. 2017), and defendant has failed to persuade otherwise here.[17]

---

[16]    Contrary to defendant's assertion that the Court's "decision [in *Sumler*] must properly be reconsidered in light of the D.C. Circuit's subsequent FSA opinion issued in *White*," Def.'s FSA Mot. at 42, *White* was decided on December 29, 2020, nearly a year to the day before this Court issued its decision in *Sumler*, on December 28, 2021. The Court was fully aware of, and indeed relied on, *White* in deciding *Sumler*. *See Sumler*, 2021 WL 6134594, at *9 (citing *White*, 984 F.3d at 81–82); *id.* at *10 (citing *White*, 984 F.3d at 90, 92–93); *id.* at *11 (quoting *White*, 984 F.3d at 86); *id.* at *12 (citing *White*, 984 F.3d at 86); *id.* at *20 (quoting *White*, 984 F.3d at 86, 88, 90); *id.* at *21 (quoting *White*, 984 F.3d at 90).
[17]    Defendant points to this Court's decision in *White*, where "one count of Eric Hicks' sentence" was reduced "to time served, since the original 480-month term [on that count] exceeded post-FSA statutory maximums, even

Even if Section 404 "does not limit relief to mechanical implementation of the new post-FSA statutory penalties," Def.'s FSA Mot. at 33, this statute still does not go so far as to permit reopening defendant's numerous life sentences, independently put in place as punishment for his conduct.  Sixteen of defendant's remaining eighteen convictions—and seven of his life sentences—are for offenses not "covered" under the First Step Act, and therefore this Court lacks the authority to alter the sentences originally imposed.[18]  Consequently, regardless of whether the life sentences on Counts 1 and 3 are reduced, defendant's aggregate sentence of life plus 45 years' consecutive imprisonment remains the same.

### b.   *The Court Declines to Alter the Sentences on Counts 1 and 3*

Despite the fact that he is serving multiple life sentences, plus a consecutive term of 45 years' imprisonment, for offenses unaffected by the First Step Act, defendant urges that his sentences be reduced on the "covered offenses" in Counts 1 and 3, arguing that "it would be an abuse of discretion for this Court to leave in place, unaltered . . . , sentences that now exceed statutory maximums, which would be illegal if imposed today."  Def.'s FSA Mot. at 46.

While sentencing reduction relief is "*permitted*" under Section 404(b), the question here is whether defendant's "motion for reduced sentence *should* be granted" with regard to the

---

though his aggregate sentence remained life," and urges the same approach here.  Def.'s FSA Mot. at 46 n.19 (citing *United States v. White*, 413 F. Supp. 3d 15 (D.D.C. 2019) ("*White-2019*")).  By contrast to the instant case, however, all of Hicks' convictions were for "covered offenses," but the Court concluded that "no sentence reduction [was] available to award" to him on any but a single count of conviction because the statutory penalties for his other convictions were "unchanged," given the actual quantities of drugs at issue.  *White-2019*, 413 F. Supp. 3d at 50–51.  On appeal, the D.C. Circuit clarified that "whether an offense is 'covered' does not depend on the actual drug amounts attributed to a defendant," but only on "whether the defendant was convicted of an offense with a statutory penalty range that the Fair Sentencing Act altered."  *White*, 984 F.3d at 86.  Here, defendant is serving life on a mix of covered and non-covered offenses, rendering relief unavailable to him on an entirely different basis than that found to preclude broader, aggregate relief in *White-2019*.

[18]     Unlike in *Sumler*, where all of the life sentences imposed on defendant were for federal offenses, 2021 WL 6134594, at *2, defendant here was also sentenced to life imprisonment, without parole, on four D.C. Code offenses, *see* Part I.B.2. *supra*.  Defendant acknowledges this fact, *see* Def.'s FSA Reply at 2 n.3, but makes no effort to explain how the First Step Act, which was enacted to offer limited relief from historic federal sentencing statutes, would allow a court to reopen convictions imposed under local D.C. law, to which the federal Sentencing Guidelines do not apply.

"covered offenses" in Counts 1 and 3. *White*, 984 F.3d at 88 (emphasis in original). In considering this question, a court has "'broad' but not 'unfettered'" discretion, *Lawrence*, 1 F.4th at 43 (quoting *White*, 984 F.3d at 88), and the Court, "guided by sound legal principles," *White*, 984 F.3d at 88 (quotation omitted), must consider "all relevant factors" in determining "whether a sentence imposed is sufficient, but not greater than necessary, to fulfill the purposes of § 3553(a)," *id.* at 90 (quoting *United States v. Hudson*, 967 F.3d 605, 609, 611 (7th Cir. 2020)). "These [factors] include new statutory minimum or maximum penalties; current Guidelines; post-sentencing conduct; and other relevant information about a defendant's history and conduct," paying particular attention to defendants' "post-sentencing conduct." *Id.* (quoting *Hudson*, 967 F.3d at 609). *See also Concepcion*, 142 S. Ct. at 2396 (affirming that courts "may consider other intervening changes of law (such as changes to the Sentencing Guidelines) or changes of facts (such as behavior in prison) in adjudicating a First Step Act motion" and are "obligated to consider nonfrivolous arguments presented by the parties" but are "not compel[led] . . . to exercise their discretion to reduce any sentence based on those arguments"); *see also id.* at 2406–07 (under the majority's decision, "district courts must . . . calculat[e] the new Guidelines range based solely on the changes to the crack-cocaine sentencing ranges" but "then have free rein either to take into account—or to completely disregard—other intervening changes since the original sentencing," which "blanket discretion . . . will therefore produce massive inequities in how the First Step Act is implemented on the ground" (Kavanaugh, J., dissenting)).

Defendant's personal history, as noted by his counsel and in the PSR prepared for his original sentencing, demonstrates his difficult childhood circumstances, including that he was raised by a single mother who struggled with addictions to heroin and crack, which led to her incarceration for periods of his childhood. PSR ¶¶ 245–47. Although defendant left school

before completing the 10th grade, *id.* ¶ 258, prior to his arrest in the instant case, he had two previous convictions, for possession and attempted possession of cocaine, *id.* ¶¶ 241–42. Defendant argues his life sentence without possibility of parole "fails to account for his youthfulness at the time of the offenses in this case," and yet, even if offenses committed "between the ages of 18–24" do not "reflect[] permanent incorrigibility," Def.'s FSA Mot. at 30 (quoting *Montgomery v. Louisiana*, 577 U.S. 190, 209 (2016)), he was 25 by the time of his sentencing, PSR at 2, and 21 during the period "in which almost all of his violent charges were found to have been committed," Def.'s FSA Mot. at 30, making it reasonable to expect a greater degree of maturity than had he committed the offenses at a younger age. Further relevant is the fact that defendant perpetrated his violent crimes over a period of months as part of a drug trafficking conspiracy, in which, on some level, he made the decision to participate over and over again each day.

Defendant also highlights the "evidence of [his] rehabilitation since his prior sentencing," *Concepcion*, 142 S. Ct. at 2399 (quoting *Pepper v. United States*, 562 U.S. 476, 490 (2011)), including his efforts "to improve himself, learn from his mistakes, change his behavior, and commit to becoming a better person," Def.'s FSA Mot. at 43. In a letter submitted along with his *pro se* motion, a BOP Correctional Counselor who has "known [defendant] since 2007," describes him as "a good mentor and role model for younger inmates" and "an exceptionally hard worker," who has "demonstrated an outstanding work ethic while working as the Recreational Center Orderly[] and an Intramural Recreational Official," and who "has strived to make himself physically, mentally, and spiritually a better person so he may be more prepared for the challenges ahead." Def.'s *Pro Se* FSA Mot., Ex. 1, Ltr. from L. Scott (Apr. 1, 2019), ECF No. 613. A childhood friend of the defendant, who is now "a Professor of Sociology at the

University of California, Merced," writes that defendant was "a nice young man who had a hard life" and "has made a commitment to become a better person through his incarceration," such that "[h]is sentence of life plus 65 years is excessive." *Id.*, Ex. 2, Ltr. from T. Golash-Boza (June 6, 2019), ECF No. 613.  While incarcerated, defendant has taken the positive steps of earning his GED and engaging in some additional coursework.  *See* Gov't's FSA Opp'n, Ex. 2, BOP Tr. (as of Sept. 1, 2022), ECF No. 711-2.  At the same time, however, defendant's behavioral record while incarcerated is, to say the least, not exemplary.  He has "incurred infractions for possessing a dangerous weapon in 1998, 2000, 2001, 2002, 2006, 2008, 2009, and 2010," and been cited for multiple instances of mail abuse as recently as last year, *after* he first sought relief under the First Step Act *pro se.*  Gov't's Opp'n at 18; *see also id.*, Ex. 3, BOP Behavior Record (as of Sept. 1, 2022), ECF No. 711-3.

        In short, although defendant's early life was very difficult and he has taken some positive steps to rehabilitate himself since his incarceration, these factors are simply not outweighed by the seriousness of defendant's conduct or the troubling evidence of continued poor behavior while incarcerated—the evidence of which defendant makes no attempt to rebut.

        The First Step Act was designed to offer sentence reductions to people convicted under "disproportionate and racially disparate sentencing penalties" for cocaine convictions, *White*, 984 F.3d at 93; it was not focused on murderers.  The conduct leading to defendant's convictions— including the brutal killing of Ucal Riley and Marcus Murray, the callous involvement in the shooting of Victor Hartnett, and the robbery and torture of Eric Brake—cannot be set aside.  The brutality of defendant's actions was such that, even after presiding over a four-month long trial involving five defendants accused of running a complex crack conspiracy over seven years, the sentencing judge said he still could not forget "the pictures" of defendant's victims.  Sent'g Tr. at

24:12.  Defendant's announcements of his deadly intentions ahead of time—telling other Crew members he planned "to rob the drug dealer" while driving to meet Murray and Welch, PSR ¶ 54, and announcing to another Crew member "he was going to kill Riley" hours before he did so, *id.* ¶ 92—rebut any notion that defendant committed these crimes in the heat of the moment, without premeditation.  This violence may have occurred in the context of turf wars over crack dealing, but murder is separately and independently deserving of punishment, beyond any injustices in how the law then treated crack and powder cocaine offenses.[19]  The Court agrees with the government that "[d]efendant's current sentences are severe, but they are appropriate given the nature and circumstances of his offenses" as "a key member of a violent drug trafficking organization."  Gov't's FSA Opp'n at 17.

     As for defendant's insistence that the Court "must . . . reduce the term for any 'covered offense' to no more than the statutory maximums [he] would now face on those charges if prosecuted today . . . , in order to avoid its decision being deemed an abuse of discretion," Def.'s FSA Mot. at 18, these arguments are not well taken.  *Concepcion*, which is the Supreme Court's most recent engagement with the scope of the First Step Act, loudly and repeatedly affirms the discretion of district courts to respond to motions for relief under Section 404(b).  District courts are "obligated to consider nonfrivolous arguments presented by the parties," and to "consider intervening changes."  *Concepcion*, 142 S. Ct. at 2396.  They are "not compel[led] . . . to exercise their discretion to reduce any sentence based on those arguments," *id.*, however, or in any way "require[d] . . . to accept a movant's argument that evidence of rehabilitation *or other*

---

[19]     Defendant argues the relief he seeks is not "unfathomable, given this Court's recent grant of [First Step Act] reductions to violent offenders Antoine White and Eric Hicks."  Def.'s FSA Reply at 3–4 (citing *United States v. White*, No. 93-cr-97 (BAH), 2022 WL 3646614 (D.D.C. Aug. 24, 2022)).  While it is true that White and Hicks had played "leadership roles" in another crack cocaine trafficking organization operating in Washington, D.C. in the late 1980s and early 1990s, they were convicted *only* of offenses covered under the First Step Act, *White*, 2022 WL 3646614, at *1, while defendant here is serving seven life sentences for non-covered offenses.  As such, comparison between White and Hicks and the instant defendant is misplaced.

*changes in law* counsel in favor of a sentence reduction," *id.* at 2404–05 (emphasis added).

Instead, "[a]ll that is required is for a district court to demonstrate that it has considered the

arguments before it." *Id.* at 2405.  While *Concepcion* did not explicitly address whether a new

statutory maximum under the Fair Sentencing Act and First Step Act cabins the exercise of

discretion, by *requiring* a court to reduce a sentence to the outer bounds of new statutory minima

and maxima, the decision's broad general statements that a court's "discretion is bounded only

when Congress or the Constitution expressly limits the type of information a district court may

consider in modifying a sentence," *id.* at 2398, and that "[n]othing in the First Step Act contains

such a limitation," *id*. at 2396, such that "a district court is not required to modify a sentence for

any reason," *id*. at 2402, provide clarity that discretion may be exercised to deny resentencing

because, among other reasons, the specific conduct of the original offenses still warrant the

originally imposed sentences.[20]

    As such, defendant is flatly wrong that the Court is in any way required to exercise its

discretion to reduce his sentence for covered offenses, or that declining to do so amounts to an

abuse of discretion.  *See* Def.'s FSA Mot. at 18–21.[21]  Taken together, the (1) seriousness of

defendant's offense conduct; (2) defendant's terrible behavioral record while incarcerated; (3)

irrelevance of the sentences on Counts 1 and 3 to the sentence defendant is actually serving; and

---

[20]    In support of his argument that declining to reduce his sentences on his covered offenses would amount to
an abuse of discretion, *see* Def.'s FSA Mot. at 18–21, defendant relies on *United States v. Collington*, where
the Fourth Circuit found that "district courts abuse their discretion in letting stand a sentence of imprisonment that
exceeds the statutory maximum established by the Fair Sentencing Act," 995 F.3d 347, 356 (4th Cir. 2021).
Notably, however, the defendant in *Collington* remained incarcerated on only one count of conviction, for which the
district court had declined to reduce defendant's sentence to the current statutory maximum.  *Id.* at 351.  By obvious
contrast here, defendant remains incarcerated on multiple other life sentences, plus a consecutive term of 45 years'
imprisonment.  Indeed, where defendants are serving sentences for "covered offenses" only, this Court has agreed
with the *Collington* logic and, even if not finding itself bound to do so, exercised its discretion to reduce those
sentences to within the new statutory penalty ranges.  *See White*, 2022 WL 3646614, at *24–*25.
[21]    The fact that defendant is barred from bringing a motion for First Step Act relief once such motion is
"denied after a complete review of the motion on the merits," Def.'s FSA Mot. at 47 (quoting First Step Act
§ 404(c)), while unfortunate, in no way binds or compels this Court to act.

(4) strong practice against the issuance of advisory opinions, provide strong support for the Court's conclusion to leave defendant's sentence on Counts 1 and 3 intact.[22]  Defendant's motion for a sentence reduction under the First Step Act is therefore denied.[23]

## B.    Motion for Certificate of Appealability

On May 16, 2022, this Court denied in part a motion brought by defendant under 28 U.S.C. § 2255, as it sought to vacate his convictions in Counts 20 through 22 for use of a firearm during the CCE Murder offenses charged in Counts 10, 14 & 15.  *See Smith*, 2022 WL 1538706,

---

[22]      In declining to alter the sentences for "covered offenses" when doing so would have no effect on defendant's period of incarceration, this Court is in good company.  *See, e.g, United States v. Parker*, 993 F.3d 595, 606 (8th Cir. 2021) (declining to review concurrent life sentence on count 2 because the conviction and life sentence on count 1 was valid and a ruling in defendant's favor on count 2 would not reduce the time served on count 1); *United States v. Stuckey*, No. 20-1565, 2021 WL 2470308, at *2 (6th Cir. Feb. 8, 2021) (affirming denial of defendant's First Step Act motion for sentence reduction because "[r]egardless of his sentence for the drug-conspiracy conviction, [defendant]'s conviction for murder to prevent a person from providing information concerning a federal crime to federal authorities, in violation of 18 U.S.C. § 1512(a)(1)(C), required a sentence of life imprisonment" and thus "[d]eclining to review [defendant]'s sentence for his drug-conspiracy conviction is unlikely to subject him to any adverse collateral consequences because he must serve a life sentence for his murder conviction"); *United States v. Heatley*, No. 96-cr-515 (LAP), 2021 WL 2418431, at *2 (S.D.N.Y. July 14, 2021) (finding that defendant's "RICO and Section 848 convictions did not involve crack cocaine" and were not covered offenses under Section 404 of the First Step Act and therefore denying sentence reduction, explaining that "even if [defendant] had been convicted of a covered offense, his sentence would not be practically impacted; Defendant would still face a mandatory life sentence because of his additional conviction for the murders in aid of racketeering"); *United States v. Jefferson*, No. 97-cr-276 (2) (MJD), 2021 WL 2143478, at *3–*4 (D. Minn. May 26, 2021) (declining "to review Defendant's challenge [under Section 404 of the First Step Act] to his sentence on the CCE count," since even if his sentence were reduced on the CCE count "it would not reduce his life sentence on the murder counts").

[23]      Defendant's request for a "sentencing proceeding . . . hearing," *see* Def.'s FSA Mot. at 48, to which the government objects, *see* Gov't's FSA Opp'n at 14, is denied.  "[N]o categorical right to allocute applies to motions to reduce a sentence under the First Step Act." *Lawrence*, 1 F.4th at 42.  While *White* counsels that defendants "be given full and fair hearings on their claims to ensure that the goals of the Act are met," 984 F.3d at 81, as defendant concedes, *see* Def.'s FSA Mot. at 48, *White* does not require that the Court "hold a hearing at which Mr. Smith is allowed to be present, either in person or via videoconference/Zoom," *id.*  Indeed, "[n]othing in the text or structure of Section 404 . . . categorically requires that district courts provide an opportunity for the defendant to allocute before ruling on such a motion." *Lawrence*, 1 F.4th at 47; *see also Palmer*, 35 F. 4th at 853 (finding no error in district court's decision not to hold a hearing on defendant's First Step Act motion); *Concepcion*, 142 S. Ct. at 2404 ("All that the First Step Act requires is that a district court make clear that it reasoned through the parties' arguments." (internal alterations and quotations omitted)); FED. R. CRIM. P. 43(b)(4) (a defendant "need not be present" for a "proceeding [that] involves the correction or reduction of a sentence under . . . 18 U.S.C. § 3582(c)").  Given the extensive review and discussion set forth herein of the parties' arguments and evidence, as set forth in over one hundred pages of briefing and exhibits, no hearing is necessary.  *Cf. Sumler*, 2021 WL 6134594, at *7 (where hearing requested by defendant was held and "undercut, rather than helped demonstrate, that defendant had accepted full responsibility for his offense conduct and thereby raised questions about his claim that he had been fully rehabilitated and was ready for reentry into the community with the appropriate respect for and willingness to comply with the law").

at *18.  Defendant had argued that CCE Murder had *only* qualified as a "crime of violence"
under the "residual clause" definition in 18 U.S.C. § 924(c)(3)(B), which the Supreme Court
struck down as unconstitutional in *Davis*, and did "not meet the [remaining] elements clause
definition of crime of violence" in § 924(c)(3)(A), *id.* at *1, because CCE Murder "only requires
a *mens rea* of negligent or merely accidental conduct," *id.* at *10, and does not require the
defendant to use or threaten to use physical force, *id*. at *11.  The Court rejected this argument,
finding CCE Murder "requires a *mens rea* of intent and includes elements of an 'intentional
killing' with the requisite employment of physical force" in its *actus reus*, such that it continued
to qualify as a "crime of violence" under the elements clause, and to support a conviction under
§ 924(c) for use of a firearm during a crime of violence or drug trafficking offense.  *Id.* at *15.

On June 1, 2022, defendant timely noticed his appeal of the Court's decision, but because
this Court had "neither granted nor denied a certificate of appealability," this appeal has been
"held in abeyance" by the D.C. Circuit pending this Court's determination of whether one "is
warranted in this case."  Order (June 6, 2022), ECF No. 702 (citing *Mitchell v. Reno*, 216 F.3d
1126 (D.C. Cir. 2000); FED. R. APP. P. 22(b)(1)).  Defendant has now moved for a COA "so that
[he] can challenge on appeal this Court's denial of his petition for relief under 28 U.S.C.
§ 2255."  Def.'s COA Mot. at 1.

To obtain a COA to pursue an appeal under § 2255, defendant must make "a substantial
showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Such a defendant "need
not show," however, "that he should prevail on the merits," but only that "the questions are
adequate to deserve encouragement to proceed further," or that "the issues are debatable among
jurists of reason" such that "a court *could* resolve the issues" in his favor.  *Mitchell*, 216 F.3d at
1130 (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983), emphasis in original).

Defendant has met that burden here: "the questions raised" by defendant "are adequate enough" to permit him to "proceed further," Def.'s COA Mot. at 3, including because "[t]he D.C. Circuit has not addressed the issue of whether CCE Murder constitutes a crime of violence under the elements clause of § 924(c), and no other circuit has resolved the question," *Smith*, 2022 WL 1538706, at *12.

Even if unlikely, other "jurists of reason" could *possibly* reach a different conclusion as to whether CCE Murder—which requires that a person engaged or working "in furtherance of a continuing criminal enterprise" or engaged in a drug offense punishable under section 841(b)(1)(A), must either (1) "intentionally kill[]" or (2) "counsel[], command[], induce[], procure[], or cause[] the intentional killing of an individual," with "such killing result[ing]," 21 U.S.C. § 848(e)(1)(A)—also requires, as part of its *actus reus*, "the use, attempted use, or threatened use of physical force," 18 U.S.C. § 924(c)(3)(A). While acknowledging that CCE Murder involves an "intentional killing," defendant had argued that CCE Murder still does not meet the § 924(c) definition because "its *actus reus*, much like murder for hire, does not necessarily require the use or threatened use of physical force *by the defendant*." *Smith*, 2022 WL 1538706, at *10. The Court rejected this argument, finding nothing in the "crime of violence" definition in § 924(c) to indicate it "appl[ies] solely to offenses where defendant *himself* used, threatened, or attempted to use physical force," and concluding instead that "the conduct required to support a CCE Murder conviction involves the use of physical force," since, "[a]bsent the element of an 'intentional killing,' no CCE Murder offense is committed." *Id.* at *14 (emphasis in original).

Defendant now argues, *see* Def.'s COA Mot. at 6–8, that dicta in *United States v. Taylor*, 142 S. Ct. 2015 (2022), which was issued after this Court's § 2255 decision, could be read to

lend some support for his position.  *See id.* at 2020 (finding attempted Hobbs Act robbery, in

violation of 18 U.S.C. § 1951(a), did not qualify as a crime of violence for purposes of § 924(c)

because its *actus reus*—completing a "substantial step" toward a Hobbs Act robbery—"does not

require the government to prove that *the defendant* used, attempted to use, or even threatened to

use force against another person or his property" (emphasis added)).  Comparison to a Hobbs Act

robbery has limited value, since a "substantial step" toward a Hobbs Act robbery may be taken

without the use of violence, and CCE Murder always requires the existence of an "intentional

killing."  Yet, a "jurist[] of reason" could disagree.

    In light of the absence of controlling Circuit precedent, new guidance from the Supreme

Court, and "the length of prison exposure at stake," the Court finds that defendant should be

permitted to bring these issues before the court of appeals for review.  *See* Def.'s COA Mot. at 8.

## IV.    CONCLUSION

    For the reasons set forth above, defendant is ineligible for a sentence reduction on his

convictions for offenses not covered by Section 404(b) of the First Step Act—namely, those on

all counts aside from Counts 1 and 3—and consequently, his current life sentence remains final

and will not be reduced.  His motion for a sentence reduction under Section 404(b) of the First

Step Act, ECF No. 706, is therefore **DENIED.**  Defendant's motion for a certificate of

appealability of this Court's previous decision on his § 2255 motion, ECF No. 707, is

**GRANTED.**

    An Order consistent with this Memorandum Opinion will be filed contemporaneously.

    Date: October 17, 2022

                                            _____
                                            BERYL A. HOWELL
                                            Chief Judge