**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal Action No. 95-154-8 |
| GERALD SMITH, | Judge Beryl A. Howell |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is defendant Gerald Smith's second *pro se* Motion for Compassionate Release ("Def.'s Mot."), ECF No. 725, pursuant to amendments made by the First Step Act of 2018, to compassionate release authority, as codified at 18 U.S.C. § 3582(c)(1)(A). *See* Pub. L. No. 115-391, title VI, § 603(b), 132 Stat. 5194, 5239-41. Upon consideration of this motion, defendant's exhibits accompanying the motion, ECF No. 726, the memorandum submitted by the government in opposition ("Gov't's Opp'n"), ECF No. 728, and the entirety of the underlying record, defendant's motion is **DENIED** for the reasons set forth below.

## I.    BACKGROUND

The factual background of this case has been summarized in multiple prior decisions and thus is not repeated at length here. *See, e.g.*, *United States v. Smith* ("*Smith II*"), 104 F.4th 314, 319-20 (D.C. Cir. 2024) (affirming denial of habeas petition and compassionate release motion and issuing limited remand to correct defendant's original order of judgment and conviction after the 1998 direct appeal); *United States v. Sumler* ("*Smith I*"), 136 F.3d 188, 189 (D.C. Cir. 1998) (affirming all but two convictions on direct appeal, which did not alter the aggregate sentences so no remand for resentencing); *United States v. Smith* ("*Smith-Oct. 2022*"), No. 95-cr-154-8

1

(BAH), 2022 WL 10449599, *2-3 (D.D.C. Oct. 17, 2022) (denying counseled motion for a sentence reduction under the First Step Act, as well as the superseded *pro se* motion, because only two of eighteen of defendant's convictions are "covered offenses" under Section 404 of the First Step Act); *United States v. Smith* ("*Smith-May 2022*"), 605 F. Supp. 3d 1, 7-9 (D.D.C. 2022) (granting in part and denying in part a motion to vacate judgment under 28 U.S.C. § 2255), *aff'd and remanded to correct original judgment*, *Smith II*, 104 F.4th 314; *United States v. Smith* ("*Smith-2016*"), No. 95-cr-154-8 (BAH), 2016 WL 11665895, *1 (D.D.C. May 6, 2016) (denying *pro se* motion for resentencing under 28 U.S.C. § 2255 because defendant had not obtained a certificate of appealability from the D.C. Circuit); *United States v. Smith* ("*Smith-2011*"), 767 F. Supp. 2d 10, 12 (D.D.C. 2011) (denying § 2255 motion as time-barred as filing was years after his petition for certiorari had been denied and no triggering events extending the limitations period, under 28 U.S.C. § 2255(f), were identified since supporting facts "were all known to [petitioner] or could have been easily discovered even at the time of sentencing and appeal").  In brief, "[i]n 1996, defendant Gerald Smith was convicted, following a jury trial, of twenty-one violent crimes and gun offenses stemming from his membership in 'the so-called Fern Street Crew, an organization which distributed crack cocaine for seven years in the District of Columbia and Maryland,' with the 'Crew's activities [ ] facilitated by its use of violence to defend territory from rival drug dealers and subvert the efforts of the criminal justice system.'" *Smith-May 2022*, 605 F. Supp. 3d at 6 (quoting *Smith I*, 136 F.3d at 189).

In addition to selling crack cocaine to street resellers in his neighborhood, defendant served as the "enforcer" for the Fern Street Crew from at least 1992 to 1993.  *Id.* at 7.  As such, he was regularly armed and committed violent acts in furtherance of the crew's objectives.  *Id.*

(citing Def.'s Presentence Report ("PSR"), ECF No. 693).[1]  Specifically, his convictions stemmed from trial evidence establishing defendant's role over many months in a series of violent felonies, including three murders, two attempted murders, a kidnapping, and a sexual assault.

### A.    First Murder (Victim Ucal Riley)

On October 6, 1992, defendant told a co-conspirator that they should rob crack cocaine from Ucal Riley, a local drug dealer who had started to expand his business into the Fern Street Crew's territory.  PSR ¶¶ 91-92.  Defendant's co-conspirator paged Riley telling him that they wanted to make a purchase, and when Riley arrived with another individual, defendant told Riley that he wanted to take a ride with Riley to make the deal.  *Id.* ¶ 92-93.  Defendant instructed his co-conspirator to kill the other individual accompanying Riley, while defendant and Riley were completing the transaction; the co-conspirator did not kill the other individual.  *Id.*  Riley drove defendant several blocks away.  *Id.*  Riley asked for the money first, but defendant refused; defendant asked for the crack cocaine first, but Riley refused.  *Id.* ¶ 94.  Defendant pulled out a 10-millimeter pistol and shot Riley several times in the head, sending pieces of his head, ear, and skull in and around the interior of the car.  *Id.*  Defendant proceeded to take the crack cocaine. *Id.*

### B.    Second (Victim Marcus Murray) and Third (Victim Victor Hartnett) Murders and First Attempted Murder (Victim Anthony Welch)

On October 19, 1992, defendant and a co-conspirator decided to rob drug dealers in the Allison Street group, a rival gang.  *Id.* ¶¶ 53-54.  They drove to an alleyway on Allison Street where they met, under the pretense of purchasing marijuana, Marcus Murray and Anthony

---

[1]    The PSR is filed under seal and unsealed to the limited extent that sealed content is referenced in this Memorandum Opinion to explain the Court's reasoning.  *See United States v. Reeves*, 586 F.3d 20, 22 n.1 (D.C. Cir. 2009).

Welch. *Id.* ¶ 54. Defendant pulled out a gun and shot Murray in the head¸ killing him, before shooting Welch five times. *Id.* Welch managed to survive by falling to the ground and hiding underneath a truck. *Id.* After shooting Welch, defendant and his co-conspirator continued to shoot Murray's body. *Id.* Fleeing the scene, defendant's co-conspirator killed Victor Hartnett, an older man who just happened to be in the vicinity as they were running back to their car. *Id.* ¶ 55. Defendant's co-conspirator shot Hartnett five times to make sure that he was dead. *Id.*

### C.     Kidnapping and Second Attempted Murder (Victim Eric Brake)

On December 1, 1992, defendant and two co-conspirators lured Eric Brake, a member of the Twins' gang, another rival of the Fern Street Crew, into an apartment where they proceeded to kidnap him. *Id.* ¶ 61. They put a pillowcase over his head and demanded to know the location of his drugs and money as well as the locations of the drugs and money of the Twins' gang. *Id.* The three beat Brake for several hours before driving him in a van around Washington, D.C. and Maryland so that he could identify locations of other members of the Twins' gang. *Id.* ¶¶ 61-62. They then placed electrical tape over Brake's eyes and mouth and drove him to a park in Laurel, Maryland. *Id.* ¶ 62. Defendant took Brake into the woods and shot him in the head, leaving him for dead. *Id.* Brake regained consciousness several hours later and stumbled in the woods until he encountered a passerby. *Id.* ¶ 63. The bullet had passed through his jaw, cut his jugular, and lodged into his shoulder. *Id.* The shot fractured the left side of Brake's face and rendered Brake unable to speak for more than one year after the shooting. *Id.* ¶ 186.

### D.     Sexual Assault and Robbery

On September 17, 1993, at approximately 11:00 p.m., defendant and two others entered a woman's apartment. *Id.* ¶ 96. They held a gun to her head, stripped her of her clothes, tied her with a long telephone cord, and proceeded to sexually assault her. *Id.* Her ten-month-old son

screamed from the same room throughout the entire assault. *Id.* Afterwards, defendant and one other robbed the woman of her stereo, television, and other valuable objects. *Id.*

### E.    Post-Arrest Planning To Murder Family of Cooperating Witnesses

After his arrest, defendant discussed with other members in the Fern Street Crew the identities of the cooperating witnesses and told the group that he had made arrangements with someone outside of the jail to have the children and girlfriend of one of the cooperating witnesses killed. *Id.* ¶ 171. Separately, defendant told another member in the Fern Street Crew that if he ever saw a different cooperating witness that he would kill that witness. *Id.* ¶ 170.

### F.    Convictions and Sentencing Proceedings

For these and other offenses, following a four month trial, a jury found defendant guilty on all twenty-one counts for which he was charged, including one count of conspiracy to distribute fifty grams or more of cocaine base (21 U.S.C. § 846) (Count 1); one count of conspiracy to participate in a racketeer influenced corrupt organization (18 U.S.C. §§ 1962(d) & 1963(a)) (Count 3); one count of armed first degree murder (of victim Riley) (22 D.C. Code §§ 2401, 3202 & 105) (Count 8); three counts of armed first degree felony murder (of victims Riley, Murray, and Hartnett) (22 D.C. Code §§ 2401, 3202 & 105) (Counts 9, 12, and 13); three counts of continuing criminal enterprise murder (involving victims Riley, Murray, and Hartnett) (21 U.S.C. § 848(e)(1)(A) & 18 U.S.C. § 2) (Counts 10, 14, and 15); one count of armed robbery (of victim Riley), and one count of attempted armed robbery (of victim Murray) (22 D.C. Code §§ 2901, 3202 & 105) (Counts 11 and 16); one count of assault with intent to kill while armed (of victim Welch) (22 D.C. Code §§ 105, 501 & 3202) (Count 17); one count of kidnapping (of victim Brake) (18 U.S.C. § 1201) (Count 18); one count of use of a firearm (as to victim Riley) (18 U.S.C. §§ 924(c) & 2) (Count 20); three counts of use of a firearm (as to victims Murray, Hartnett, and Brake) (18 U.S.C. §§ 924(c)(1) & 2) (Counts 21 through 23); and four counts of

possession of a firearm during a crime of violence (as to victims Riley, Murray, Hartnett, and Welch) (22 D.C. Code § 3204(b)) (Counts 30 through 33). *Smith-May 2022*, 605 F. Supp. 3d at 8. Defendant moved for a post-trial judgment of acquittal, which the trial court denied, finding that "[t]he government presented overwhelming evidence to establish the existence of the conspiratorial crimes along with the substantive offenses" over "the four months of trial in this case." Mem. Op. at 1-2 (Nov. 4, 1996), ECF No. 422.

In November 1996, defendant was sentenced, in aggregate, to life imprisonment, without parole, plus a consecutive sixty-five years. *Smith-May 2022*, 605 F. Supp. 3d at 10. At the time, this sentence consisted of ten concurrent life sentences, five consecutive years for the use of a firearm against Riley, and three consecutive twenty-year sentences for the use of a firearm against Murray, Harnett, and Brake. *Id.* at 9-10. The D.C. Circuit upheld the judgment, except as to one count of felony murder (Count 9) and one count of attempted armed robbery (Count 16), but this did not alter defendant's original imposed term of imprisonment of life imprisonment, without parole, plus a consecutive sixty-five years, though this did result in defendant serving nine, rather than ten, concurrent life sentences**.** *Smith I*, 136 F.3d at 189 n.1 (vacating two counts of the conviction, with government concession, "under District law," because an individual "cannot stand convicted of both first degree murder (premeditated) while armed and first degree murder (felony murder) while armed with respect to the same killing" nor could he be "convicted of both felony murder and the underlying felony"). Thus, following the D.C. Circuit's judgment, no remand for resentencing was required. Almost thirty years after the original sentencing, defendant's sentence was reduced to life plus a consecutive forty-five years, when this Court vacated his use of a firearm during a kidnapping conviction (Count 23), which carried a consecutive term of twenty years, upon finding that felony kidnapping only qualifies as

a crime of violence under 18 U.S.C. § 924(c)'s now-invalidated residual clause. *Smith May-2022*, 605 F. Supp. at 17-18 (citing *United States v. Davis*, 588 U.S. 445, 448 (2019)).

### G.    Defendant's Conduct While Incarcerated

Defendant's record during incarceration has been far from unblemished. His infractions stretch over all three decades of incarceration, and up to 2024.  Gov't's Opp'n, Ex. 1.  His infractions also run the gamut in seriousness, ranging from disobeying or refusing orders (on January 25 and June 5, 1998, January 15, 2014) and being absent from assignment (on December 17, 2008), to using a phone without permission and using a third-party texting service (on June 20, 1997 and April 6, 2021, respectively), to more serious infractions, including fighting (on October 31, 1998) and possessing various unidentified weapons (on July 28, 1998, September 7, 2002, October 1, 2008, August 19, 2009, and September 7, 2010), as well as identified weapons varying from a "sharpened metal rod found inside [a] blanked he was sitting on," while denying knowledge (on April 25, 2000), a seven-inch sharpened plexiglass weapon concealed in his mattress (on February 17, 2001), and a broom with a shank concealed in it (on June 22, 2006). Defendant has also been found in possession of materials to facilitate gambling (on February 17, 2001) as well as a USB drive containing pornography (on September 6, 2023). *Id.*  On August 28, 2024—just a year before defendant filed the instant motion—he was found with yet another unauthorized item. *Id.*

## II.    LEGAL STANDARD

"Federal courts are forbidden, as a general matter, to 'modify a term of imprisonment once it has been imposed;' but the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011) (plurality opinion) (quoting 18 U.S.C. § 3582(c)).  One such exception was created by the First Step Act of 2018, which permits a defendant to file a motion for compassionate release directly with a district court, after

exhaustion of administrative remedies.  18 U.S.C. § 3582(c)(1)(A); *United States v. Wilson*, 77 F.4th 837, 839 (D.C. Cir. 2023).

When exhaustion requirements are met, a defendant's term of imprisonment may be reduced when the district court, "after considering the factors set forth in [§] 3553(a)," finds, first, either "that extraordinary and compelling reasons warrant such a reduction" or the defendant meets certain age criteria, and, second, "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A)(i)-(ii).  In accord with this statutory text, the relevant guidelines policy statement, at U.S.S.G. § 1B1.13, states that a "court may reduce a term of imprisonment . . . if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable," the court makes three determinations: (1) either (a) "extraordinary and compelling reasons warrant the reduction" or (b) the defendant satisfies certain age criteria; (2) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) the reduction is consistent with this policy statement."  U.S.S.G. § 1B1.13(a).[2]

The policy statement then describes six categories of circumstances that may qualify, either alone or in combination, as extraordinary and compelling reasons for compassionate

---

[2]    The third criterion—"the reduction is consistent with this policy statement"—echoes the statutory text in 18 U.S.C. § 3582(c)(1)(A) and makes clear this policy statement applies whether the compassionate release motion is filed by the defendant, as allowed by the First Step Act's amendment to the statute, or by the Director of the Bureau of Prisons.  Shortly after the First Step Act became effective, the Sentencing Commission lost its quorum and was unable to promulgate new policy statements to effectuate the new statute, leading several federal courts of appeal to conclude that U.S.S.G. § 1B1.13 "still limits compassionate release to 'motion[s] of the Director of the Bureau of Prisons,'" and was inapplicable to defendant-filed motions under the First Step Act.  *See, e.g.*, *United States v. Long*, 997 F.3d 342, 349, 355 (D.C. Cir. 2021) (quoting U.S.S.G. § 1B1.13 (2021)) (collecting cases).  Upon regaining a quorum to act, the Commission responded by altering the language of the policy statement to encompass expressly "motion[s] of the Director of the Bureau of Prisons or the defendant."  U.S.S.G. § 1B1.13(a); *see also United States v. Crawley*, 140 F.4th 165, 170 (4th Cir. 2025) (construing the third criterion, written in the present tense, to mean that "[t]he policy statement thus presumes, without qualification, that it will serve as a guide to district courts at the time the courts render their decisions").

release: (1) the defendant "is suffering from" severe and significant medical conditions, or faces

risk thereof due to an ongoing infectious disease or public health emergency; (2) the defendant

meets certain age, health, and incarceration term criteria; (3) death or incapacitation of caregivers

of the defendant's immediate family members, leaving defendant as the "only available

caregiver"; (4) the defendant was victim of sexual or physical abuse by prison officials or

contractors while incarcerated; (5) the defendant "presents" "other circumstances" that are

"similar in gravity" to the first four categories; and (6) "if defendant received an unusually long

sentence," after already serving ten years of incarceration, "a change in the law . . . may be

considered" in specific delimited circumstances.  U.S.S.G. § 1B1.13(b) (effective Nov. 1, 2023).

The D.C. Circuit has provided additional guidance: "an 'extraordinary' reason must be '"most

unusual," "far from common," and "having little or no precedent."'"  *United States v. Jenkins*, 50

F.4th 1185, 1197 (D.C. Cir. 2022) (quoting *United States v. Hunter*, 12 F.4th 555, 562 (6th Cir.

2021)).  "[A] 'compelling' reason must be 'both powerful and convincing.'"  *Id.* (quoting *United

States v. Canales-Ramos*, 19 F.4th 561, 567 (1st Cir. 2021)).

     If extraordinary and compelling reasons are found to warrant a reduction of the sentence,

the court "may reduce the term of imprisonment" but only "after considering the factors set forth

in section 3553(a) to the extent that they are applicable."  18 U.S.C. § 3582(c)(1)(A).  "Section

3553(a) requires a discretionary balancing of multiple factors."  *United States v. Long*, 997 F.3d

342, 360 (D.C. Cir. 2021).  A court must "weigh (1) the nature and circumstances of the offense

and the history and characteristics of the defendant; (2) the need for the sentence imposed (A) to

reflect the seriousness of the offense, to promote respect for the law, and to provide just

punishment; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from

further crimes of the defendant; and (D) to provide the defendant with needed educational or

vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the Guidelines; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense." *Id.* (quoting 18 U.S.C. § 3553(a)).  Only then may a court reduce a sentence, including by "impos[ing] a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment."  18 U.S.C. § 3582(c)(1)(A).

## III. DISCUSSION

The parties agree that defendant has properly exhausted administrative remedies, Def.'s Mot. at 5; Gov't Opp'n at 9, but disagree as to whether he has made a sufficient showing of extraordinary and compelling circumstances to warrant a reduction in sentence.  Of the six categories enumerated in U.S.S.G. §1B1.13(b) that may qualify as extraordinary and compelling reasons for a reduction in the term of imprisonment, defendant advances several theories under three of those categories and posits that he has been rehabilitated.  None of these reasons succeed.

### A. Family Circumstances (U.S.S.G. § 1B1.13(b)(3)(C), (D))

First, defendant raises his family circumstances as an extraordinary and compelling reason for a sentence reduction.  *See* Def.'s Mot. at 37-38.  According to defendant, his "mother is up in age and suffers from multiple health complications," his grandmother needs a caregiver, and defendant, as "his mother's only child," is "the only person available that can assume the

role of" caregiver for both of them. *Id.* at 37-38. No doubt, this is a worrisome situation for defendant and a difficult one for both his mother and grandmother.

The policy statement expressly addresses the type of family circumstances qualifying as extraordinary and compelling family circumstances, stating that this covers "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent." U.S.S.G. § 1B1.13(b)(3)(C). As the government points out, Gov't Opp'n at 28, however, defendant never provides evidence of, nor even alleges, that his mother is incapacitated. Indeed, in her letter to the Court, defendant's mother never mentions incapacitation, only that she has "faced [her] own health challenges, [including] overcoming cancer," that defendant's "return would not only bring joy to [her] heart but would also be a source of much-needed support for [their] family," and that "[h]aving him home would allow [her] to focus on [her] own health and care for [her] sister and mother with the peace of mind that he is there to help." Def.'s Mot., Attach. 1 , ECF No. 725-1. This simply does not amount to incapacitation to qualify as an extraordinary and compelling reason for a sentence reduction.

### B.    Other Reason: Youthfulness (U.S.S.G. § 1B1.13(b)(5))

Second, defendant argues at length that his youthfulness at the time of his offense conduct constitutes an extraordinary and compelling reason for a sentence reduction. Def.'s Mot. at 6-11. At the time of the three murders, two attempted murders, kidnapping, sexual assault, and drug trafficking offense conduct for which he was convicted at trial, defendant was twenty-one and twenty-two years old. *See Smith-Oct. 2022*, 2022 WL 10449599, at *14. He was thus no minor child and not even a teenager, but a young adult. Moreover, as the government correctly points out, defendant's age at the time of his offense conduct, is "not a new circumstance and youthfulness alone[] is not an extraordinary and compelling reason." Gov't Opp'n at 9-10 (citing *United States v. Bryant*, 144 F.4th 1119, 1128 (9th Cir. 2025) ("The focus

of compassionate release proceedings is not on what sentence is most appropriate given the defendant's background and crime; it is on whether new circumstances warrant discretionary relief.")). Indeed, the sentencing Judge expressly considered defendant's age as a young adult, stating at the time of sentencing "[t]hese are very difficult things for a judge to do, to have to take a young man like you, who has a whole life ahead of him, and put that young man behind bars for the rest of his life, never to be able to see or act, be able to see what it is to live a free life and to be able to enter society and live in society." Sent'g Hr'g Tr. (Nov. 25, 1996) at 33:20-25, ECF No. 464. At the same time, the policy statement itself suggests that just because a fact was known at the time of sentencing "does not preclude consideration for a reduction under this policy statement." U.S.S.G. § 1B1.13(e). Nevertheless, at sentencing, defendant's age as a young adult was measured against his significant violent offense conduct, with the sentencing judge explaining that the violence "has got to be stopped, and the only way it is going to be stopped is sentences have got to be imposed so that those killers, those people that engage in this, will know what it means." Sent'g Hr'g Tr. at 33:15-18.

Youth at the time of the offense conduct or sentencing is simply not enumerated in U.S.S.G. § 1B1.13(b) as a category qualifying as an extraordinary and compelling reason for a sentence reduction. Nor does youthfulness appear to be a reason "similar in gravity to those" set out the first four enumerated reasons to qualify as an "other reason[]," under U.S.S.G. § 1B1.13(b)(5). If youth at the time of the offense conduct or sentencing were to qualify as an extraordinary and compelling reason to trigger consideration of a sentence reduction, the result would be to collapse these triggering reasons with consideration of "the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable," U.S.S.G. § 1B1.13(a), at odds with the structured analysis provided in this policy statement. Specifically, the policy statement requires

consideration of the § 3553(a) factors, which certainly encompass defendant's age and maturity at the time of the offense conduct, only after "the court determines that," *inter alia*, "extraordinary and compelling reasons warrant the reduction."  U.S.S.G. § 1B1.13(a)(1)(A).

Even if youthfulness did, somehow, fit into the policy statement's "other reasons" category, in U.S.S.G. § 1B1.13(b)(5), for a sentence reduction, this would not be a ground warranting a reduction in this case.  To be sure, in considering a defendant's age, the Supreme Court has been clear "that youth matters in sentencing," *Jones v. Mississippi*, 593 U.S. 98, 105 (2021), citing "the distinctive attributes of youth diminish[ing] the penological justifications for imposing the harshest sentences on juvenile offenders, even when they commit terrible crimes," *Miller v. Alabama*, 567 U.S. 460, 472 (2012).  These distinctive attributes are driven by "three significant gaps between juveniles and adults," *id.* at 471, including, first, that juveniles have a "'lack of maturity and an underdeveloped sense of responsibility,' leading to recklessness, impulsivity, and heedless risk-taking," *id.* (quoting *Roper v. Simmons*, 543 U.S. 551, 569 (2005)); second, that juveniles "'are more vulnerable . . . to negative influences and outside pressures,' including from their family and peers; they have limited 'contro[l] over their own environment' and lack the ability to extricate themselves from horrific, crime-producing settings,'" *id.* (quoting *Roper*, 542 U.S. at 569) (alterations in original); and, finally, that a juvenile's "character is not as 'well formed' as an adult's; his traits are 'less fixed' and his actions less likely to be 'evidence of irretrievabl[e] deprav[ity],'" *id.* (quoting *Roper*, 542 U.S. at 570) (alterations in original).  In sum, traditional "penological justifications" are diminished for juveniles as "the case for retribution is not as strong with a minor as with an adult," nor is deterrence as effective "because 'the same characteristics that render juveniles less culpable than adults'—their immaturity, recklessness, and impetuosity—make them less likely to consider

potential punishment," and there is "the prospect that, as the years go by and neurological development occurs, his 'deficiencies will be reformed." *Id.* at 472-73 (quoting *Graham v. Florida*, 560 U.S. 48, 68, 71-72 (2010)). Though this defendant was a young adult, not a juvenile, at the time of his offense conduct and sentencing, the Supreme Court has cautioned that "[t]he qualities that distinguish juveniles from adults do not disappear when an individual turns 18." *Roper*, 543 U.S. at 574.

The attributes of a juvenile were strongly at play in the non-binding, District of Connecticut decision upon which defendant relies heavily here as support for a sentence reduction based on his age. Def.'s Mot. at 6-8 (discussing *United States v. Cruz*, No. 94-cr-112 (JCH), 2021 WL 1326851, at \*15 (D. Conn. Apr. 9, 2021)). In *Cruz*, the court granted the defendant's motion for compassionate release due, in part, to his youthfulness, at the age of eighteen, when he committed a double homicide for which he was convicted and had already served twenty-six years. Yet, *Cruz* presents starkly different facts since the conviction at issue there stemmed from a double homicide that occurred on a single night, in duress circumstances, according to the district court, who explained that "[w]hen Cruz continued to insist that he did not want to kill anyone, his sponsor fired a gun into the air, which Cruz understood to mean that he would be killed if he failed to carry out Morales's order." 2021 WL 1326851, at \*1. In contrast, defendant here committed a string of violent acts over period of several months without any evidence of duress. Moreover, the *Cruz* court found that the defendant "ha[d] never received a disciplinary ticket" while incarcerated, *id.* at \*8, but, again, the same cannot be said for the instant defendant, whose disciplinary record includes serious infractions, including fighting another inmate, and at least ten additional instances of possession of a dangerous weapon and contraband, *see* Gov't's Opp'n, Ex. 1.

The attributes of youth may be mitigating when the defendant was actually a juvenile or close to it, at the time of the offense conduct; the circumstances surrounding the offense conduct show actions were taken recklessly, impulsively, or were otherwise reflective of a hot-headed response; the defendant was provoked, directed, or otherwise subject to the influence of others; and, in the intervening time since the criminal conduct, defendant has demonstrated maturity and reform, with clear respect for abiding by rules designed for the safety of the community. Here, defendant was a young adult, not a juvenile at the time of his offense conduct; the murders and attempted murders, kidnapping, and sexual assault crimes for which he was convicted were not the result of split-second decisions but often involved premeditation and coordinated planning with co-conspirators, with defendant in at least a nominal leadership role; these crimes were carried out over the course of multiple months, rather an impulsive, single episode of bad decision-making; and defendant's infraction record while incarcerated has shown a continuing disregard for applicable rules, with multiple occasions when he possessed weapons. Given these considerations, *this* defendant's age at the time of the offense conduct does not serve as an extraordinary and compelling reason for a reduction in sentence, even if his age were an appropriate "other reason[]" under U.S.S.G. § 1B1.13(b)(5).

Indeed, the Court has previously rejected defendant's argument that "his life sentence without possibility of parole 'fails to account for his youthfulness at the time of the offenses in this case.'" *Smith-Oct. 2022*, 2022 WL 10449599, at *14 (quoting Def.'s Suppl. Mot. Reduce Sentence Pursuant to the First Step Act of 2018 at 30, ECF No. 706). As this Court previously observed "the fact that defendant perpetrated his violent crimes over a period of months as part of a drug trafficking conspiracy, in which, on some level, he made the decision to participate over and over again each day" and concluded that "although defendant's early life was very

difficult and he has taken some positive steps to rehabilitate himself since his incarceration, these factors are simply not outweighed by the seriousness of defendant's conduct or the troubling evidence of continued poor behavior while incarcerated—the evidence of which defendant makes no attempt to rebut." *Id.* Nothing in defendant's instant motion warrants a change in those observations articulated in October 2022, and, in fact, since that time defendant has accumulated two additional infractions, including possessing an unauthorized item in August 2024. Gov't's Opp'n, Ex. 1.

### C.    Unusually Long Sentence (U.S.S.G. § 1B1.13(b)(6))

Finally, defendant contends that "his unusually long sentence poses an unwarranted sentencing disparity when compared with [other] sentences for murder," marshaling as support a litany of cases, in which he says life sentences imposed for murder, as required prior to *United States v. Booker*, 543 U.S. 220 (2005), were reduced to terms of decades. Def.'s Mot. at 11-15. Not only are none of the cited cases persuasive, defendant fails to meet the requirements of U.S.S.G. § 1B1.13(b)(6).

To begin, defendant cites, for example, *United States v. Brown*, 715 F. Supp. 3d 1034 (S.D. Ohio 2024), where a defendant, who had served 28 years of a 1430-month sentence for recruiting others to commit a series of robberies, was granted a sentence reduction to time served. Def.'s Mot. at 11. The *Brown* court highlighted that no one was physically harmed in any of the robberies, and the defendant never entered the establishments robbed. 715 F. Supp. 3d at 1036. In stark contrast, here, defendant personally committed three murders, attempted two more, kidnapping, sexual assault, robbery, and, while in jail, made threats against cooperating witnesses. Next, in *United States v. Gray*, No. 95-cr-364 (CCB), 2021 WL 1856649 (D. Md. May 10, 2021), the defendant's life sentence for murder was reduced to time served, Def.'s Mot. at 11-12, because of the risks defendant's specific physical ailments posed due to the COVID-19

epidemic, and not because he had an "unusually long sentence," rendering this case inapposite. Defendant also cites *United States v. Kayarath*, No. 94-cr-10123 (JWB), 2024 WL 914059, *5 (D. Kan. Mar. 4, 2024), where defendant's life sentence imposed for a single count of felony murder, when defendant was not directly involved in or even in the same room as the murder, was reduced to twenty-five years, Def.'s Mot. at 12-13. This case is unpersuasive given, again, the stark differences with the instant defendant's violent criminal conduct, including his personal and direct participation in three murders, two attempted murders, a kidnapping, a violent sexual assault, a robbery, and multiple infractions while incarcerated.[3]

Furthermore, the requirements of U.S.S.G. § 1B1.13(b)(6) are not met here. This paragraph describes one of the six "extraordinary and compelling reasons" under the applicable policy statement and provides, in full:

> "[i]f a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances."

U.S.S.G. § 1B1.13(b)(6). The policy statement goes on to emphasize that "[e]xcept as provided in subsection (b)(6), a change in the law . . . shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement." U.S.S.G.

---

[3]    Defendant also points to dockets in several cases in which defendants pleaded guilty and received less than life without parole, Def.'s Mot. at 13-15 (first citing *United States v. Hoa Duc Nguyen*, No. 07-cr-1121 (S.D.N.Y.); then citing *United States v. Prado*, No. 10-cr-74 (E.D.N.Y.); then citing *United States v. De Vargas*, No. 08-cr-115 (E.D.N.Y.); and then citing *United States v. Johnson*, 06-cr-20411 (E.D. Mich.)), but these cases are unhelpful comparators for at least three reasons: first, one obvious difference is the defendants in the cited cases demonstrated sufficient remorse and responsibility for their offense conduct to enter guilty pleas whereas the instant defendant did not; second, the sentences given in these cited cases are not described in written decisions making any analysis by the sentencing courts difficult to ascertain; and third, these cited cases apparently did not involve a sentence reduction, under 18 U.S.C. § 3582(c)(1)(A), or application of U.S.S.G. § 1B1.13, with the statutory and guidelines limitations attached thereto, and are therefore inapposite.

§ 1B1.13(c). A change in law, "including an amendment to the Guidelines Manual that has not been made retroactive," may only be considered "if a defendant otherwise establishes" such a reason under the policy statement, at which point the change in law may help in "determining the extent of any such reduction." *Id.*

This somewhat convoluted provision may be distilled as allowing an "unusually long sentence" to qualify as an extraordinary and compelling reason warranting consideration of a sentence reduction when the following four requirements are met: (1) the "defendant received an unusually long sentence"; (2) the defendant must have "served at least 10 years of the term of imprisonment"; (3) a change in the law "would produce a gross disparity between the sentence being served and the sentence likely to be imposed" today; and (4) "full consideration of defendant's individualized circumstances" warrant a finding that defendant's sentence presents an extraordinary and compelling reason for a sentence reduction.

While conceding defendant has already "served at least 30 years," Gov't's Opp'n at 26, the government contends he still fails to present an extraordinary and compelling reason for a sentence reduction because his long sentence was not "unusual," given the violent felonies for which he was convicted, *id.* at 26-27, and no "change in law" producing a "gross disparity" in the sentence he would likely receive if he were sentenced today is demonstrated, *id.* The Court agrees with this conclusion.

At the outset, application of this policy statement poses challenges since the Sentencing Commission "did not define 'unusually long sentence' or 'gross disparity,'" *United States v. Bricker*, 135 F.4th 427, 430 n.1 (6th Cir. 2025), *petition for cert. filed*, *Orta v. United States*, No. 25-81 (U.S. July 18, 2025)—even though those are key terms. Nor did the Sentencing Commission provide much guidance, other than to note that "[o]ne of the expressed purposes of

section 3582(c)(1)(A) when it was enacted in 1984 was to provide a narrow avenue for judicial relief from unusually long sentences." Sentencing Guidelines for United States Courts, 88 Fed. Reg. 28254, 28258 (May 3, 2023) (citing S. Rep. No. 98-225 (1983)). With this statutory purpose in mind, the Commission intended the policy statement amendment, codified at U.S.S.G. § 1B1.13(b)(6), to resolve a circuit split "concerning when, if ever, non-retroactive changes in law may be considered as extraordinary and compelling reasons within the meaning of section 3582(c)(1)(A)." *Id.* (comparing, *inter alia*, *United States v. Ruvalcaba*, 26 F.4th 14, 16, 26-28 (1st Cir. 2022) (holding that non-retroactive changes may be considered), with, *inter alia*, *Jenkins*, 50 F.4th at 1198-99 (D.C. Cir.) (holding that non-retroactive changes may never be considered)). In resolving the circuit split, the Commission "agrees with the circuits that authorize a district court to consider non-retroactive changes in the law as extraordinary and compelling circumstances warranting a sentence reduction but adopts a tailored approach that narrowly limits that principle in multiple ways," including that the cases involve "unusually long sentences" and "a gross disparity between the length of the sentence being served and the sentence likely to be imposed at the time the motion is filed." *Id.* at 28258-59.

The requirements of paragraph (b)(6) are reviewed *seriatim*.

### 1. *"Unusually Long Sentence"*

The Commission is far from clear as to what is meant by "unusually long sentences." Given that the defendant must have "served at least 10 years of the term of imprisonment" to qualify for a sentence reduction under U.S.S.G. § 1B1.13(b)(6), to constitute an "unusually long sentence," the sentence imposed must, presumably, be at least 10 years. Beyond this, no guidance is provided in ascertaining the point at which point a sentence becomes "unusually long" in comparison to other sentences.

Certainly, the policy statement did not mean to suggest that any sentence imposed of over ten years' imprisonment qualifies as "unusually long" since if that were the intended meaning, the drafting could have been easily and more straight-forwardly accomplished.  The policy statement simply does not say that.  Instead, ascertaining an "unusually long" sentence must, at a minimum, take account of the nature of the defendant's criminal conduct and associated convictions and the concomitant authorized penalties and, to the extent this ascertainment involves a relative determination, additionally take account of sentences meted out to similarly situated defendants.  In this case, defendant's sentence would then be compared relative to other individuals convicted of multiple murders, attempted murders, kidnapping, and a sexual assault, in furtherance of a crack cocaine trafficking conspiracy.  Even then, the difficulty with this contextual approach is that if the determination of whether a sentence is "unusually long" is retrospective—that is, based on sentences likely imposed at the time of sentencing on similarly situated defendants—the determination would seem to rob the requirement "after full consideration of the defendant's individualized circumstances" of much of its meaning, *i.e.*, "individualized circumstances" may be the same considerations used to identify or distinguish similarly situated defendants.  Plus, this would seemingly run counter to the direction that "gross disparity" is measured against sentences imposed on similarly situated defendants being sentenced today.  Yet, if the determination of whether a sentence is "unusually long" is relative only to current law and guidelines—that is, the determination considers what a similarly-situated defendant being sentenced today would likely receive—then the "unusually long" factor seems redundant with the "gross disparity" requirement, rather than a separate qualitative requirement.[4]

---

[4]    This interpretative puzzle has been resolved by another Judge on this Court by reading U.S.S.G. § 1B1.13(b)(6) as supplying a definition for "unusually long sentence" when meeting the requirements of "a gross disparity," a "change in the law," and "has served at least 10 years."  *United States v. Garcia*, No. 04-cr-446-42 (ACR), 2025 WL 2634442, at *4 & n.8 (D.D.C. Sept. 12, 2025).  While ameliorating some of the interpretive

Regardless, whatever is meant by this "unusually long sentence" requirement, the Court will assume without deciding that the sentence of life, plus forty-five years, that defendant is currently serving constitutes an "unusually long sentence."

### 2. *"Change in Law" Producing a "Gross Disparity" In Defendant's Sentence*

Defendant identifies two changes in the law as relevant to his sentence reduction motion. First, he points to *United States v. Booker*, 543 U.S. 220 (2005), after which "the [sentencing] [g]uidelines [ranges] are no longer mandatory." Def.'s Mot. at 12. Second, he argues that his consecutive sentence should be reduced, Def.'s Mot. at 21, citing the First Step Act's amendment to 18 U.S.C. § 924(c), which clarified that the mandatory "term of imprisonment of not less than 25 years," applies only to a conviction under this provision that occurs after a prior conviction for the same offense "has become final," Pub. L. No. 115-391, title IV, § 403(a), 132 Stat. 5194, 5221-22, thereby eliminating charge stacking carrying this significant 25-year mandatory minimum for a second conviction for the same offense within the same case. Neither of the identified changes in law may be retroactively applied. The Supreme Court was clear in *Booker* that the change in law was not to be applied retroactively. 543 U.S. at 268 ("[W]e must apply today's holdings . . . to all cases on direct review."). Likewise, Congress was clear that the "clarification" to charge stacking was not retroactive. First Step Act of 2018, Pub. L. No. 115-391, § 403(b), 132 Stat. 5194, 5222 ("This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment.").

---

challenges with U.S.S.G. § 1B1.13(b)(6), this approach is difficult to reconcile with the paragraph's plain text, in which satisfaction of both requirements of an "unusually long sentence" and "served at least 10 years" are stated separately in the same conditional clause describing when "a change in the law . . . may be considered." The paragraph continues that "only" after the additional prerequisites of a "gross disparity" and "full consideration of the defendant's individualized circumstances" have been satisfied may the change then be considered. Construing three of these factors as a definition for "unusually long sentence" seemingly strains the syntax of the sentence.

While not disputing that either *Booker* or the elimination of charge stacking is "a change in the law," the government contends at the outset that these non-retroactive law changes preclude them from being "extraordinary and compelling reasons."  Gov't's Opp'n at 13-26. Indeed, the explanation for the amendment adding (b)(6) to the policy statement provides no clear authority for the Commission, or individual courts, to apply retroactively a change in law that Congress has declined to make retroactive, in the guise of an extraordinary and compelling reason for a sentence reduction.  *See generally Sentencing Guidelines*, 88 Fed. Reg. at 28258. The D.C. Circuit has observed that "there is nothing remotely extraordinary about statutes applying only prospectively" and "[i]n fact, there is a strong presumption against statutory retroactivity," *Jenkins*, 50 F.4th at 1198, and further opined that a court "would usurp these quintessentially legislative judgments if [it] used compassionate release as a vehicle for applying the amendment retroactively, to previously sentenced defendants who would not otherwise qualify for compassionate release," *id.* at 1199.

Concerns consistent with those D.C. Circuit observations were presented to the Commission on behalf of the Judicial Conference's Standing Committee on Criminal Law, which foresaw "significant administrative concerns" related to the Commission's addition of this compassionate release category, citing an absence of guidance from the Commission and asking: "How would this interact with decisions made by Congress or the Sentencing Commission about retroactivity?  Could a court consider a change in the governing sentencing statute that Congress declined to apply retroactively?"  *Public Hearing on Proposed Amendments to the Federal Sentencing Guidelines Before the U.S. Sent'g Comm'n* (Feb. 23, 2023) (testimony of Hon. Randolph D. Moss, Chair, Comm. on Crim. L. of the Judicial Conf. of the U.S.); *see also* U.S. Sent'g Comm'n's Pub. Meeting Tr. (Apr. 5, 2023) at 60 (Sentencing Commission member

dissenting from adoption of the amendments, stating that "subsection (b)(6) of the new policy statement at § 1B1.13, which makes nonretroactive changes in law a basis for compassionate release in some cases, supplants Congress's legislative role.").  The United States Supreme Court has granted certiorari to address a question with implications for the Commission's authority to promulgate this amendment.  *Rutherford v. United States*, 145 S. Ct. 2776 (2025) (mem.) (question presented, "Whether, as four circuits permit but six others prohibit, a district court may consider disparities created by the First Step Act's prospective changes in sentencing law when deciding if 'extraordinary and compelling reasons' warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i).").  Meanwhile, the government argues here that defendant cannot satisfy the "change in the law" requirement with non-retroactive changes in law because "[a]lthough Congress delegated broad authority to the Sentencing Commission, subsection (b)(6) is contrary to the statute's text, structure, and purpose, and therefore is invalid."  Gov't's Opp'n at 12-13. For the purposes of the instant motion, which is brought *pro se* by an incarcerated defendant, the Court assumes, without deciding this significant legal issue, that non-retroactive changes in the law may be considered if the requirements of U.S.S.G. § 1B1.13(b)(6) are satisfied.

Even with this assumption, however, defendant provides minimal support for any finding of a gross disparity between his current sentence and the sentence he would likely receive today. Recall that he is currently serving nine concurrent life sentences on three counts of continuing criminal enterprise murder (of victims Ucal Riley, Marcus Murray, and Victor Hartnett), two counts of first-degree felony murder while armed (of victims Marcus Murray and Victor Hartnett), one count of first degree murder while armed (of victim Ucal Riley), one count of kidnapping (of victim Eric Brake), one count of conspiracy to distribute cocaine base, and one count of conspiracy to participate in racketeer influenced corrupt organization.  Defendant notes

that the average sentence for murder in the Fourth Circuit is 304 months.  Def.'s Mot. at 11

(citing U.S. Sent'g Comm'n, *Statistical Information Packet: Fiscal Year 2022 Fourth Circuit* 11

tbl. 7 (2023)).  The government responds that the heinous nature of defendant's offenses coupled

with his willingness to commit violence against both gang targets and innocent civilians mean

that a life sentence and forty-five years is not grossly disproportionate.  Gov't's Opp'n at 26-27.

There is a substantial likelihood that defendant would receive the same life sentence

today.  While, post-*Booker*, the Guidelines Manual no longer requires imposition of a mandatory

life sentence, a life sentence remains statutorily authorized for defendant's continuing criminal

enterprise murder convictions (counts 10, 14, and 15) and the recommended sentence under the

guidelines.  *See, e.g.*, 21 U.S.C. § 848(e)(1)(A) (2025) ("[A]ny person engaging in or working in

furtherance of a continuing criminal enterprise . . . who intentionally kills . . . shall be sentenced

to any term of imprisonment, which shall not be less than 20 years, and which may be up to life

imprisonment, or may be sentenced to death[.]"); PSR ¶¶ 240, 243 (computing total offense level

of 49 and criminal history category of II); U.S.S.G. ch. 5 pt. A (recommending a life sentence for

any defendant with an offense level of 43 or greater).  Furthermore, the trial court was not

without discretion in imposing defendant's original sentence and could select at sentencing

between a parole-eligible and parole-ineligible life sentence.  Mem. Op., Findings of Fact &

Conclusions of Law ¶¶ 27-28, ECF No. 462.  At the sentencing hearing, the trial court

admonished, "those who are bent upon engaging in this kind of conduct must realize what the

price is going to be when all that due process that has been afforded has been completed" and

imposed a life sentence without the possibility of parole.  Sent'g Hr'g Tr. at 34:2-5.

For the same reasons that the heinous nature of defendant's offense conduct prompted the

sentencing judge to impose life without the possibility of parole, he is unable to show that he

would likely receive a lesser sentence today. The government is correct that defendant's life sentence does not constitute a gross disparity relative to the sentence defendant would likely receive today, and thus defendant has not established an extraordinary and compelling reason on this basis. This finding is consistent with conclusions reached by other courts that have likewise determined that the imposition of an original life sentence for murder does not constitute a gross disparity under U.S.S.G. § 1B1.13(b)(6). *See, e.g.*, *United States v. Riley*, 777 F. Supp. 3d 165, 170-71 (E.D.N.Y. 2025) ("Nor does the Court find that the change from mandatory to advisory Guidelines would produce the gross disparity" between defendant's life sentence and the one he would likely receive today "given the circumstances and extent of [defendant's] serious and violent conduct."); *United States v. Porter*, No. 01-cr-282 (SSV), 2025 WL 2444118, *3 (E.D. La. Aug. 25, 2025) ("There is no gross disparity between the sentence being served and the sentence likely to be imposed today. . . . Regardless of criminal history, the sentencing guidelines provide that 'life imprisonment is the appropriate sentence if death is not imposed' for first-degree murder." (quoting U.S.S.G. § 2A1.1 cmt. 2)).

As to his current consecutive sentence of forty-five years in addition to the life sentences, defendant contends that the First Step Act's amendment to 18 U.S.C. § 924(c)(1)(C)—which amendment eliminated stacking within the same case of § 924(c)(1) charges to trigger the mandatory twenty-five year mandatory minimum and limited that trigger to when a second or subsequent § 924(c) conviction occurs after the prior conviction "has become final," *id*. § 924(c)(1)(C) (i)—renders his forty-five-year consecutive sentence grossly disparate from the sentence likely to be imposed today, and that the consecutive portion of his sentence should be reduced from forty-five years to twenty years. Def.'s Mot. at 12, 21-23. The government does not address defendant's consecutive-sentence argument directly other than to argue that because

Congress's modification of when the 25-year mandatory minimum is triggered, under 18 U.S.C. § 924(c)(1)(C), was non-retroactive, this penalty change cannot qualify as an extraordinary and compelling reason for a sentence reduction. Gov't's Opp'n at 13-26.[5] Even if defendant were correct about reduction of the consecutive portion of his sentence, this would still leave his life sentences intact and afford no practical relief. Thus, "even a complete vacatur of [his] Section 924(c) sentences [would] not reduce the time [defendant] must serve in prison," *Duka v. United States*, 27 F.4th 189, 194-95 (3d Cir. 2022), as he would still be serving concurrent life sentences on multiple counts. For the reasons already discussed, defendant's life sentences present no "gross disparity" given his heinous offense conduct.

### 3.    *Defendant's Individualized Circumstances*

The last requirement for an "unusually long sentence" to qualify as an "extraordinary and compelling reason" for a sentence reduction is a "full consideration of the defendant's individualized circumstances." U.S.S.G. § 1B1.13(b)(6). The Commission provides no guidance as to how "full consideration" of a "defendant's individualized circumstances," under U.S.S.G. § 1B1.13(b)(6), differs from consideration, for example, of a defendant's "history and characteristics" or the "nature and circumstances of the offense," under 18 U.S.C. § 3553(a)(1). The overlap between these two considerations is apparent, even though the policy statement instructs elsewhere that the § 3553(a) statutory factors are to be considered only *after* a determination that "extraordinary and compelling reasons" are present and warrant a reduction. *See* U.S.S.G. § 1B1.13(a). If the Commission had intended to incorporate one or even all seven of the § 3553(a) statutory factors into U.S.S.G. § 1B1.13(b)(6), it could have bluntly said so, but did not.

---

[5]    As already discussed, *see supra* Part III.C.2, this is a significant legal issue the Court declines to resolve here on a *pro se* motion by an incarcerated defendant.

In any event, among the "defendant's individualized circumstances," are the nature and circumstances of his offense conduct and "full consideration" of these facts alone compels the conclusion that defendant's long sentence is not an extraordinary and compelling reason for a sentence reduction. *See* discussion *supra* in Part I.A-E. Take only the first of the murders committed by defendant of Ucal Riley, as an example. At the sentencing hearing, the government recounted the facts produced at trial: "Mr. Riley was killed in an unbelievable manner. [Defendant] was sitting in the seat next to him and shot him several times with a .10 millimeter pistol. . . . His ear was blown into the back seat. Brain matter went across the street. It was unbelievably brutal." Sent'g Hr'g Tr. at 24:9-14. The sentencing court observed from that evidence presented at trial that "the picture that emerged was not a pretty picture. It was a picture of violence that I don't think could be portrayed in a movie scene." Sent'g Hr'g Tr. at 31:9-11.

"[F]ull consideration of the defendant's individualized circumstances," may also include review of circumstances other than those related to defendant's offense conduct and convictions. Since his incarceration, defendant has been caught at least ten times with weapons, has engaged in fighting, and, just last year, was found possessing an unauthorized item. Gov't Opp'n, Ex. 1. Such conduct is not consistent with one whose individualized circumstances would merit the finding of extraordinary and compelling circumstances.[6]

---

[6] To qualify for a sentence reduction under U.S.S.G. § 1B1.13(a), in addition to demonstrating "extraordinary and compelling reasons," defendant would also have to demonstrate that he is "not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(a)(2). As to this important consideration, defendant relies on statistics presented in a U.S. Sentencing Commission report to argue that the likelihood of recidivism for inmates falls as they reach older age. Def.'s Mot. at 24-26 (citing, *inter alia*, U.S. Sent'g Comm'n, *The Effects of Aging on Recidivism Among Federal Offenders* (2017)). A later Commission report, however, informs that "violent offenders had higher rearrest rates than non-violent offenders in each age group" and that "[a]mong offenders aged 60 and older, the oldest group of offenders studied, 25.1 percent of violent offenders were rearrested compared to 11.5 percent of non-violent offenders." U.S. Sent'g Comm'n, *Recidivism of Federal Violent Offenders Released in 2010*, at 6 (2022). Moving beyond mere statistical likelihoods, the heinous nature of defendant's violent offenses, which involved the use of firearms, coupled with his long record

In short, full consideration of defendant's circumstances, including defendant's conduct before and during incarceration, as well as the futility of defendant's argument regarding stacked §924(c) convictions to produce a meaningful effect on his sentence, does not warrant a finding that he meets the requirements of U.S.S.G. § 1B1.13(b)(6) for a reduced sentence.

### D. Rehabilitation (U.S.S.G. § 1B1.13(d))

Finally, defendant suggests that his rehabilitation, either independently or in conjunction with other factors, qualifies as an extraordinary and compelling reason for a sentence reduction. Def.'s Mot. at 17-19. The government maintains that rehabilitation, standing alone, does not qualify for a sentence reduction and that rehabilitation is only sufficient in conjunction with another factor. *See* Gov't's Opp'n at 28-29 (citing, *inter alia*, *United States v. Vaughn*, 62 F.4th 1071, 1072 (7th Cir. 2023) ("Taking classes while incarcerated is common rather than extraordinary.")). The government is correct, as the policy statement expressly states that "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason" for compassionate release. U.S.S.G. § 1B1.13(d); *see* 28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."); *see also United States v. Peoples*, 41 F.4th 837, 842 (7th Cir. 2022) ("[R]ehabilitation 'cannot serve as a stand-alone reason' for compassionate release." (quoting *Hunter*, 12 F.4th at 563)). Rehabilitation may only "be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." U.S.S.G. § 1B1.13(d). While defendant's efforts at rehabilitation are commendable, these efforts cannot overcome the lack of a demonstrated, qualifying extraordinary and compelling reason for

---

of infractions while incarcerated, poses significant challenge for him satisfying the requirement in U.S.S.G. § 1B1.13(a)(2) to demonstrate he is not a danger to the safety of any other person or to the community, but no finding is necessary or reached as to this requirement, since defendant's motion is denied on other grounds.

a sentence reduction, under U.S.S.G. § 1B1.13(a) and (b), and are undercut by defendant's numerous and serious infractions over the course of his incarceration.

***

In sum, none of the circumstances relied upon by defendant, either individually or collectively, represent an extraordinary and compelling reason for compassionate release or a reduction in sentence. As defendant has not made a sufficient showing that his circumstances are extraordinary and compelling, the factors set forth in 18 U.S.C. § 3553(a) need not be addressed.

## IV.    CONCLUSION AND ORDER

For the foregoing reasons, defendant has not presented an "extraordinary and compelling reason" for a sentence reduction as required by 18 U.S.C. § 3582(c)(1)(A)(i). Accordingly, it is hereby

**ORDERED** that defendant's Motion for Compassionate Release, ECF No. 725, is **DENIED**.

**SO ORDERED.**

Date: November 10, 2025

_____
**BERYL A. HOWELL**
United States District Judge